**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES KRIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-7435 |
| v. | ) | |
| | ) | District Judge John Z. Lee |
| BP AMOCO CHEMICAL COMPANY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OWENS-ILLINOIS, INC.'S
MOTION AND BRIEF TO EXCLUDE BARRY CASTLEMAN, SC.D.**

Owens-Illinois, Inc. ("Owens-Illinois") moves to exclude Barry Castleman Sc.D. ("Castleman"), one of Plaintiff's eleven disclosed experts, from testifying in this case or alternatively from testifying about the specific knowledge and conduct of Owens-Illinois under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In necessary, Owens-Illinois further requests a *Daubert* hearing to determine the admissibility of Castleman's testimony.

## BACKGROUND

Three judges from this Court have excluded or crucially limited Castleman's testimony in their *Daubert* gatekeeping function. As these judges and federal courts nationwide have held, there is no relevant or reliable connection between Castleman's academic credentials and his advocacy-based opinions on the use of asbestos in the 20th Century, the state of medical and scientific knowledge about asbestos health risks, or what he calls the "corporate response." Although Castleman has been permitted to testify when left unchallenged,[1] his advocacy and rhetoric are not consistent with the standards for legitimate expert testimony.

---

[1] Castleman went unchallenged recently in a case against a different defendant in *Wright v. CBS Corp.*, No. 11-cv-1954 (N.D. Ill. May 22, 2013) (Pallmeyer, J.).

Castleman is a paid advocate whose views were created solely for the purpose of litigation. Barry Castleman Rep. (Ex. A) at 1, Oct. 19, 2011. He is not a medical doctor, an industrial hygienist, a regulatory professional, or even a historian. He merely testifies for plaintiffs and their attorneys in asbestos litigation. As his report shows, Castleman will offer his own factual narratives, personal beliefs, and unsupported speculation (all of which fall outside the purview of proper expert testimony) about asbestos in the 20th Century based on his book, *Asbestos: Medical and Legal Aspects*, bought and paid for by plaintiffs attorneys. *Id.* at 1-14 (incorporating book in expert report). If allowed to testify, Castleman will "spin" vast amounts of medical articles and corporate documents in an attempt to draw speculative inferences only as an advocate, not as a qualified expert, for the plaintiff and his attorneys:



Barry Castleman, *Asbestos: Medical and Legal Aspects* (1st ed. 1984).

In his role as an advocate, Castleman will employ no principles or methods that professionals in any recognized scientific field apply to their work. He simply has no field of expertise—other than being an expert on his own personal opinions. As Judge Grady characterized Castleman, he is "librarian of asbestos research" who "lacks the medical background and experience to evaluate and analyze the articles in order to identify which parts of the articles best summarize the author's conclusions." *Rutkowski v. Occidental Chem. Corp.*, No. 83 C 2339, 1989 WL 32030, at *1

(N.D. Ill. Feb. 16, 1989) (Ex. B). He "is not qualified medically to render a scientific or medical opinion," as Judge Kocoras also concluded, and "there is no standard to demonstrate that [his opinion] is anything other than purely subjective." *Flood v. Owens-Illinois, Inc.*, No. 86 C 8947, Hr'g Tr. at 13:25-14:1, 13:25-14:1 (Ex. C) (N.D. Ill. Mar. 15, 2004). Judge Bucklo was similarly "at a loss to understand . . . what he would be testifying to in terms of fact." *Deyerler v. Georgia-Pacific, LLC*, No. 08 C 5362, Tr. at 77:15-125:2 (N.D. Ill. Sept. 30, 2008) (Ex. D). Judge Kozinski of the Ninth Circuit likewise found Castleman "not qualified to testify as an expert on the medical state of the art or anything else; he appears to have read a number of articles for the sole purpose of turning himself into an expert witness." *In re Guam Asbestos Litig.*, 61 F.3d 910, 1995 WL 411876, at *1 (9th Cir. 1995) (Ex. E) (Kozinski, J., dissenting).

