**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES KRIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-7435 |
| v. | ) | |
| | ) | District Judge John Z. Lee |
| BP AMOCO CHEMICAL COMPANY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# OWENS-ILLINOIS, INC.'S MOTION AND BRIEF TO BAR THE LONGO/MAS VIDEOTAPED EXPERIMENTS AND RELATED TESTIMONY

Owens-Illinois, Inc. ("Owens-Illinois") moves to exclude the videotaped experiments conducted by one of Plaintiff's eleven disclosed experts, William Longo Ph.D. ("Longo") and his company Materials Analytical Services ("MAS"),[1] and any related testimony about those experiments under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). If necessary, Owens-Illinois further requests a *Daubert* hearing to determine their admissibility.

## INTRODUCTION

The Longo/MAS videos at issue in this motion are no stranger to a *Daubert* analysis. With this motion, Owens-Illinois seeks to exclude evidence that was already determined to be "junk science" that is "not scientifically reliable," supported by testimony that was "at least disingenuous." *In re Lamar County Asbestos Litig.*, No. 2000-3559, slip op. at 1-12, 2001 WL 35918974 (Tex. Dist. Ct. July 5, 2011) (Ex. B); *accord Sclafani v. Air & Liquid Sys. Corp.*, No. 12-cv-3013, 2013 WL 2477077, at

[1] Plaintiff has indicated that a new witness, John Templin, CIH, may be substituted for Longo, but has not requested leave to substitute a written report he prepared and signed under Rule 26(a)(2)(B). *See* E-mail from Tucker Eads (Ex. A), July 26, 2013. Owens-Illinois would not oppose the substitution, if permitted to take Mr. Templin's deposition and to supplement this motion if necessary.

*6 (C.D. Cal. May 9, 2013) (Ex. C). Decades ago, Longo brought various different types of asbestos-containing products into a small containment chamber and manipulated them to create dust. These experiments did not simulate real world work environments or attempt to re-create conditions similar to any particular plaintiff's alleged exposure or product use. They are generic dust generation experiments videotaped in a dark room with theatrical lighting. The products being manipulated vary in type and asbestos content, but the visual effect is always the same — clouds of dust floating through a high powered light beam set-off against a black background. The experimenters wear facemasks, air tanks, and in some cases special anti-contamination suits. In some videos disposal bags marked "DANGER" can be seen. The one thing that cannot be observed in the video experiments is respirable asbestos.

As explained by the noted Stanford University physicist, and expert in the field of optics and light scattering, Dr. Lambertus Hesselink, respirable asbestos fibers are too small to be seen on the Longo/MAS videos and the resolution of the videotape technology is incapable of capturing light that might scatter off of a respirable asbestos fiber. *See* Lambertus Hesselink Aff. (Ex. D) at ¶¶ 1-8, March 7, 2012. In other words, the scientific claims made in support of the Longo videos literally defy the laws of physics. *See id.* What is seen on the video is light scattering off of the large particles of the non-asbestos portion of the products (which make up 80 to 85 percent is some of the experiments) or aggregations of non-respirable materials. None of the visible particles are relevant.

The Longo/MAS videos have been excluded from courtrooms nationwide, and several courts have conducted full evidentiary hearings and issued detailed rulings why these videos should be excluded. *E.g.*, *Tyre v. CSX Transp., Inc.*, No. 16-2002-CA-4837, slip op. at 1-10, 2003 WL 26474173, at *1-4 (Fla. Cir. Ct. Sept. 24, 2003) (Ex. E); *In re Lamar County Asbestos Litig.*, slip op. at 1-12, 2001 WL 35918974 (Ex. B); *Sclafani*, 2013 WL 2477077, at *6 (Ex. C). As set forth below, the Longo/MAS videos (any pictures or other graphic representations of the experiments and any

related testimony) should be excluded because: (1) they do not "fit" the facts in this case; (2) they are not the product of reliable principles and methods; (3) they are not relevant to understand the evidence or to determine a factual issue; and (4) they only will unfairly prejudice Owens-Illinois and mislead the members of the jury.

