UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES KRIK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10-cv-7435 |
| BP AMOCO CHEMICAL COMPANY *et al.*, | ) District Judge John Z. Lee |
| Defendants. | ) |

**OWENS-ILLINOIS, INC.'S
MOTION AND BRIEF TO BAR THE "ANY EXPOSURE" OPINION**

Owens-Illinois, Inc. ("Owens-Illinois") moves to exclude the "any exposure" opinion of causation offered by Plaintiff's experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). If necessary, Owens-Illinois further requests a *Daubert* hearing to determine its admissibility.

**INTRODUCTION**

Plaintiff's experts intend to testify that any exposure to asbestos, no matter how slight, remote, or insignificant is a cause or substantial contributing factor to causing the Plaintiff's lung cancer (the "any exposure" opinion). That opinion fails Rule 702 and *Daubert* scrutiny, and is contrary to the substantive law governing this case. More than thirty federal and state courts across the country have, since 2005, excluded this opinion and concluded it is not scientifically reliable. This any exposure opinion offers a jury no scientific basis on which to decide whether Plaintiff had an exposure to any defendant's product sufficient to cause his injury and does not assist in applying the legal standard of causation. Owens-Illinois therefore requests that this Court, in its gatekeeping role under Rule 702 and *Daubert*, exclude the "any exposure" opinion of causation offered by Plaintiff's experts.

**BACKGROUND**

The "any exposure" opinion long ago) is a litigation-generated "one sizes fits all" approach that allows the Plaintiff's experts to provide causation opinions that will inculpate whichever defendant remains at trial. *E.g.*, Arthur Frank Rep. (Ex. A) at 1, Oct. 19, 2011. That opinion is neither relevant evidence nor scientifically reliable. It removes the "substantial" element from the legal causation standard and shifts the plaintiff's burden of proof on causation to the defendants:

> **Q. In a sense your opinion is that every exposure is essentially guilty until proven innocent and in your view the only innocent exposure is the one that did not exist?**
>
> A. That would be one way to say it. The one that didn't exist couldn't have caused the disease if it didn't exist. But otherwise, there is – there is no exposure that could ever be said to be innocent.[1]

This guilty-until-proven-innocent-and-you-can-never-prove-it-innocent approach allows Plaintiff's expert to conclude that any exposure from any defendant caused the disease in question.

> **Q. Your every-exposure-is-a-substantial-factor opinion includes any brief exposure even on a single occasion, correct?**
>
> A. Yes.[2]

Plaintiff has, in fact, stipulated that Dr. Frank's opinion is not based on any particular defendant or particular type of product.[3] The expert will implicate whatever exposure, from whatever source, in whatever amount as a cause at trial. Dr. Frank has never attempted to answer the fundamental question in the causation analysis, dose-response. The most basic scientific requirement for the formulation of an opinion—that of sufficient facts or data—is entirely absent from Dr. Frank's "any exposure" causation opinion in this case:

---

[1] Arthur Frank Dep. (Ex. B) at 21:21-22:7, Jan. 3, 2006.
[2] *Id.* at 17:13-17.
[3] Arthur Frank Dep. (Ex. C) at 128:8-11, Jan. 25, 2012.

> **Q. Consistent with your earlier testimony, you're not able to quantify the extent of exposure to any Owens-Illinois products in Mr. Krik or the incremental increase that such exposure might have increased his risk of lung cancer; correct?**
>
> A. Correct.[4]

The any exposure testimony is complete speculation that has never been proven in any peer-reviewed scientific literature. No medical doctor or scientist has tried to publish the opinion that every exposure to asbestos should be considered an actual cause of disease, thereby subjecting the unsupported opinion to criticism by the scientific community. The opinion itself is inconsistent with human experience: millions of asbestos fibers are breathed in by the general population without causing any disease. It cannot both be true that exposure to millions of asbestos fibers from the ambient air over a lifetime do not cause disease, and any single fiber exposure that can be attributed to a defendant that decides to defend itself in a civil case does.[5]

The "any exposure" opinion nullifies the "substantial contributing factor" test—a legal standard intended to distinguish substantial exposures from insubstantial exposures. Under maritime law, however, the federal courts have rejected such nullification by refusing to allow the any exposure opinion. *Lindstrom v. AC Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005)(holding that "every exposure to asbestos, however slight, was a substantial factor" would render the substantial factor test under maritime law "meaningless"). As the Court of Appeals reasoned, a "holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion." *Id.*

## LEGAL STANDARD

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

---

[4] *Id.* at 129:11-16.

