EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - -

| | |
|---|---|
| DOROTHY ANN JACKSON | :Case No. 1:99 |
| Fiduciary of the Estate | :CV 10802 |
| Of James E. Jackson | : |
| Deceased, | : |
| | : |
| v. | : |
| | : |
| A-C PRODUCT LIABILITY | : |
| TRUST, et al. | : |

- - -
JANUARY 3, 2007
- - -

Telephonic oral deposition of ARTHUR L. FRANK, MD, Ph.D., taken pursuant to notice, was held at the offices of Drexel University, 1505 Race Street, Bellett Building, 13th Floor, Philadelphia, Pennsylvania, beginning at 9:10 a.m., on the above date, before Nancy D. Ronayne, a Professional Court Reporter and Notary Public in the Commonwealth of Pennsylvania.

- - -

ESQUIRE DEPOSITION SERVICES
Four Penn Center, Suite 1210
1600 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103
(215) 988-9191

```
                - - -
              I N D E X
                - - -
Testimony of: ARTHUR L. FRANK, MD, Ph.D.
                    PAGE
  By Mr. Casmere       8, 110, 118
  By Mr. Connor        63
  By Mr. Tivin         77
  By Mr. Proels        79
  By Ms. Hong          101
  By Mr. Kramer        102
  By Mr. Mitchell      109
  By Mr. Krispin       112

                - - -
             E X H I B I T S
                - - -

NO.      DESCRIPTION            PAGE

Frank-1  Amended Notice of
           Deposition              8
Frank-2  Curriculum Vitae          8
Frank-3  3-page document, letter
           from Dr. Frank with 2
           attached pages with
           list of products
           Manufacturers/Suppliers 8
Frank-4  Collective documents
           including depositions,
           medical records, et cetera 8
```

Page 6

```
                - - -
        DEPOSITION SUPPORT INDEX
                - - -

Direction to Witness Not to Answer
Page Line    Page Line    Page Line
None



Request for Production of Documents
Page Line    Page Line    Page Line
None




Stipulations
Page Line    Page Line    Page Line
None




Question Marked
Page Line    Page Line    Page Line
None
```

Page 7

ARTHUR L. FRANK, MD, Ph.D., after having been duly sworn, was examined and testified as follows:
 - - -
(Frank-1 through Frank-4 marked for identification.)
 MR. CASMERE: Does anyone want to put anything on the record before we start?
 (No response.)
 MR. CASMERE: I think there was an agreement off the record that an objection by one is an objection by all; is that true?
 MR. KRISPIN: That is correct.
 - - -
 DIRECT EXAMINATION
 - - -
BY MR. CASMERE:
 Q. Good morning, Dr. Frank, how are you?
 A. Good, good morning. I'm

Page 8

fine, thank you.
 Q. My name is Ed Casmere and we have not had the pleasure of meeting before. It's nice to meet you.
 A. Good to meet you, sir.
 Q. Before we started the deposition we just marked a couple of things as exhibits and if we could -- and to maybe speed things along I'll just go through and identify them and see if you agree with me. The first thing that we marked which is Frank-1, is the amended notice of the deposition; is that right?
 A. Yes, sir.
 Q. And that's a three page document that has Exhibit A which is a Duces Tecum?
 A. Yes, sir.
 Q. And you have seen the prior version of this where it asked you to bring the items on the Duces Tecum?
 A. Yes, sir.
 Q. And you did your best to comply with that?

Page 9

3 (Pages 6 to 9)

**Page 14**

Q. And, Doctor, I know that you have been deposed many times by -- not by myself but by other people and my colleagues so I'm going to dispense with sort of the normal deposition perfunctory issues and I also -- I assume that your expertise and all of your board certifications have not changed in the last six months?

A. Correct. It's all enumerated in my CV.

Q. Okay. I hope to cut through this relatively quickly. The first thing that I want to do, Doctor, is make sure that I understand what your opinions generally are about asbestos and causation and also with respect to the Jackson case, based on your prior testimony, just make sure that I have an understanding of it. So I'm going to ask you a number of questions and make sure that we are on the same page. Okay?

A. That's fine.

Q. It is your opinion that each

**Page 15**

and every exposure Mr. Jackson had to asbestos was a substantial factor in causing his mesothelioma?

A. Yes, sir.

Q. And that every fiber or every exposure is a substantial factor?

A. Yes, sir.

Q. And you hold that opinion as to every product listed in your report?

A. Yes, sir. Each and every product as listed beginning on the top of page 2 and going through the middle of page 3 as enumerated with every type of product from every manufacturer or supplier would be my opinion in this case.

Q. And you also would hold the opinion that to the extent that there were asbestos exposures that were not identified, not put in your report, those too would be also substantial factors?

A. If those did occur, I'm not aware of them. These are the ones that were identified to me or were identified

**Page 16**

through the reading of the transcripts. If there are others that others can identify, those would be looked at in exactly the same way.

