In the United States District Court
Northern District of Illinois, Eastern Division

| | |
|---|---|
| Charles Krik, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10-cv-7435 |
| v. ) | |
| ) | District Judge John Z. Lee |
| BP Amoco Chemical Company, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Plaintiff's Consolidated Response to Defendants' Motions *in Limine* to
Exclude the "Each and Every Exposure Opinion"

Plaintiff opposes the motions of defendant Owens-Illinois, Inc. ("O-I") (Doc. 66), Crane Co. ("Crane") (Doc. 62), and Weil-McLain[1] (Doc. 71), to exclude the "each and every exposure" or "any exposure" opinion of causation offered by plaintiff's experts. Defendants BP Amoco Chemical Company[2] ("Amoco"), and ExxonMobil Oil Corporation[3] ("Mobil") joined in the motions. The supervising judge of the MDL-875 has held that the opinion is admissible. The opinion is also proper under Illinois law governing causation. The highest courts of other states, including Maryland and California, have admitted the opinion. This court should do the same.

---

[1] Plaintiff is also filing a separate, supplemental response to Weil-McLain's motion addressing its reference to the "each and every exposure" opinion as the "single fiber theory."

[2] Amoco also moved to bar the "each and every exposure" opinion in its Motion to Bar the Opinions and Testimony of Arthur Frank and Frank Parker Pursuant to *Daubert* (Doc. 67).

[3] Mobil also moved to bar the "each and every exposure" opinion in its Motion to Bar Testimony of Arthur Frank and Frank Parker (Doc. 76).

Background

Medical science considers cumulative lifetime exposure to be the cause of an asbestos-related disease. Plaintiff's experts opine that, within this cumulative exposure, "each and every" exposure to asbestos contributes to cause the disease. Within Mr. Krik's several decades of cumulative exposure to asbestos-containing products is evidence of exposure to products for which each defendant is responsible.

The evidence to be presented at trial will establish a substantial exposure as to each defendant. The exposures for any individual defendant are not the *de minimis* type which calls for closer scrutiny. The evidence for each defendant is summarized, without limitation, as follows:

*Crane*

> Plaintiff worked on "probably a couple hundred" Crane valves. Repairing a Crane valve involved tearing it down and adding new gaskets and packing. The sheet gasket material used with Crane valves was made of asbestos and was used for high temperature applications. He removed gaskets from Crane valves with a scraper, and then a wire brush to clean it off. During his work on the Atlantic fleet, he worked on about fifty to one hundred Crane valves.

(*See* Ex 1 at 11-12.)

*O-I*

> Plaintiff did all of the insulation repair work when he was assigned to the *Bryce Canyon*. The standard brand that was used for brickwork in the Navy was OI manufactured Kaylo block insulation. Kaylo block insulation would be used on any brickwork insulation used on destroyers. The brickwork on fireboxes required removal and replacement of the insulation block. The Kaylo blocks crumbled into pieces when they were removed, typically using a hammer, and the pieces and dust were swept up with a broom. Plaintiff performed at least 25 boiler firebox brickwork jobs while serving in the Navy before he was stationed on the

> *Bryce Canyon*. Before being stationed on the *Bryce Canyon*, plaintiff used Kaylo on about 25 superheater jobs and about 2 steam drum jobs. The amount of Kaylo used on these jobs was 20-25 cases.

(*See* Ex 2 at 7-8.)

*Weil-McLain*

> Plaintiff worked as a boiler inspector and did boiler repair work for about a year from 1976-1977. He used about 250 feet of asbestos rope on a Weil-McLain boiler, and he could see "little strands" coming out of the rope. On a number of occasions, he also removed gaskets from Weil-McLain boilers that he understood from his training to be asbestos-containing. The gaskets would "crumble" as he removed them on a majority of these occasions.

(*See* Ex 5.)

*Amoco*[4]

> Plaintiff worked at an Amoco Chemical facility for one month in the 1970s, where he repaired condensers. He removed some insulation from heads of a condenser and from the exterior of the heat exchanger itself. He also testified that he had to clean off gaskets when doors of heat exchangers were pulled off.