Here, as in every case, Castleman's opinions are that: (1) since early in the 20th Century it was established fact that asbestos was "lethal" in any use; (2) every corporation knew this fact (actually or constructively) by the 1930s; and (3) because corporations did not act on this "knowledge," they are guilty of a widespread failure to warn and corporate misfeasance. Castleman Rep. (Ex. A) at 1-14. This one-size-fits-all approach is Castleman's opinion against every defendant in any case and is driven by his personal desire to make corporations and their employees liable.

In *Asbestos: Medical and Legal Aspects*, which is incorporated and adopted in his expert report, Castleman indeed calls for criminal liability. *Asbestos: Medical and Legal Aspects* 769 (5th ed. 2005); Castleman Rep. (Ex. A) at 1-14 (adopting and incorporating book). He believes that, "The members of this privileged class decide what will be manufactured, where and how it will be made and sold. The asbestos epidemic, whose toll of preventable deaths in the U.S. alone will at least be in the hundreds of thousands, offers opportunity to see how the criminal law or lack of it relates to public health," in the section "Criminal Sanctions and Personal Responsibility." *Asbestos: Medical and Legal Aspects* 769 (5th ed. 2005). In testifying before Congress, Castleman has twice advocated in favor of

criminal liability against sellers of asbestos-containing products:

> I think there should be personal, criminal liability for selling [asbestos-containing products] without warnings to consumers . . . . The history of asbestos product marketing is unfortunately replete with stories of what many people might regard as toxic corporate crime.

Barry Castleman Cong. Test. (Ex. F) at 83, July 31, 2001

. . . .

> The asbestos industry is a quasi-criminal industry in much of the world today, using its power to corrupt political processes and control the media when challenged.

Barry Castleman Cong. Test. (Ex. G) at 13, Mar. 1, 2007.

Castleman's testimony is neither scientifically legitimate nor principled. He is not a historian, nor does he apply the well-established principles of the historical method. He selects the material that he is willing to consider based on his pre-determined opinions. He refuses to look for, or even read, information that may be contrary to his opinions. Barry Castleman Dep. (Ex. H) at 32:25-36:25, Sept. 28, 2010. He excuses his failure to look for relevant information, which may be contrary to his opinions, by rationalizing that "the stuff, if it was significant, would have come to my attention and hasn't." Barry Castleman Dep. (Ex. I) at 43:2-12, Jan. 3, 2002. Castleman's view that he has no obligation to validate his opinions is blatantly unscientific, not subject to any method, and will always, as it has for over 35 years, lead to the opinion that Owens-Illinois and every corporate-defendant acted badly.

As explained below, Castleman should be excluded from testifying in this case because his opinions fail each of the *Daubert* and Rule 702 standards: (1) he is not qualified by any knowledge, skill, or experience to opine about what corporations knew, when they knew it, or the significance of any such knowledge; (2) his opinions are not the product of any reliable principles and methods; and (3) even if they were, they are not relevant to understand the evidence or to determine a factual issue.

**LEGAL STANDARD**

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). By its terms, Rule 702 allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education," where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

*Daubert* therefore requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert. 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in deciding the admissibility of expert evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'" (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011))). It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must do so. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002).

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94. "The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). The proponent of the expert bears the burden of showing that the expert's evidence would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

### I.  Castleman's Opinions Have Been Rejected Repeatedly in this District and in Illinois.

Castleman has made a living testifying in asbestos litigation and derived more than 90% of his income from plaintiffs' asbestos lawyers. Barry Castleman Dep. (Ex. J) at 60:17-20, Jan. 5, 2011. In this District, however, his testimony has been excluded or crucially limited by at least three judges: by Judge Grady in 1989, by Judge Kocoras in 2004, and by Judge Bucklo in 2008. Judge Grady's description of Castleman as a "librarian of asbestos research" is still accurate today, as is Judge Grady's conclusion that Castleman lacks the medical background and experience to evaluate and analyze medical publications in order to identify which portions best summarize the author's conclusions. *Rutkowski*, 1989 WL 32030, at *1; *Flood*, Tr. (Ex. C) at 13:25-14:1. As Judge Bucklo also found, Castleman was not qualified to interpret evidence for the jury or "otherwise do anything." He could only read documents already admitted in evidence and put them on a timeline. *Deyerler*, Tr. (Ex. D) at 122:10-124:6.