**<u>THE VIDEO EXPERIMENTS AT ISSUE</u>**

Longo is a materials scientist who has worked as a witness in asbestos litigation for decades. He was never formally educated in industrial hygiene or public health, and has never received any education or training on how to measure asbestos in the workplace. William Longo Dep. (Ex. F) at 77:3-78:4, Feb. 12, 2007. Longo's videotaped experiments—more than eighty exist covering dozens of products—were made for litigation, in some cases, decades ago. These videos were sold at $2,500 apiece to plaintiff lawyers across the country for their asbestos personal injury cases just like this case (*see Tyre*, slip op. at 7 (Ex. E), 2003 WL 26474173, at *3), and he began advertising his services as an expert witness soon after starting MAS:



Longo readily admits that his experiments do not simulate the exposure of any particular plaintiff or their work environment. Longo Dep. (Ex. F) at 28:12-29:6. These experiments were not conducted to demonstrate, re-create, or illustrate Plaintiff's alleged work environment in this case. The video experiments Plaintiff intends to use, the "Kaylo videos," were created many years before Plaintiff's Complaint was even filed and any fact and expert discovery was ever conducted.[2]

Kaylo was an asbestos-containing thermal insulation product that was approximately 85 percent calcium silicate, and 15 percent asbestos. Owens-Illinois made and sold Kaylo thermal insulation from the late 1940s until April 1958, when the entire Kaylo thermal insulation business was sold to the Owens Corning Fiberglas Company (a separate company who continued to make and sell Kaylo insulation into the 1970s). Longo has never actually used or observed asbestos-containing Kaylo being used in any real-life work environment, nor has he ever published or subjected his Kaylo experiments to the peer review process.

The Kaylo video experiments, like the scores of other Longo/MAS videotaped experiments, were conducted inside the dark lined containment chamber where a high-intensity theatrical light was repeatedly switched off and on, and directed the light to shine through the dust. That beam of light was directed at an angle to maximize the light "scatter" on the dust particles to create a "Tyndall effect" (similar to turning on a car's high beams during a snow storm). The videos and the light scattering created by the "Tyndall effect" provide no quantitative information about the intensity, dose, duration, fiber type, fiber length, or human exposure to respirable asbestos fiber. In fact, none of what is actually visible on the video is respirable asbestos. For assessing the actual exposure that may occur from an asbestos-containing product from a health standpoint, it is only

[2] Owens-Illinois understands that Plaintiff intends to try to introduce some of the Longo/MAS videos that relate to experiments done on the Kaylo product (the "Kaylo videos"). Owens-Illinois seeks to exclude all of the Longo/MAS "Kaylo videos" and the arguments are the same regardless of which Kaylo experiment is at issue. Longo's "Kaylo III" study, which cannot be reduced to an electronic filing, will be filed as Exhibit G under General Order 2011-24.

the respirable asbestos that enters a person's breathing zone that is relevant. The Longo/MAS videos do not show respirable asbestos, but rather dramatize generic dust created from manipulating the products, including particles nowhere near the breathing zone:



Longo admits that "[w]e don't try to quantitate with Tyndall lighting." Longo Dep. (Ex. F) at 28:4-5. According to Longo, "a very large portion of the Kaylo dust we see would be of no interest to us from an industrial hygiene point of view," because "most of what's there is not asbestos." William Longo Test. (Ex. H) at 1132:15-1133:13, Sept. 16, 2003. He also admits that by looking at the videos: there is no way to distinguish the asbestos fibers from the non-asbestos dust; quantify the asbestos fibers; or determine what percentage of the dust is respirable versus non-respirable. Longo Dep. (Ex. F) at 120:16-21, 121:6-18, 125:7-14, 108:13-18. Longo will speculate

that, while the "majority" of the dust seen in his videos is not asbestos, the percentage of asbestos in the visible dust should be similar to the percentage of asbestos in the product (i.e., if a product has 15 percent asbestos then 15 percent of the visible dust is asbestos). *Id.* at 48:17-49:1. As discussed below, Longo's speculation is not only wrong, it is proved false by Longo's own work. Moreover, as explained by Dr. Hesselink, neither respirable asbestos fibers, nor light scattering from such fibers are visible in the videos. Hesselink Aff. (Ex. D) at ¶¶ 1-8. Not only is the video equipment and technology not generally accepted as a method for visualizing particles of the size at issue, the optical technique used is too insensitive by orders of magnitude to record light scattered by fibers the size Longo measured (by using a microscope). *Id.* at ¶ 5.