[5] Mark A. Behrens & William L. Anderson, *The "Any Exposure" Theory: An Unsound Basis for Asbestos Causation and Expert Testimony*, 37 Sw. U. L. Rev. 479 (2008).

By its terms, Rule 702 allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education," where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

*Daubert* therefore requires a district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert. 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in deciding the admissibility of expert evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'" (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011))). It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must do so. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002).

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94. "The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). The proponent of the expert bears the burden of showing that the expert's evidence would satisfy the

*Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

### I. The Any Exposure Opinion Is Not Relevant or Helpful to the Jury.

Under *Daubert*, expert testimony that does not relate to any issue in the case is neither relevant nor helpful. 509 U.S. at 591 (citations omitted). In this case, the MDL Court has determined that maritime law is applicable to Plaintiff's claims against Owens-Illinois, *Krik v. BP Am., Inc.*, No. 11-cv-63473, 2012 WL 2914238 (E.D. Pa. May 15, 2012). The any exposure opinion is contrary to the causation standard under maritime law and therefore is not relevant or helpful to the jury. *See Lindstrom*, 424 F.3d at 493.

Maritime law, like Illinois and many states' common law, has adopted the "substantial contributing factor" test for asbestos causation. *Id.* In *Lindstrom*, the Court of Appeals held that the any exposure opinion of causation is insufficient as a matter of law. *Id.* It is "meaningless" to offer a causation opinion "that there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing . . . disease." *Id.*[6] The same is true here.

Here, as in *Lindstrom*, the any exposure causation opinion should be prohibited. Plaintiff's causation experts, such as Dr. Frank, should be barred from testifying that any exposure was a substantial factor in causing Plaintiff's injury. Frank Dep. (Ex. B) at 16:13-20, 17:13-17; Frank Dep. (Ex. C) at 128:8-11; Arthur L. Frank Rep. (Ex. A) at 1, Oct. 19, 2011 ("The cumulative exposures he had to asbestos, from any and all products, containing any and all fiber types, would have contributed."). Under Rule 702 and *Daubert*, Dr. Frank's any exposure opinion of causation is simply

---

[6] *Lindstrom* also affirmed the district's court decision that the any exposure opinion of causation is, at heart, a legal conclusion, and a court cannot allow the opinion. "This argument would completely obviate the 'substantial factor' and the 'proximate cause' standards." *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603, 605 (N.D. Ohio 2004), *aff'd sub nom. Lindstrom*, 424 F.3d at 488.

not relevant or helpful to the jury.

## II. The Any Exposure Opinion Is Not Reliable and Not Based on Science.

"Since *Daubert*, moreover, parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added). In toxic tort cases, the Seventh Circuit also has warned that a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable." *Lewis*, 561 F.3d at 705. The any exposure opinion represents a highly unscientific and entirely unreliable approach to causation.

### A. The Any Exposure Opinion Ignores the Fundamental Principle of Toxicology—Establishing the Dose Necessary to Cause Disease.

The science of toxicology rests on the bedrock principle that "the dose makes the poison." Federal Judicial Center, *Reference Manual on Scientific Evidence* 403, 475, 603, 651 (3d ed. 2011). "Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." David Eaton, *Scientific Judgment and Toxic Torts: A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Poly 5 (2003) ("*Toxicology for Judges*"). The any exposure opinion, however, disregards this most important principle of toxicology and is not consistent with the standards for legitimate expert testimony.

Disease occurs when those exposures reach a "threshold" level that overwhelms our natural defenses. Aspirin, water, sunlight, or even known "poisons," such as arsenic, are harmful only at high enough doses and are harmless—or even beneficial—at lower doses. For any given response, there is a dose at which the effect begins to appear and a dose below which it does not. The dose matters. This principle of "dose-response" holds true for carcinogens, such as asbestos, just as much as it does for any other toxins:

> Most chemicals that have been identified to have "cancer-causing" potential (carcinogens) do so only following long-term, repeated exposure for many years. Single exposures or even repeated exposures for relatively short

>periods of time (e.g., weeks or months) generally have little effect on the risk of cancer, unless the exposure was remarkably high and associated with other toxic effects.

*Toxicology for Judges* at 9.

Asbestos, likewise, is not a known carcinogen until levels exceed human tolerance. *Reference Manual on Scientific Evidence* at 603, 635. The most apparent evidence is the background exposures we all receive in our entire lives. In fact, among the general population in this country, the average person is exposed to roughly 100 million asbestos fibers during their lifetime.[7] Every exposure we encounter, however, is not a cause of asbestos disease. Minor asbestos exposures, while the subject of frequent regulatory comment and action, have never appeared in epidemiology studies as a significant cause of disease.