Q. And when you say exactly the same way, you mean --

A. Each and every exposure to any and all fibers from any and all products as enumerated on pages 2 and 3 of my report would have been a substantial contributing cause to Mr. Jackson's mesothelioma.

Q. You also hold the opinion that every exposure is a substantial factor regardless of how infrequent or slight a product exposure was?

A. If it is noted to be above the background that Mr. Jackson would have had without those exposures or that you and I would have, yes.

Q. And so I understand what you mean by that is when you refer to background you're referring to what is in the ambient air, correct?

**Page 17**

A. Correct.

Q. And so any exposure to any product then would increase -- would be above background because that would be an exposure that they wouldn't have had from the ambient air; is that right?

A. Correct.

Q. So any exposure at all is in your opinion above the background because it comes from something other than the ambient air?

A. Correct.

Q. Your every exposure-is-a-substantial-factor opinion includes any brief exposure even on a single occasion, correct?

A. Yes.

Q. And when you in your report say "individually and cumulatively," you're saying that all of the exposures put together were a substantial factor as well as each one being a substantial factor on its own?

A. Yes, sir. That each and

```
 1   every exposure had the capacity to
 2   produce his mesothelioma.  The likelihood
 3   of his getting his mesothelioma was
 4   collectively and cumulatively represented
 5   by all of his exposures.
 6        Q.   And in your view all
 7   exposures are substantial regardless of
 8   fiber type?
 9        A.   Yes.
10        Q.   And you don't view any
11   exposure as more of a substantial factor
12   than any other?
13        A.   No.
14        Q.   It's your opinion that there
15   is no such thing as an insubstantial
16   exposure.  If you have an exposure at any
17   level it's substantial?
18        A.   Yes.
19        Q.   And you cannot exclude any
20   exposure from being a substantial factor?
21        A.   Correct.
22        Q.   When you talk about a
23   contribution, what you're talking about
24   is a contribution to the risk of getting
                                      Page 18
```

```
 1   mesothelioma as opposed to the
 2   contribution to the actual cause of the
 3   mesothelioma?
 4        A.   Correct.  It was undoubtedly
 5   one fiber or a small number of fibers
 6   that actually caused the cell to become
 7   malignant which gave rise to his
 8   clinically apparent mesothelioma, but
 9   which fiber that was from which product
10   no one will ever know.
11        Q.   And I appreciate that and
12   we're going to touch on that just briefly
13   and we'll move on from there.
14             It's your opinion that any
15   contribution is therefore a substantial
16   contribution, correct?
17        A.   Yes.  Just to clarify it so
18   you understand, what you haven't asked
19   and maybe you're not going to ask is the
20   question of can ambient exposure alone
21   produce mesothelioma.  And my view on
22   that is that there's no reason to say
23   that an ambient exposure is any different
24   from any other exposure.  The difference
                                      Page 19
```

```
 1   is, however, that if I have an individual
 2   whose only known exposure was ambient
 3   exposure, I would not testify with a
 4   reasonable degree of medical certainty
 5   that in that specific case asbestos was
 6   the cause of the mesothelioma,
 7   recognizing that there is the same
 8   potential for an ambient fiber as from an
 9   occupational fiber, if you will, to
10   produce disease.
11        Q.   The body doesn't
12   differentiate between a fiber that comes
13   from the ambient air as opposed to one
14   that comes from a product?
15        A.   Correct.
16        Q.   It's also your opinion that
17   if we take any of the product exposures
18   that are listed in your report, you will
19   say that but for that exposure Mr.
20   Jackson would not have gotten
21   mesothelioma?
22        A.   Would you please clarify
23   that for me?  Any of the exposures by
24   themselves or in combination could have
                                      Page 20
```

```
 1   produced it, so you could drop one out, I
 2   can't say he would not have gotten his
 3   mesothelioma.
 4        Q.   Just so we're clear I want
 5   to refer you to a deposition.
 6        A.   The but for issue in some
 7   jurisdictions.
 8        Q.   Yes, sir.  And what your
 9   understanding of the but for issue in
10   some jurisdictions is what?
11        A.   That a product could be held
12   harmless if it could be said that if all
13   the other exposures existed but that one
14   that that one could be said not to be
15   part of the cause.  And again, having
16   stated what I've stated I cannot say
17   that.  And again if my understanding of
18   the but for rule is not what is legally
19   understood, I'm not a lawyer so I may
20   well have gotten it wrong.
21        Q.   In a sense your opinion is
22   that every exposure is essentially guilty
23   until proven innocent and in your view
24   the only innocent exposure is the one
                                      Page 21
```