(*See* Ex 3.)

*Mobil*

> Plaintiff worked at a Mobil oil refinery for one-and-a-half months in the 1970s where he replaced 25 unit heaters, which required removing insulation from steam lines. The process of removing the insulation created dust, and that he cleaned up the dust by sweeping it with a broom into a dustpan.

(*See* Ex 4.)

Argument

1.     *The MDL-875 supervising judge ruled the "any exposure" opinion is admissible.*

---

[4] Plaintiff addresses these exposures because BP Amoco has joined in the other defendants' *Daubert* motions.

3

District Judge Eduardo C. Robreno of the Eastern District of Pennsylvania, the judge supervising the docket of MDL-875 asbestos cases, refused to strike the "every exposure" opinion on *Daubert* grounds. The ruling was made on a motion to strike the testimony of a plaintiff's medical expert. Judge Robreno held:

> In the instant case, the argument revolves around the so-called "every exposure" theory of causation, that is, Dr. Maddox's [plaintiff's expert's] opinion that "every exposure to asbestos above background levels contributes to cause mesothelioma." Defendants argue that this is "absurd, extreme, and incorrect science." Defendants cite literature stating that, "[f]rom an inability to delineate a lower threshold [at which exposure to asbestos becomes harmful], one cannot necessarily conclude that no such threshold exists and that asbestos is onconogenic [to] humans at any level of exposure, no matter how small." Defendants maintain that there is a threshold level below which exposure to asbestos does not cause disease, as the body can expel or process asbestos fibers . . . .
>
> Defendants' arguments are fodder for cross-examination, and do not preclude the admissibility of Dr. Maddox in the instant case. The Third Circuit has held that an expert's causation opinion should not be *per se* excluded simply because there is no published literature regarding the "level" at which exposure to a harmful element can cause the injury complained of. *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 154-155 (3rd Cir. 1999) . . . .
>
> There is a bona fide debate within the scientific community regarding what the threshold level is, and indeed, whether a numeric threshold can be ascertained at all. Simply, Dr. Maddox takes one position, and Defendants' experts take another.
>
> In rendering his opinion that there are no safe levels of exposure above background levels, Dr. Maddox relied on numerous published studies and reports, drawing from the fields of pathology, radiology, epidemiology, and industrial hygienics. He has cited case studies of individuals with occupational histories similar to that of Plaintiff who later developed an asbestos-related disease. He will testify that his conclusions represent those generally accepted by the medical community. Under these circumstances, the court concludes, in its gatekeeping role, that [plaintiff's expert's] testimony satisfies the reliability and fit requirements of Federal Rule of Evidence 702 and *Daubert*.

*Schumacker v. Amtico* (In re Asbestos Prods. Liab. Litigation), 2010 U.S. Dist. LEXIS 144831 (E.D. Pa. Nov. 2, 2010), *4-7. This court should follow the precedent of the MDL-875 supervising judge.

2.     *Other courts have also allowed the "each and every exposure" opinion.*

The highest court in Maryland allowed the "every exposure" contributes opinion in the context of exposures which are not *de minimus*. *Dixon v. Ford Motor Company*, 70 A.3d 328; 2013 Md. LEXIS 465 (Md Ct App. 2013). The court in *Dixon* reasoned:

> Dr. Welch's ultimate opinion was based on that evidence and more -- not just the raw number of occasions that the dust was brought into the home twice a week over a 13-year period, but as well on evidence that, because the asbestos fibers brought in on each occasion remained in the home for a considerable period of time, the exposure was continuous and cumulative in effect. With that background and context, we are unwilling to conclude that Dr. Welch's opinion that each exposure increased the likelihood of contracting mesothelioma and thus constituted a substantial contributing factor involved a novel scientific theory not generally accepted in the scientific community. Her opinion was not in the context of one or two incidental exposures to Ford brakes.