The Illinois Supreme Court also held Castleman's testimony to be baseless, and therefore of no assistance to the jury. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 720 N.E.2d 242 (1999). In that case, plaintiff alleged that Owens-Illinois participated in a conspiracy relating to asbestos-containing products. *Id.* at 150-51, 720 N.E.2d at 266. The Illinois Supreme Court granted judgment notwithstanding the verdict to Owens-Illinois, finding that there was no evidence from which a reasonable jury could conclude the existence of a conspiracy. *Id.* at 151, 720 N.E.2d at 266-

67. The Court explained that Castleman's testimony was based on his "assumptions" about corporate conduct rather than any proper foundation. *Id.* at 150-51, 720 N.E.2d at 266. Therefore, the Court concluded that, even if the jury believed Castleman, his opinions provided no support for a verdict against Owens-Illinois. *Id.*

Judge Kocoras accurately summed up Castleman when he granted Owens-Illinois's *Daubert* motion to exclude his testimony from its last federal trial:

> I must say that for him to do what he is doing, either there has to be either some scientific or equivalent basis to test whether or not other experts in the field could do what he did, without making it an entirely subjective proposition. There is not any showing of that. So, what he has done, if you ask me, is purely subjective. . . .
>
> He is, if you will, acting a middleman, and I do not think that is sufficient expertise to do anything in this case relevant to giving him a license to both offer his opinions de facto or de jur[e]. He offers opinions de facto be selecting those things he wants the jury to hear.

*Flood*, Tr. (Ex. C) at 13:25-14:1 (break added). That same reasoning applies here.

## II. Castleman's Opinions Do Not Satisfy the *Daubert* Standard.

### A. Castleman Is Not Qualified to Offer His Opinions.

Castleman's degrees do not, and cannot, qualify him to testify on subjects to which he has no relevant expertise. He holds no specialized knowledge in the fields of history, medicine, law, or corporate behavior. His opinions are therefore unrelated to his expertise and should be excluded. *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion" (quoting *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996))); *Goodwin v. MTD Prods, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (excluding medical testimony from an expert who "has neither a medical degree nor any medical training").

There are more than a dozen areas of expertise that could help the jury in this case. Castleman has none of those qualifications. For example, an epidemiologist, a toxicologist, or any

kind of medical doctor may have expertise to interpret medical literature or knowledge of asbestos within the medical community. Castleman is not a medical doctor. As the judges in this District and around the country have held, Castleman lacks any qualification to offer medical opinions or make medically-qualitative decisions. *Rutkowski*, No. 83 C 2339, 1989 WL 32030, at *1; *Flood*, Tr. (Ex. C) at 13:25-14:1; *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1149-50 (N.D. Cal. 1982); *In re Guam Asbestos Litig.*, 1995 WL 411876, at *1.

Likewise, a historian may be qualified to offer opinions how knowledge of asbestos health risks developed. Historians have reliable principles and methods to review historical materials. *E.g.*, G. Reiner, *History: Its Purpose and Method* (1950); R. Shafer, *A Guide to Historical Method* (1974). Trained historians apply the historical method to historical material in order to explain the context of the day given what technology was available. They prioritize source materials, search for corroborating evidence and contrary evidence, and test the product of their research. Castleman is not a historian of any type and is not qualified to apply their method in any way. He is proud of his refusal to consider contrary evidence, demonstrating his position as an advocate rather than expert. Castleman Dep. (Ex. H) at 32:25-36:25.