In addition to videotaping, Longo took quantitative air sampling measurements that were subsequently analyzed with microscopes (in order to actually see asbestos fibers scientists must magnify them tens of thousands of times, not de-magnify them by using a video camera and television screen).[3] That asbestos is released when asbestos-containing thermal insulation, like Kaylo, is cut or sawed is not in dispute. What is disputed is how much. The Longo/MAS videos do not answer that question, and in fact, they obfuscate it and grossly mislead.

**LEGAL STANDARD**

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). By its terms, Rule 702 allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education," where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has

[3] Owens-Illinois is not seeking to exclude the results of any quantitative air sampling results that were obtained using proper air sampling and NIOSH/OSHA-approved analysis for determining human workplace exposure to asbestos (i.e., Phase Contract Microscopy (PCM) results).

reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

*Daubert* therefore requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert. 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in deciding the admissibility of expert evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must do so. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002).

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94. "The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). The proponent of the expert bears the burden of showing that the expert's evidence would satisfy the Daubert standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

### I. The Longo/MAS Videos Do Not Fit the Facts of This Case.

Under *Daubert*, the Longo/MAS videos should be excluded because they do not "fit" the facts of this case. 509 U.S. at 591. The videos were not, and could not have been, designed to show

the exposures or conditions that Plaintiff sustained, as they were created decades before his case was even filed. As the Supreme Court held, however, experts must offer evidence "sufficiently tied to the facts of the case" so as to "fit" the case. *Id.*; *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996) (excluding videotaped demonstration where the forklift model in the video was not sufficiently similar to the forklift in the accident).

**A. Insufficient Environmental Fit.**

In Longo's generic experiments, the environmental conditions are in no way tied or fit to the facts in this case, nor were they designed to be sufficiently tied or fit. Unlike the Plaintiff's alleged exposures, Longo's demonstrations were performed in a "containment chamber," with controlled airflow and temperature, dark walls, little ambient light, and a theatrical spotlight. A variety of industrial hygiene factor distinguishes these made-for-litigation videos from the actual conditions in this case such as room size, ventilation, dust suppression techniques, products used, duration of exposure, and variability of exposure. *See generally* Reference Guide on Exposure Science, in *Reference Manual on Scientific Evidence* 505-48 (Fed. Judicial Ctr. 3d ed. 2011).

The Longo/MAS videos are non-specific demonstrations to show dust clouds from the manipulation of products in an artificial setting and bear no relation to Plaintiff's alleged exposures. The demonstrations do not resemble the working conditions in this case. They do not attempt to re-create, simulate, demonstrate, or quantify how much asbestos exposure Plaintiff sustained — nor could they since they were created, in some cases, many years before this case was even filed. Indeed, Longo admits that his videotaped demonstrations "do not recreate the workplace environment." Longo Dep. (Ex. F) at 28:18-19. Longo also concedes that: "We don't ever claim that the levels that we found are the exact levels that any one plaintiff may have been exposed to." *Id.* at 29:4-6. Longo's own published work outside of the asbestos litigation confirms that the Longo/MAS videos are not valid simulations because they are not faithful reproductions: "[A]

simulation approach is only valid if the simulation is realistic, this is, if the work conditions and worker performance are faithfully reproduced." Dale Keyes *et al.*, Baseline Studies of Asbestos Exposure During Operation and Maintenance Activities, 9 *Appl. Occup. Envtl. Hyg.* 853, 854 (Nov. 1994) (Ex. I).