As the Seventh Circuit recently explained, the proper causation analysis begins with a measurement, or at least a reasonable estimate, of the likely dose received by plaintiff. *Schultz v. Akzo Nobel Paints, LLC*, --- F.3d ----, 2013 WL 3215674, at *4-8 (7th Cir. June 26, 2013). A causation expert then compares that dose (without speculation) to the dose that scientific studies confirm to cause the disease, typically demonstrated in a series of epidemiological studies of various exposed populations. *Id.*[8]

Under Rule 702 and *Daubert*, it is incumbent on causation experts to prove the dose that is a potential cause, under scientific studies, and not merely presume that any amount of occupational

---

[7] National Research Council, Committee on Non-Occupational Health Risks of Asbestos Formed Fibers, *Asbestiform Fibers Non-Occupational Health Risks* 62 (1984).

[8] Courts routinely require plaintiffs to demonstrate not just some exposure, but "evidence from which the trier of fact could conclude that the plaintiff was exposed to *levels of toxins sufficient* to cause the harm complained of." *Wintz v. Northrop Corp.*, 110 F.3d 508, 513 (7th Cir. 1997) (citing *Reference Manual on Scientific Evidence*) (emphasis added). This standard is as true for asbestos as for any other potentially toxic substance. *Bartel*, 316 F. Supp. 2d at 611 (rejecting any exposure opinion as not supported by medical literature), *aff'd sub nom. Lindstrom*, 424 F.3d at 488; Federal Judicial Center, Reference Manual on Scientific Evidence, Reference Guide on Epidemiology 338 (3rd ed. 2011) (such experiments are considered the gold standard for determining the relationship of an agent to a disease or health outcome).

exposure is sufficient.  *See id.*  Unlike the causation expert in *Schultz*, however, Dr. Frank and any exposure theorists cannot identify any scientific studies that confirm the danger of asbestos exposure above what they call "background":

> **Q.     What's the scientific source of the conclusion that puts that number at background and one fiber above background?**
>
> A.     There is no scientific source for that. . . .
>
> . . . .
>
> **Q.     What is the source of scientific authority that says it's more likely than not as soon as you get above background?**
>
> A.     I'm not sure that's really a scientific judgment as much as it is a judgment of my understanding of, you know, having done these kinds of cases for a long time when I'm asked, you know, Doctor, would you answer with a reasonable degree of medical certainty, and my certainty has to be above 50 percent.

*Compare* Frank Dep. (Ex. C) at 92:22-94:14 with *Schultz*, 2013 WL 3215674, at *6 (finding scientific "studies that Dr. Gore cited in support of his opinion that greater than 10 ppm-years exposure increases the risk of AML," and "scientific studies confirm the danger of exposure to more than 10 ppm-years").  Here, unlike *Schultz*, this Court's "concern about an ill-defined floor" is unquestionably justified.  *Cf. Schultz*, 2013 WL 3215674, at *6.

In toxic tort cases, like the Seventh Circuit in *Schultz* and the Sixth Circuit in *Lindstrom*, federal courts have consistently held that a causation expert must offer proof of an actual dose under *Daubert* and Rule 702.[9]  It is not enough to opine that a plaintiff was "exposed." "Dose" must

---

[9] *E.g., In re Bextra & Celebrex Marketing Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1174-75 (N.D. Cal. 2007) (studies did not show that dose at issue could cause the alleged injury; "The Court finds that dose matters."); *McLain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) ("In toxic tort cases, [s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that [the] plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden."); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir.) (upholding exclusion of expert witness who "made no attempt to determine what amount of PCB exposure"), *cert. denied*, 534 U.S. 822 (2001); *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) ("[A] plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover"); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998), *cert. denied*,

be distinguished from "exposure." The fact of exposure in itself says virtually nothing about the likelihood that the exposure caused a plaintiff's disease. *Moeller v. Garlock Sealing Techns., Inc.*, 660 F.3d 950, 955 (6th Cir. 2011) ("saying that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean's volume").

Dr. Frank's testimony typifies the misuse of this any exposure opinion. He admits that he did not take into account the dose, duration, or source of plaintiff's alleged exposure to asbestos—whether the exposure was for five minutes or forty years, or to a high dose or low dose, made no difference to him. Frank Dep. (Ex. C) at 128:8-11; Frank Dep. (Ex. B) at 16:13-20; *see also* Frank Rep. (Ex. A) at 1. Instead, he testifies that any exposure to any asbestos fiber, no matter how small the dose, is a substantial contributing cause of plaintiff's injury. Frank Dep. (Ex. C) at 128:8-11; Frank Dep. (Ex. B) at 16:13-20. This approach ignores fundamental toxicology principles and is without scientific foundation.