6 (Pages 18 to 21)

```
 1  that did not exist?
 2      A.  That would be one way to say
 3  it.  The one that didn't exist couldn't
 4  have caused the disease if it didn't
 5  exist.  But otherwise, there is -- there
 6  is no exposure that could ever be said to
 7  be innocent.
 8      Q.  This is not something that
 9  you said, but I want to just see if it's
10  something that you agree with.  You
11  basically have essentially two columns,
12  those exposures that are substantial
13  factors and something that is not a
14  substantial factor.  And the only way
15  that you can have an exposure to an
16  asbestos-containing product that would go
17  into the not-a-substantial-factor column
18  is if the plaintiff never experienced
19  that exposure?
20      A.  If it was there, if it was
21  non-existent.  Any exposure is
22  substantial.
23      Q.  Right.  And there's no in
24  between in the columns, you're either in
```
Page 22

```
 1  it's not a substantial factor or it is
 2  and the only way it's not is if the
 3  person never experienced it?
 4      A.  Right.  There is no such
 5  thing as a non-substantial factor other
 6  than zero.  Either it's zero or it's
 7  substantial; there is no such thing as
 8  not substantial.
 9      Q.  I'm going to switch gears
10  just a little bit.  You mentioned before
11  and I want to make sure that I
12  understand.  Mesothelioma, like other
13  cancers, essentially starts in a single
14  cell?
15      A.  Yes, I would expect that
16  would be the case.
17      Q.  And it's your opinion that
18  with respect to the fiber or fibers that
19  actually causes the cancer, you expect it
20  to be a fiber or fibers that is -- that
21  are either in close proximity or directly
22  affecting the cell?
23      A.  Yes.
24      Q.  And when we say close
```
Page 23

```
 1  proximity, you're talking within a few
 2  cells distance?
 3      A.  We don't know the exact
 4  mechanism, but basically the answer would
 5  be yes.  I mean the cell in the right
 6  pleura is not going to cause a
 7  mesothelioma in the left pleura.
 8      Q.  And the actual asbestos
 9  fibers that are in the right pleura are
10  not going to cause a mesothelioma that
11  starts in the left pleura?
12      A.  Correct.  And so if you've
13  got a product that only goes to the right
14  pleura, we could absolve it if it's a
15  left-sided pleura, but I'm not aware of
16  any such products or asbestos fibers.
17      Q.  And you basically just said
18  this but I want to make sure that we're
19  clear.  It's only a very few fibers that
20  Mr. Jackson actually was exposed to and
21  inhaled during the course of his life
22  that actually made it near or close to
23  that single cell that eventually became
24  the mesothelioma?
```
Page 24

```
 1      A.  That would be my
 2  expectation.
 3      Q.  And you nor anyone else can
 4  say which fibers from which products from
 5  which exposures actually are the ones
 6  that caused the mesothelioma?
 7      A.  I can't, there may be
 8  somebody you could find that would say
 9  which fibers it was or wasn't, but it's
10  not me.
11      Q.  Fair enough.  And that is
12  essentially why you substitute the
13  theoretical risk for the mesothelioma for
14  the actual cause, correct?
15      A.  Yes.  We don't know which
16  fiber caused it, but every fiber posed a
17  risk and had the ability to cause it.
18      Q.  And that's why you have to
19  substitute the risk for the cause, actual
20  cause?
21      A.  Yes.  The actual cause as I
22  understand from your question being which
23  fiber did it?
24      Q.  Correct.  All right, I want
```
Page 25

7 (Pages 22 to 25)

5a611bb1-015d-40cb-9961-cc8cf40887db

## Page 118

one question.

- - -

REDIRECT EXAMINATION

- - -

BY MR. CASMERE:

Q. You had mentioned that clearly it was not all of the fibers that actually caused the disease mesothelioma. Doctor, isn't it true that the overwhelming majority of the fibers that someone inhales have -- actually do not cause mesothelioma?

A. That is correct. Just as the overwhelming number of cigarettes that somebody smokes doesn't cause their lung cancer. But one cigarette has some material in it that on one day causes a cell to start down the path to being malignant and similarly that works with asbestos.

Q. Are you done?

A. Yes.

MR. CASMERE: Thank you, that's all I have.

## Page 119

THE WITNESS: You're welcome.

MR. CASMERE: Anyone else?

MR. KRISPIN: Thank you. Before we sign off, gentlemen and Ms. Hong, are we going forward with Dr. Hammer tomorrow? I think Mr. Saul is going to coordinate that and I haven't heard back from him given the holiday.

MR. CASMERE: John, we're going to go off the record with this. Is that okay?

MR. KRISPIN: Certainly.

THE WITNESS: And I'll be happy to read and sign.

MR. KRISPIN: Maybe we want to be on the record if you're going to say no.

(A discussion off the record occurred.)

(Witness excused.)

(Deposition concluded at approximately 10:45 a.m.)

## Page 120

CERTIFICATE

I HEREBY CERTIFY that the witness was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

It was requested before completion of the deposition that the witness, ARTHUR L. FRANK, MD, Ph.D., have the opportunity to read and sign the deposition transcript.

_____

Nancy D. Ronayne, a Professional Court Reporter and Notary Public
Dated: January 12, 2007

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)

## Page 121

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.