2013 Md. LEXIS 465 at *19-20. Likewise, the exposures to the individual defendant products in the *Krik* case are not *de minimus*.

The California Supreme Court allowed a plaintiff's expert to testify that asbestos disease is "cumulative in nature" and that "many separate exposures each constituted a 'substantial factor.'" *Rutherford v. Owens-Illinois*, 941 P.2d 1203, 16 Cal. 4th 952, 958 (1997). Judge Nicholas J. Bua of this district also allowed the "each and every exposure" opinion:

> It is true that [the plaintiff's]' medical condition is the result of many years of inhaling asbestos fibers. But each exposure contributed to the development of the disease. Since each inhalation of asbestos dust can result in additional damage to lung tissue, it is nearly impossible to determine which exposure is directly responsible for the disease. *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1083 (5th Cir. 1973), *cert. denied*, 419

> *U.S. 869, 42 L. Ed. 2d 107, 95 S. Ct. 127 (1974)*; *Blackston, 764 F.2d at 1486*.
> Defendants urge the court to adopt a broad rule requiring exposure to asbestos over an extended period of time before causation can be established. *See Lohrmann, 782 F.2d at 1162-63*. Such a rule, however, flies in the face of evidence which indicates that short periods of exposure -- from one day to three months -- can cause significant damage to the lungs. *See Workplace Exposure to Asbestos: Review and Recommendations*, U.S. Dep't of Health and Human Servs. and U.S. Dep't of Labor, DHHS (NIOSH) Publication No. 81-103, at 3 (Nov. 1980). The length of time that an individual was exposed to asbestos does not in itself determine how serious the injury will be. Several factors, including individual idiosyncrasy, the intensity of the exposure, and the nature of the contaminant all play a part in the development of the disease. *Zurich Ins. Co. v. Raymark Indus., Inc., 118 Ill.2d 23, 37, 514 N.E.2d 150, 156, 112 Ill. Dec. 684 (1987)*; *Borel, 493 F.2d at 1083*.[4] In the absence of any evidence demonstrating that the exposure to defendants' products was inconsequential, the court will not minimize the danger of even a relatively light exposure. *See Borel, 493 F.2d at 1083*.

*Schultz v. Keene Corp., et al.*, 729 F. Supp. 609, 615 (N.D. Ill. 1990).

3.  *The methodology underlying the "each and every exposure" opinion is proper.*

The opinion that "each and every exposure" contributes is derived from the scientific consensus that asbestos-related lung cancer is a disease produced by cumulative exposure.[5] A criterion for attribution of diseases to asbestos exposure was developed at an international conference of medical experts in Helsinki, Finland in 1997. The Helsinki criteria, widely regarded as authoritative with regard to diagnosis of asbestos-related lung cancer, are reported as follows with regard to lung cancer:

> . . . it is not possible to prove in precise deterministic terms that asbestos is the causative factor for an *individual* patient, even when asbestosis is present. However, attribution of causation requires *reasonable* medical certainty on a probability basis

---

[5] Dr. Frank, plaintiff's medical expert, stated in his deposition in this case that asbestos-related lung cancer is a dose-responsive disease: "There may be different amounts of exposure, but no individual exposure can be said not to have been contributory, because we know that all these [asbestos-related] diseases are dose response diseases and that it is the cumulative exposure that gives rise to the disease." (Ex 6 at 35.)

6

>that the agent (asbestos) has caused or contributed materially to the disease. The likelihood that asbestos exposure has made a substantial contribution increases when the exposure increases. Cumulative exposure, on a probability basis, should thus be considered the main criterion for the attribution of a substantial contribution by asbestos to lung cancer."

A. Tossavainen, "Asbestos, asbestosis, and cancer: the Helsinki criteria for diagnosis and attribution," 23(4) *Scand. J. Work., Envir't & Health* 311 at 314 (1997). (Ex 7.)