Despite Plaintiff's assertions, Castleman is "unable to describe the reaction of the medical community to the articles at the time they were first published." *In re Related Asbestos Cases*, 543 F. Supp. at 1149. To the extent Castleman's expertise is reading medical journals and interpreting their findings, that is no expertise at all. *Baldonado*, 2012 WL 1802066, at *4; *In re Guam Asbestos Litig.*, 1995 WL 411876, at *1. He is just a "librarian of asbestos research," *Rutkowski*, 1989 WL 32030, at *1, and it is not a librarian's expertise to read books and tell a jury what they mean.

Additionally, an expert witness with the appropriate business expertise could perhaps testify about how businesses become aware of developments in his or her field. *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). Or an expert witness with expertise in business ethics may

be able to testify on corporate responsibility. However, Castleman has no degree or training in ethics or professional responsibility, much less corporate responsibility. Except for being in the business of advocating for plaintiffs and their lawyers in asbestos litigation, Castleman is not a businessman and has no business degree. His science degrees are completely unrelated to any knowledge of corporate functions or operations. Castleman Rep. (Ex. A) at 1. Nothing suggests that Castleman has personal knowledge about the internal motivation for any company's actions. *DePaepe*, 141 F.3d at 720. Castleman simply is "not qualified to testify as an expert on the medical state of the art or anything else." *In re Guam Asbestos Litig.*, 61 F.3d 910, 1995 WL 411876, at *1.

Expert witnesses must have expertise to offer opinions in federal court. But there is no relevant field where Castleman practices as an expert outside the courtroom or qualifies him as an expert inside the courtroom. "A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Castleman's "profession," such that it is, is only testifying as a retained advocate. Accordingly, this Court should reach the same conclusion as in other courts in this District and nationwide, and exclude Castleman from testifying because he has no qualifications to testify in any relevant field at trial.

**B.      Castleman's Opinions Are Not Reliable.**

Even if Castleman had some relevant field of expertise (which he does not), his proposed testimony is not reliable, providing a second reason to exclude his testimony. Since *Daubert*, "parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added). The Seventh Circuit also has made clear that a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Lewis*, 561 F.3d at 705 (7th

Cir. 2009) (citation omitted).

As *Daubert* teaches, the reliability of an expert's principles and methods should be examined by factors: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. 509 U.S. at 593-94. This test "make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Castleman has no "field" of expertise, however, for this Court to ensure he applied the same rigorous analysis to his courtroom opinions as he does in his professional work. There is no scientific or principled methodology, much less a method that has reliability. Castleman calls himself an expert in "occupational and environmental health policy" (Castleman Rep. (Ex. A) at 1), but he actually is a self-employed anti-asbestos advocate. *See* Castleman Cong. Test. (Ex. F) at 82-86; Barry Castleman Cong. Test. (Ex. G) at 5-13. He holds a viewpoint, which is consistent with Plaintiff's theory of the case and closing argument, and he selects and then interprets documents consistent with his personal views. As the Seventh Circuit repeatedly has held, an "experts' work is admissible only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (citation omitted).

Plaintiff cannot meet his burden to show that Castleman's proposed testimony is based on reliable methods. Each of the *Daubert* factors shows a lack of any reliability:

**(1)     Whether the scientific theory or technique can be (and has been) tested**

There is no hypothesis in Castleman's "theory or technique." He only reads

the materials he wants to read. He believes that if he is unaware of relevant material, he has no obligation to look for it. *See* Castleman Dep. (Ex. I) at 48:17-20.

**(2)      Whether the theory or technique has been subjected to peer review and publication**

Castleman's book (which serves as the basis for his expert report and is incorporated into his expert report) has never been subject to peer review. Castleman Rep. (Ex. A) at 1. Neither has his research in testifying.