**B. Insufficient Product Fit.**

Additionally, Longo has never performed his videotaped demonstrations on what he can prove was Owens-Illinois's Kaylo insulation. The Kaylo product that Longo tested in his original study was manufactured, he believes, sometime around 1966, well after Owens-Illinois had sold the Kaylo business to another company, Owens-Corning Fiberglas. William Longo Dep. (Ex. J) at 30:1-17, Apr. 30, 2007. Longo has admitted that he does not know (and has no way of knowing) whether any of the pipe or block insulation he has seen was manufactured by Owens-Illinois. *Id.* at 147:1-13. So Longo's unscientific position is that, while he cannot prove whether he tested actual Owens-Illinois Kaylo, it does not matter because every asbestos-containing calcium silicate insulation will "behave the same." William Longo Dep. (Ex. K), at 92:12-93:19, Feb. 23, 2013. As discussed below, Longo's own work disproves that presumption. Plaintiff cannot carry his burden under *Daubert* and Rule 702 because Longo's videotaped experiments are neither tied to this Plaintiff's case nor tied to the product in this case, and are not based on any facts, data, or real-world conditions relevant to this case.

**II. The Longo/MAS Videos Are Not Scientifically Reliable.**

Plaintiff also cannot sustain his burden that Longo's reasoning or methodology is scientifically reliable under *Daubert* and Rule 702. Since *Daubert*, "parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added). As the Supreme Court held, the reliability of an expert's principles and methods should be examined by factors: (1) whether the scientific theory or

technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. 509 U.S. at 593-94. These factors "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Longo's videos, and his claim that you can see respirable asbestos fibers, fail to meet the exacting standards required for expert evidence under *Daubert*. He has never subjected his videos to peer review and publication; never proved these videos as accepted in the scientific community; never proved that his theory or technique can be (and has been) tested; and never demonstrated the potential rate of error in his videotaped demonstrations. The Longo/MAS videos are not based on the conditions and product in this case, as discussed above, and completely lack any type of "reliable foundation." *Daubert*, 509 U.S. at 597. As courts have held, Longo's reasoning or methodology "is not an acceptable industrial hygiene practice and is not relevant or reliable for the quantification of airborne asbestos fibers." *In re Lamar County Asbestos Litig.*, slip op. at 11 (Ex. B), 2001 WL 35918974, at *1.

Moreover, the optical and video techniques used by Longo for visualization of asbestos fiber exposure are not accepted and are generally unreliable in the field of light scattering, optics, image processing, and data analysis and visualization. Hesselink Aff. (Ex. D) at ¶ 7. Longo's video camera and videotape, and television are the wrong media to visualize invisible particles. They take a large image (the size of a room) and shrink it down to the size of a television screen de-magnifying the image. Respirable asbestos fibers of the size measured by Longo are invisible to the naked eye and must be magnified hundreds to thousands of times to become visible. *Id.* at ¶ 8.

The Supreme Court and the Seventh Circuit prohibit experts, like Longo, who testify for a

fee to courtroom methods that are not used "when [experts] are doing their regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996). That same is true here. The Longo/MAS videos "specifically prepared for purposes of litigation are not, by definition, 'of a type reasonably relied upon by experts in the particular field.'" *United States v. Marine Shale Processors*, 81 F.3d 1361, 1370 (5th Cir. 1996) (quoting *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994)). The Longo/MAS videos are exactly the type of junk science that *Daubert* should exclude.

Courts across the country have excluded the Longo/MAS videos, and three orders are particularly instructive on this point. *Sclafani*, 2013 WL 2477077, at *6 (Ex. C); *Tyre*, slip op. at 1-10 (Ex. E), 2003 WL 26474173, at *1-4; *In re Lamar County Asbestos Litig.*, slip op. at 1-12 (Ex. B), 2001 WL 35918974, at *1.[4] First, and earlier this year, the Central District of California excluded the Longo/MAS videos and held that Longo's techniques are "at odds with" generally accepted scientific methods, and "therefore are *not* the product of 'reliable principles and methods,' a prerequisite of the introduction of expert testimony under Rule 702." *Sclafani*, 2013 WL 2477077, at *6 (citation omitted; emphasis original).