### B. The Any Exposure Opinion Is a Speculation, Not Scientific Analysis.

The any exposure opinion stands in sharp contrast to an appropriate scientific causation analysis. *Cf. Schultz*, 2013 WL 3215674, at *4-8. Indeed, Dr. Frank's opinion cannot be said to have applied any scientific methodology at all; it was based entirely on the untested assumption that any exposure to asbestos, regardless of dose, contributes in a meaningful way to the development of lung cancer. Frank Dep. (Ex. B) at 16:13-20; Frank Dep. (Ex. C) at 128:8-11. Under *Daubert* and Rule 702, the Supreme Court and the Seventh Circuit prohibit litigation experts, like Dr. Frank, who

---

526 U.S. 1064 (1999) ("Because he had no accurate information on the level of Moore's exposure to the fumes, Dr. Jenkins necessarily had no support for the opinion that the level of chemicals to which Moore was exposed caused RADS."); *Abuan v. General Elec. Co.*, 3 F.3d 329, 332-34 (9th Cir. 1993) ("In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to harmful levels of such substances"), *cert. denied*, 510 U.S. 1116 (U.S. 1994).

testify to methods that are not used "when [experts] are doing their regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996).

Courts nationwide have recognized that the any exposure opinion has no grounding in the peer-reviewed scientific literature, nor has the opinion been adequately and repeatedly tested for reliability. Months ago, the District Court of Utah rejected this opinion as unproven:

> This court agrees with the general assessment of these various state and federal courts that the every exposure theory does not qualify as admissible expert testimony. The *Butler* court summed up expert testimony regarding the every exposure theory accurately by stating that an expert's "any exposure theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis."

*Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *5 (D. Utah Jan. 18, 2013) (quoting *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 552 (Ga. Ct. App. 2011)). Such an unproven hypothesis is not a permissible basis for expert testimony because a "medical expert's ultimate opinion must be grounded in the scientific process and may not be merely a subjective belief or unsupported conjecture." *Lewis*, 561 F.3d at 705 (affirming district court's exclusion).

### C. Courts Across the Nation Have Rejected the Any Exposure Opinion.

In the last few years, courts across the nation have carefully examined the any exposure opinion and have routinely rejected it as unscientific.[10] The courts rejecting this opinion include the Sixth Circuit Court of Appeals (three times), at least eight federal district courts, the highest courts of Texas, New York, Pennsylvania, and Virginia, and trial and state appellate courts in Texas, Georgia, Florida, Delaware, Ohio, Mississippi, and Pennsylvania, among others.[11]

---

[10] *See generally* David C. Landin et al., *Lessons Learned from the Front Lines: A Trial Court Checklist for Promoting Order and Sound Public Policy in Asbestos Litigation*, 16 Brook. J.L. & Pol'y, 637-641 (2008) (collecting cases).

[11] Federal court cases include *Pluck v. B.P. Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011); *Moeller*, 660 F.3d at 950; *Martin*, 561 F.3d at 439; *Anderson v. Ford Motor Co.*, No. 06-CV-741, 2013

In the federal courts, the Sixth Circuit has repeatedly rejected the any exposure opinion as a basis for asbestos causation. *Martin*, 561 F.3d at 439; *Lindstrom*, 424 F.3d at 488; *Moeller*, 660 F.3d at 950. The Sixth Circuit found the inconsistency in the any exposure opinion: it "would make every incidental exposure to asbestos a substantial factor." *Martin*, 561 F.3d at 443; *Moeller*, 660 F.3d at 955.

Just this year, four federal district courts have rebuked the any exposure opinion with very strong language:

> [The] opinion is, as a matter of law, unsupported by sufficient or reliable scientific research, data, investigations or studies, and is inadmissible under Rule 702. . . . the every exposure theory as offered as a basis for legal liability is inadmissible speculation that is devoid of responsible scientific support. . . .
>
> The every exposure theory does not hold up under careful examination. . . . It is questionable whether it can even properly be called a theory. . . . The every exposure theory is based on the opposite: a lack of facts and data. . . . It

---

WL 3179497 (D. Utah June 24, 2013); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-CV-3013, 2013 WL 2477077 (C.D. Cal. May 9, 2013); *Smith*, 2013 WL 214378, at *5; *Wannall v. Honeywell Int'l, Inc.*, No. 10-cv-351, 2013 WL 1966060 (D.D.C. May 14, 2013); *Bartel*, 316 F. Supp. 2d at 611; *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006 (E.D. Wash. 2010), *aff'd*, 438 Fed. App'x 607 (9th Cir. 2011); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142 (E.D. Wash. 2009); *In re W.R. Grace & Co.*, 355 B.R. 462 (Bankr. D. Del. 2006), *appeal denied*, 2007 WL 1074094 (D. Del. Mar. 26, 2007); *see also Barabin v. AstenJohnson, Inc.*, 700 F.3d 428 (9th Cir. 2012) (reversing trial verdict based in part on any exposure opinion due to trial court's inadequate *Daubert* analysis).