The importance of lesser asbestos exposures cannot be discounted in causation as a matter of science. In 1980 the United States Environmental Protection Agency (EPA) stated that "No safe limit or 'threshold' of exposure is known." (Ex 8.) In 1991, the EPA and National Institute of Occupational Safety and Health (NIOSH) issued a document stating that "NIOSH contends that there is no safe airborne fiber concentration for asbestos." (Ex 9.) In its 2006 "Position on Asbestos" report, the World Health Organization also stated that "there is no safe threshold level of exposure." (Ex. 10) *See also Schultz v. Keene Corp.*, 729 F. Supp. 609, 615 (N.D. Ill. 1990) (because asbestos-related cancer "is the result of many years of inhaling asbestos fibers . . . each exposure contributed to the development of the disease").

Defendants challenge accepted science and contend that a *de minimis* safe exposure "threshold" exists below which asbestos is not carcinogenic. This argument that there is a "safe" level of exposure to asbestos is not applicable to the cumulative or individual defendant exposures in the instant case.

Defendants do not dispute that plaintiff's decades of total asbestos exposure over the course of his entire Navy and civilian careers as a boilerman and pipefitter meet the "threshold" level for causation. Instead, they argue that the "each and every exposure" opinion must be excluded because the exposure to the products for which the defendant is responsible does not

7

meet some undefined *de minimis* threshold level. The argument that there is an applicable non-causative or *de minimis* exposure is dispositive, and the deadline for dispositive motions has passed.[6] This court has noted that the practice on motions *in limine* at the pretrial stage is limited to non-dispositive matters. Additionally, the summary judgement motions filed by defendants in the MDL-875 proceedings challenged the sufficiency of the evidence of exposure to their individual products. Each of those motions was denied by Judge Robreno in written opinions. The sufficiency of the exposures under Illinois causation law is now a matter for the jury. Defendants can develop their criticisms of the "each and every exposure" opinion during cross examination.

4.    *Quantification of the amount of exposure is not required under Illinois law*

Crane also argues that the "any exposure" or "each and every exposure" opinion should be excluded based on the absence of proof of the "actual level of exposure." (Crane motion at 5.) Illinois law does not require such quantification of the individual exposures.

In *Johnson*, an Illinois appellate court described the applicable standard as follows:

> To meet [the causation] burden, a plaintiff must show that the injured party was exposed to the defendant's asbestos through proof that he regularly worked in an area where the defendant's asbestos was frequently used and the injured party worked in sufficient proximity to this area so as to come into contact with the defendant's product. *Thacker*, 151 Ill.2d 343, 177 Ill.Dec. 379, 603 N.E.2d 449. This test is often referred to as the "frequency, regularity and proximity" or "substantial-factor" test.

*Johnson*, 313 Ill. App. 3d at 235.

---

[6] Plaintiff fully briefed this argument in Plaintiff's Response to Defendants' Motion for Leave to File *Daubert* Motions, doc. 59, which plaintiff incorporates by reference. (*See* Ex 11.)

The operative language is that the injured person must "come into contact with the defendant's product." *Id*. As the *Johnson* court later explained, the "frequency, regularity, and proximity" test does not require proof of exposure to a "substantial number of the defendant's asbestos fibers" or to any particular "quantity of asbestos." *Id*. at 237-38. The *Johnson* court held: "In actuality, the substantial-factor test is not concerned with the quantity of asbestos but its legal significance. Where there is competent evidence that one or a *de minimis* number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor causing a plaintiff's injury." *Id*. at 237-38 (citing *Wehmeier v. UNR Indus., Inc.*, 213 Ill. App. 3d 6 (4th Dist. 1991).

Likewise, in *Zickuhr v. Ericsson, Inc.*, an Illinois appellate court held that plaintiff need not quantify the asbestos to which the plaintiff was exposed in order to meet the causation standard:

> Defendant claims that the plaintiffs could not prove causation because no witness testified as to the quantity of asbestos fibers released when the decedent stripped the wires and cables. However, defendant does not cite any authority which would require this type of testimony, and the exactitude of providing the quantity of asbestos fibers released could be an impossibility because the exact amount of wire or cable stripped in a day probably varied and the amount of asbestos released into the atmosphere would also vary.