**(3)      Whether a particular technique has a known potential rate of error**

It is impossible to consider Castleman's error rate because he has never considered opinions contrary to his own. The fatal flaw in Castleman's technique is he has never done anything to investigate, research, or even consider the possibility that his historical views are incorrect.

**(4)      Whether the theory or technique is generally accepted in the relevant scientific community**

There are absolutely no standards to Castleman's "theory or technique." He does not do random sampling. He does not read from a defined universe of materials. Castleman just reads what he wants to read. Indeed, even when he is furnished with materials from another perspective, Castleman refuses to read it. Castleman Dep. (Ex. H) at 32:25-36:25.

Under each reliability factor, Castleman's method is not scientifically legitimate or principled. The *Daubert* Court explained that an expert's "knowledge connotes more than subjective belief or unsupported speculation," 509 U.S. at 589, but Castleman's knowledge is nothing more than his subjective view of history based on hand-picked documents that "found" him. Castleman Dep. (Ex. I) at 48:17-20 ("That material has its way of finding me."). Castleman's opinions are neither "based on sufficient facts or data," nor "the product of reliable principles and methods," as *Daubert* and Rule 702 demand.

**C.      Castleman's Opinions Are Not Relevant.**

Because Castleman follows no methodology, and because his opinions are just an advocacy-based interpretation of documents, his testimony will not assist the members of the jury. *Daubert* specifically prohibits hiring experts "to testify for a fee to propositions that they have not arrived at

through the methods that they use when they are doing their regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996). The same is true here.

"Indeed, allowing [Castleman] to testify based on nothing more than his review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself." *Baldonado*, 2012 WL 1802066, at *4 (citation omitted); *accord Fedro v. Reno*, 21 F.3d 1391, 1396 (7th Cir. 1994) (holding that where purported expert testimony adds nothing to material already before the jury, it is properly excluded).

Castleman's narrative testimony, based on his personal review of documents in the record, will not help the jury. Nor should the inferences that Castleman will draw from the documents be substituted for the inferences that will be drawn by the members of the jury when they are presented with the relevant evidence. There is no such thing as an expert inference-drawer, but that is exactly what Plaintiff seeks to present to the jury in an early closing argument through the "credentialed" Castleman. Such an "expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." *Hall*, 93 F.3d at 1343. In similar circumstances, this Court has asked, "If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?" *Baldonado*, 2012 WL 1802066, at *4 (citation omitted). As this Court's precedent makes plain, the answer is emphatically "No." *Rutkowski*, 1989 WL 32030, at *1; *Flood*, Tr. at 13:25-14:1 (Ex. C); *Deyerler*, Tr. at 122:10-124:6 (Ex. D).

## CONCLUSION

Castleman is not a qualified expert within the meaning of Rule 702 and *Daubert*. He follows no scientific or principled methodology, and his opinions are not reliable evidence to present to a jury. Instead, Castleman's advocacy-driven testimony is Owens-Illinois should be held liable because the "asbestos industry is a quasi-criminal industry in much of the world today, using its

power to corrupt political processes and control the media when challenged." Castleman Cong. Test. (Ex. G) at 13. His testimony will not help the members of the jury in understanding the evidence or deciding facts.

For these reasons, Owens-Illinois, Inc. respectfully requests that this Court exclude Barry Castleman Sc.D. from testifying in this case or alternatively from testifying about the knowledge and conduct of Owens-Illinois.

Respectfully submitted,

By: /s/ Brian O. Watson
      Matthew J. Fischer
      Edward Casmere
      Brian O. Watson
      Schiff Hardin LLP
      233 S. Wacker Dr. Suite 6600
      Chicago, Illinois 60606
      (312) 258-5500
      (312) 258-5600 (facsimile)

      *Attorneys for Defendant*
      *Owens-Illinois, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on August 23, 2013, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

12997-8392
CH2\13365096.4