Similarly, the *Tyre* court made a "specific finding" after its full hearing that "the simulated studies do not meet substantial conditions on the facts of this case. The ventilation consideration alone would require that finding even if there were no other considerations." *Tyre*, slip op. at 7 (Ex. E), 2003 WL 26474173, at *3. The *Tyre* court also concluded that the "testimony of Richard L. Hatfield [Longo's colleague] and Dr. William E. Longo regarding the work practice studies and videotapes which are the subject of this hearing and order are excluded and shall not be admitted,"

[4] *Grigg v. Allied Packing Supply Inc.*, No. RG12 629580, slip op. at 1-3 (Cal. Super. Ct. March 22, 2013); Tr. at 582-84, *Streng v. Bldg. Serv. Indus. Sales Co.*, No. 06-CV-5841 (Wis. Cir. Ct. Jan. 12, 2012); Tr. at 352, *Breske v. Georgia Pacific Corp.*, No. 05-L-3923, slip op. at 1 (Ill. Cir. Ct. Jan. 26, 2007); *Miller v. Georgia-Pacific LLC*, No. 2317, slip op. at 1 (Pa. C.P. Dec. 5, 2011) (collectively Ex. L).

that "the subject work practice studies are irrelevant and would tend to mislead a jury," and that the "videotapes are irrelevant and unduly prejudicial." *Id.*

Third, and perhaps of greatest practical importance, the *Lamar* court excluded Longo/MAS videos after a full *Daubert* hearing. *In re Lamar County Asbestos Litig.,* slip op. at 1-12 (Ex. C). The *Lamar* court noted that "Longo's testimony was at least disingenuous," and that the "videotaping was deceptively out of focus." *Id.* at 4. That lack of focus distorted the view of the dust particles in the air, "giving the overall effect of a snow storm." *Id.* at 11. The *Lamar* court therefore held that Longo's videotaped demonstrations are "not scientifically reliable," are "not admissible," and "constitute junk science." *Id.* at 1, ¶¶ 2-3. As these findings of *Sclafani*, *Lamar*, and *Tyre* make clear, the Longo/MAS videos are scientifically unreliable and should be excluded.

## III. The Longo/MAS Videos Are Not Relevant and Will Not Assist the Jury.

Longo/MAS videos also are improper because they are not relevant and will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591 ("This condition goes primarily to relevance."). As explained above, these videos bear no relation to the Plaintiff's alleged exposure to Owens-Illinois Kaylo. Moreover, the Longo/MAS videos are not helpful to the members of the jury because respirable asbestos fibers are not visible on the videos, and the visible dust does not reflect the amount of asbestos exposure.

### A. Respirable Asbestos Fibers Are Not Visible on Longo/MAS Videos.

First, the Longo/MAS videos provide no information as to how much asbestos the Plaintiff was exposed to, and, in fact, they will confuse and deceive the jury. We cannot see respirable asbestos with the naked eye. Looking at the videos does not give the jurors any indication as to how much asbestos could be inhaled. As Dr. Hesselink testifies in his affidavit, respirable asbestos fibers are not visible from Longo's videos. Hesselink Aff. (Ex. D) at ¶ 5. The videotape does not depict asbestos fibers because the size of the fibers, as allegedly measured by Longo, is too small to see

with his video techniques. *Id.* at ¶ 5(a).

The technique used by Longo to videotape the demonstrations is too insensitive—by several orders of magnitude—to record the light scattered by asbestos fibers. Additionally, Longo's methodology is not accepted as a method to show particles this small. The proper instrument for observing sub-micron particles is an optical microscope or an electron microscope, which would magnify small particles and make them visible to the human eye or a camera. By contrast, Longo's video equipment actually reduces the image of the particles, making it even more difficult to see sub-micron particles. *Id.* at ¶ 5(e). In other words, the videotaped demonstrations cannot depict or "visualize" any of the asbestos fibers that Longo measured. *Id.* at ¶ 5(f). Thus, Longo's videotaped demonstrations could mislead the jurors to believe that the dust they see is respirable asbestos, when in reality this belief is far from the truth.