State court cases include *Ford Motor Co. v. Boomer*, 2013 WL 119703 (Va. Jan. 10, 2013) (declining to address any exposure opinion directly but requiring plaintiff's experts to "opine as to what level of exposure is sufficient to cause mesothelioma, and whether the levels of exposure at issue in this case were sufficient"); *Betz*, 44 A.3d at 27 (affirming *In re Toxic Substances Cases*, 2006 WL 2404008 (Pa. Ct. Com. Pl. Allegheny County Aug. 17, 2006)); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216 (Pa. 2007); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007); *Parker v. Mobil Oil Corp.*, 857 N.E.2d 1114 (N.Y. 2006); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537 (Ga. Ct. App. 2011); *Smith v. Kelly-Moore Paint Co., Inc.*, 307 S.W.3d 829 (Tex. Ct. App. 2010); *Georgia-Pacific Corp. v. Stephens*, 239 S.W.3d 304 (Tex. Ct. App. 2007); *Georgia-Pacific Corp. v. Bostic*, 320 S.W.3d 588 (Tex. Ct. App. 2010); *Daly v. Arvinmeritor, Inc.*, 2009 WL 4662280 (Ha. Cir. Ct. Broward County Nov. 30, 2009); *In re Asbestos Litig. (Certain Asbestos Friction Cases Involving Chrysler LLC)*, 2008 WL 4600385 (Pa. Ct. Com. P Phila. County Sept. 24, 2008); *Free*, 2008 WL 728387, at *1 (trial order); *In re Asbestos Litig. (Pena v. Bondex)*, 2007 WL 5994694 (Tex. Dist. Ct. July 18, 2007); *Basile v. American Honda Motor Co., Inc.*, 2007 WL 712049 (Pa. Ct. Com. Pl. Indiana County Feb. 22, 2007*); Brooks v. Stone Architecture, P.A.*, 934 So. 2d 350 (Miss. Ct. App. 2006).

seeks to avoid not only the rules of evidence but more importantly the burden of proof.

*Smith*, 2013 WL 214378, at *5; *accord Anderson*, 2013 WL 3179497 at *1-7; *Sclafani*, 2013 WL 2477077, at *4-6; *Wannall*, 2013 WL 1966060, at *13-16.

State supreme courts have also rejected the any exposure opinion. Most recently, the Pennsylvania Supreme Court in a unanimous 53-page decision affirmed the exclusion of testimony based on the any exposure opinion. *Betz v. Pneumo Abex, LLC*, 44 A.3d 27 (Pa. 2012). The *Betz* Court found that the any exposure opinion was in "irreconcilable conflict with itself" because "one cannot simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive." *Id.* at 56. The overwhelming majority of courts have concluded that the any exposure opinion is not reliable expert evidence, and it should be excluded under the exacting standards of Rule 702 and *Daubert*. Owens-Illinois respectfully requests the same result in this case.

### III. The Prejudicial and Misleading Effect of the Any Exposure Opinion Far Outweighs Any Probative Value.

Expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 595. Therefore, district courts should exercise "more control over experts" under Rule 403. *Id.* (citation omitted). The any exposure opinion should be excluded because any probative value is substantially outweighed by the prejudicial effect and their potential for misleading the jury. The opinion actually seeks to mislead the jury into rendering a verdict based on a theory of causation that is contrary to the applicable law.

As discussed above, maritime law and *Daubert* expressly reject the idea that experts are allowed to nullify the legal standard by cloaking their nullification in the form of a "medical opinion." Under this any exposure opinion, however, an expert essentially flips the causation standard and burden of proof, which confuses and misleads the fact finder from the true causation

issues in this case. Because "the probative value of such unsupported speculation by [any exposure experts] is substantially outweighed by the danger of unfair prejudice, as well as being confusing, and presenting a danger of misleading the jury," it should be excluded. *Smith*, 2013 214378, at *2.

## CONCLUSION

For these reasons, Owens-Illinois, Inc. respectfully requests that this Court exclude the "any exposure" opinion of causation from Plaintiff's expert witnesses under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Respectfully submitted,

By: /s/ Brian O. Watson
Matthew J. Fischer
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant
Owens-Illinois, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on August 23, 2013, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

12997-8392
CH2\13406772.4