*Zickuhr*, 962 N.E.2d at 986 (Ill. App. Ct. 1st Dist. 2011).

Quantification is also not possible because of the passage of time since the exposures and the absence of actual measurements being taken when the plaintiff was working. As multiple courts have recognized: "the gestation period for the development of disease is measured in terms of decades and the circumstances of a particular plaintiff's exposure is highly variable, the ability to establish specific testing relating to a particular plaintiff is exceedingly problematic."

9

*Rabovsky v. Air & Liquid Sys. (In re Asbestos Prods. Liab. Litig. (No. VI))*, 2012 U.S. Dist. LEXIS 9169 (E.D. Pa. Jan. 25, 2012) (Strawbridge, J.) *(quoting Rutherford v. Owens-Illinois*, 941 P.2d 1203, 16 Cal 4th 953, 957 (Ca. 1997). "Requiring a daily log of activities and exposures would be impossible and therefore, an intolerable burden on those claiming [asbestos-related] injuries." *Anderson v. Combustion Engineering*, 647 N.W.2d 460, 465 (Wis App. 2002).

5.  *The "each and every exposure" opinion does not "nullify" the "substantial contributing factor" test of maritime and Illinois law.*

As discussed above, Judge Robreno, in ruling on summary judgment motions in this case, rejected defendants' contention that plaintiff cannot establish substantial factor causation. In responding to summary judgment motions on causation, plaintiffs cited to the "each and every exposure" opinions provided by the experts.[7]

Defendants rely on *Betz v. Pneumo Abex, LLC*, the recent Pennsylvania Supreme Court decision in which the court excluded testimony based on the any exposure opinion. *Betz* is distinguishable because the cumulative exposures were considered *de minimis*. The Maryland Court of Appeals distinguished *Betz* as follows:

> The Pennsylvania Supreme Court took the case as a test case, from among others then pending, to examine the "every exposure" theory in a global context, without regard, it seems, to any particular facts. The court made that clear in rejecting the plaintiff's urging that the case was "not a case of *de minimis* exposure," noting that "this case was selected among test cases for the any-exposure opinion as a means, in and of itself, to establish substantial-factor causation." *Id. at 55*. That is *not* the context of this case.

---

[7] The MDL court denied defendant Weil-McLain's summary judgment motion as untimely, without considering Weil-McLain's argument that plaintiff produced insufficient product identification evidence. (Ex 12.) However, as described above, there is evidence that plaintiff's asbestos exposures for which Weil-McLain is liable were more than *de minimis*.

10

*Dixon v. Ford Motor Co.*, 70 A.3d 328 (Md. 2013)

Unlike the plaintiff in *Betz*, Mr. Krik is not relying on the any exposure opinion to establish substantial factor causation for exposures that would otherwise be *de minimis*. Mr. Krik's exposures to each defendant's products, and lifetime total asbestos exposure, were far from *de minimis*.

6. *Seventh Circuit precedent favors cross-examination over Daubert motions as the means to challenge expert testimony.*

Barring the "every exposure" opinion entirely would be extreme given that defendants will have ample opportunity to try to discredit the opinion through cross-examination and through the testimony of their own experts. The Seventh Circuit has held in multiple rulings that "[d]etermination on admissibility should not supplant the adversarial process":

> [Defendant] is, of course, critical of the quality of [the expert's] testimony and does not believe that it ought to have been credited by the district court. These criticisms do not go to admissibility but to the appropriate weight that should be accorded to the evidence. As we noted in *Gayton*, "[d]etermination on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination."

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010).

Likewise, the Seventh Circuit held in 2000:

> The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based.

*Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000)

Conclusion

Plaintiff respectfully requests that this court deny defendants' motions to exclude the "each and every exposure" opinion.

Dated: September 20, 2013

/s/ *Robert G. McCoy*
Attorney for the plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Ave.
Chicago, Illinois 60607
Telephone: 312.944.0600
Fax: 312.944.1870
bmccoy@cvlo.com