**B. Visible Dust Does Not Quantify Asbestos Exposure.**

Second, the visible dust in the Longo/MAS videos does not show the amount of asbestos exposure. Over the decades, Longo has used several asbestos-containing insulation products in his demonstrations. Most of these products contained about 15% asbestos, but at least one, Unibestos, contained at least 60% asbestos. Despite this massive difference in asbestos content, Longo admits the insulation products look the same in his videos—even though the amount of asbestos exposure is dramatically different. Longo Dep. (Ex. I) at 48:10-14, 53:15-17. Longo has even admitted that amount of dust visualized using the "Tyndall effect" would be the same if he was cutting asbestos-free, or asbestos-containing Kaylo. William Longo Dep. (Ex. M) at 137:6-10, Sept. 19, 1997.

Any suggestion that the amount of asbestos in the visible dust equals the amount of asbestos in the product (i.e., if the product had fifteen percent asbestos, then fifteen percent of the dust you see is asbestos) is flat wrong. From Longo's own experiments, Unibestos insulation released more than five times the amount of asbestos than other insulation materials. William Longo Dep. (Ex. N)

at 19:9-20:10, May 1, 2006 (identifying 1.72 fibers of asbestos per cubic centimeter (f/cc) for Unibestos and .39 f/cc for Kaylo). Similarly, while Pabco insulation and Owens-Corning Fiberglas (not Owens-Illinois) Kaylo insulation have about 15% asbestos, Pabco created an exposure nearly double the amount of asbestos fibers. *Id.* at 19:9-20:10 (identifying .7 f/cc for Pabco and .39 f/cc for Kaylo). What you see is not what you get. The videos of cutting insulation all look the same, according to Longo, but the asbestos exposure varies enormously. You cannot see asbestos in videos, and Longo has admitted that asbestos-free Kaylo would look the same. Thus, Longo's demonstrations show clouds of non-asbestos material that are not relevant to this case and will not help the jurors to evaluate actual asbestos exposure.

**IV. The Prejudicial and Misleading Effect of the Longo/MAS Videos Far Outweighs Any Probative Value.**

Finally, and critically, the Longo/MAS videos should be excluded because any probative value, if any, is substantially outweighed by their prejudicial effect and their potential for misleading the jury. As *Daubert* teaches, expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 595. District courts therefore should exercise "more control over experts" under Rule 403 under *Daubert*. *Id.* (citation omitted).

That control is "especially true" for videotaped expert evidence. *Guillory*, 95 F.3d at 1330-31 (excluding videotape under *Daubert* "where technical information is involved, it is easier for the jury to get lost in the labyrinth of concepts," and it "is especially true because the unreliable evidence here would have been presented in a [videotape] format"); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 530 (7th Cir. 1995) (excluding videotape which is "just similar enough to the Finchums' accident to confuse the jury and leave jurors with the prejudicial suggestion"); *Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 36 (1st Cir. 1990) (excluding videotape and holding that "[i]f a videotaped test is insufficiently comparable to the circumstances in the case, the videotape is inadmissible.").

The Longo/MAS videos have no probative value, as explained above, but their prejudicial

effect and potential for misleading the jury are substantial. The only result from these videos is showing jurors a highly exaggerated "snow storm" of dust surrounding the workers in the chamber, and giving them the prejudicial impression that the "snow storm" is asbestos. None of what they see is asbestos. The videos also show a small, ominous, dark chamber, with theatrical lighting, and a soundtrack that vacillates from eerie silence to loud buzzing noises. That prejudice is exacerbated when the courtroom lights are dimmed to display the videotapes, while Longo wears various breathing protection that further insinuate that something extremely dangerous is being performed. The "DANGER" label on the waste container is yet another source of unfair prejudice. All of this imagery will, by design or not, inflame the jury and severely prejudice Owens-Illinois.

**CONCLUSION**

The Longo/MAS videos are not reliable evidence, and they are not relevant to the facts in this case in any event. They do not depict respirable asbestos fibers, they do not provide quantitative data on exposure, and they are neither designed to, nor do they, simulate the Plaintiff's alleged exposure. For these reasons, Owens-Illinois requests that this Court exclude the experimental videotaped experiments (and any pictures or other graphic representations of the experiments) of Plaintiffs' disclosed expert witness, William E. Longo, Ph.D., and any related testimony because and any related testimony about those demonstrations.

Respectfully submitted,

By: /s/ Brian O. Watson

Matthew J. Fischer
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant*
*Owens-Illinois, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on August 23, 2013, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson