In the United States District Court for the
Northern District of Illinois, Eastern Division

| | |
|---|---|
| Charles Krik, | ) |
|            Plaintiff, | ) |
| v. | ) Case No. 10-cv-7435 |
| | ) District Judge John Z. Lee |
| BP Amoco Chemical Company, *et al.*, | ) |
|            Defendants. | ) |

Plaintiff's Response in Opposition to Defendants' *Daubert* Motions to
<u>Bar Opinions and Testimony of Arthur Frank and Frank Parker</u>

Plaintiff opposes the motions of defendants BP Amoco Chemical Company ("Amoco") (Doc. 67) and ExxonMobil Oil Corporation ("Mobil") (Doc. 76) to bar opinions and testimony of plaintiff's experts Dr. Arthur Frank and Frank Parker.[1]

<u>Argument</u>

1. *Dr. Frank and Mr. Parker are both qualified experts who have testified at numerous asbestos trials, including in this District.*

Dr. Frank holds an M.D. from the Mount Sinai School of Medicine and a Ph.D. in Biomedical Sciences from the City University of New York, has studied asbestos-related diseases for more than four decades, and has authored numerous studies on asbestos-related disease. (Ex 1.) He began his Ph.D. training under Dr. Irving J. Selikoff, once "America's most prominent researcher in the field of asbestos disease." (Ex 3 at 6; *See* Ex 2.) Later he co-authored a study with Dr. Selikoff titled "Lung cancer prevalence among shipyard workers." (Ex 1 at 22, ¶ 12.) Dr. Frank has been deposed more than 1,000 times and has been a witness at trial

---

[1] Amoco moved to completely bar all of the opinions and testimony of Frank and Parker. Mobil moved to bar specific opinions of Frank and Parker.

more than 100 times, including in *Wright v. CBS Corp.*, a 2013 asbestos trial in the Northern District of Illinois over which Judge Pallmeyer presided. (*See* Ex 3.)

Mr. Parker is a Certified Industrial Hygienist with over 40 years of experience practicing industrial hygiene and environmental engineering, including ten years in the petrochemical industry. (Ex 4 at 3.) From 1977-1978, he was Manager of Industrial Hygiene Services for Shell Oil Company; he managed the industrial hygiene consulting program for all Shell facilities. (Ex 4 at 24.) From 1978-1980, he was Manager of Industrial Hygiene for Tenneco and chairman of the American Petroleum Institute's Health and Safety Regulatory Committee. *Id*. He also practiced industrial hygiene and environmental engineering for a number of years as an officer in the U.S. Air Force. (Ex 4 at 3-4.) He has testified at numerous asbestos trials, including in *Wright v. CBS Corp* and *Tedford v. Owens-Illinois, Inc*. (*See* Ex 5 and Ex 6.)

2.  *Plaintiff's experts' opinions are based on "sufficient facts or data."*

Defendants' motions impose a personal knowledge requirement on expert witness testimony that is not required under the Federal Rules of Evidence. FRE 703 provides: "An expert may base an opinion on facts or data in the case that *the expert has been made aware of* or personally observed."

Dr. Frank

Amoco argues that Dr. Frank's opinions are not "based upon sufficient facts or data" as required by Fed. R. Evid. 702 because Dr. Frank's "report and deposition testimony are devoid of any mention of Amoco." (Amoco motion at 3.) However, Dr. Frank issued his report based upon review of the medical records of Mr. Krik and information about his work history. (*See* Ex

-2-

9 at 1.) Dr. Frank is not an eyewitness to the exposures of Mr. Krik at Amoco and does not need personal knowledge of such to answer hypothetical questions about whether the Amoco exposures are a cause of Mr. Krik's lung cancer. The foundation evidence to support the hypothetical will be provided by other sources such as Mr. Krik's own testimony. The MDL court summarized plaintiff's Amoco-specific testimony as follows:

> Plaintiff testified that he worked at an Amoco Chemical facility in the 1970s, where he repaired condensers. He testified that he believed that the condensers were covered with asbestos. When asked that asbestos was disturbed during that work, he testified that "whenever you pull a head apart, you're pulling insulation off." He testified in a later deposition that he had removed some insulation from heads of a condenser and from the exterior of the heat exchanger itself.
>
> He testified that he had to clean off gaskets when doors of heat exchangers were pulled off. He testified that he believed the gaskets were made of "Garlock--or that type of material," and that he believed the gaskets had asbestos in them. . .

(Ex 7 at 12.)

Mobil makes the same kind of argument: Dr. Frank's causation opinion is "not based upon sufficient facts or data" and should be barred because Dr. Frank did not explicitly mention Mobil-attributable asbestos exposures in his report. (Mobil motion at 2 and 9-10.) However, the foundation for Dr. Frank's opinion in response to a hypothetical question is presented in plaintiff's own deposition as described in the ruling by Judge Robreno denying summary judgment to Mobil:

> Plaintiff testified that he worked at an ExxonMobil oil facility in the 1970s...where he replaced 25 unit heaters, which required removing insulation from steam lines. He testified that he believed that the insulation was made of asbestos. He testified that the process of removing the insulation created dust, and that he cleaned up the dust by sweeping it with a broom into a dustpan. He testified that he did not wear any protective gear during his first period of work at Mobil during the 1970s.

(Ex 8 at 14.)

Amoco argues that the Amoco-specific testimony "does not supply any factual basis to support the conclusion to [sic] that equipment he allegedly worked with contained asbestos." (Amoco motion at 4.) Dr. Frank was not required to independently determine whether the insulation and gaskets to which the plaintiff was exposed at Amoco contained asbestos. "It is well established that an expert may answer questions based on facts offered in the form of a hypothetical." *United States v. Yagman*, 2007 U.S. Dist. LEXIS 95311, *11 (C.D. Cal. 2007); *see also Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("The [use] of leading, hypothetical questions to elicit expert opinions is entirely appropriate"); *Estate of Carey by Carey v. Hy-Temp Mfg., Inc.*, 929 F.2d 1229, 1235 n.2 (9th Cir. 1991) ("[Expert] witnesses may be competent to give opinions based upon hypothetical facts even though a foundation that the expert has personal knowledge of these facts has not been laid").

According to the U.S. Supreme Court:

> It has long been accepted that an expert witness may voice an opinion based on facts concerning the events at issue in a particular case even if the expert lacks firsthand knowledge of those facts. At common law, courts developed two ways to deal with this situation. An expert could rely on facts that had already been established in the record. But because it was not always possible to proceed in this manner, and because record evidence was often disputed, courts developed the alternative practice of allowing an expert to testify in the form of a "hypothetical question." Under this approach, the expert would be asked to assume the truth of certain factual predicates, and was then asked to offer an opinion based on those assumptions. See 1 K. Broun, McCormick on Evidence §14, p. 87 (6th ed. 2006); 1 J. Wigmore, Evidence §677, p. 1084 (2d ed. 1923) ("If the witness is skilled enough, his opinion may be adequately obtained upon hypothetical data alone; and it is immaterial whether he has ever seen the person, place or thing in question" (citation omitted)). The truth of the premises could then be established through independent evidence, and the factfinder would regard the expert's testimony to be only as credible as the premises on which it was based.

*Williams v. Illinois*, 132 S. Ct. 2221, 2233-2234 (2012).

      Amoco further argues that Dr. Frank's report "provides no factual basis" for his opinion that "each and every exposure" contributed to plaintiff's lung cancer. It contends that Dr. Frank's "deposition testimony contains no facts that would support this theory, such as epidemiological data, rates of disease in relevant populations, data used to compare disease rates in different cohorts, or any other factual information or data to support his extraordinary conclusion." However, in a signed statement he tendered at his deposition, Dr. Frank specified which scientific publications he will cite to support his opinions:

> I have reviewed thousands of scientific articles on the subject of asbestos. These span a time frame from the late 1800's until 2011. Depending on the matter at hand, I will cite specific literature to support my opinions. The materials I rely upon include the paper by Merewether and Price (1930), Hueper's book (1942), Selikoff's book (1978), and selected paper from three asbestos monographs of the New York Academy of Sciences (1965, 1979, 1981). I have personally published on asbestos-related matters and will rely on those publications as well. The publications are listed in my CV (Exhibit A).
>
> Examples of my testimony, opinions, and materials relied upon about the history of asbestos literature can be found in the trial testimony of *Reynolds v. Amchem Products, Inc., et al*. New York Supreme Court for Niagara County No. 117820, which is attached as Exhibit C.

(Ex 10.) The monographs of the New York Academy of Sciences list references to hundreds of publications which are commonly relied on by experts in asbestos cases.

<u>Mr. Parker</u>

      As for Mr. Parker, defendants make a similar argument about lack of personal knowledge. Defendants contend Parker should be barred as a witness because he "admitted that the only information he had 'unique to Mr. Krik' was Mr. Krik's deposition testimony," and "Mr.

Krik testified that he did not know if the equipment he worked with . . . contained asbestos." (Amoco motion at 4; *cf.* Mobil motion at 11-12.) This argument also fails for the reasons set forth above. Mr. Parker is allowed as an expert witness to assume, as part of a hypothetical question, the insulation plaintiff was exposed to at Amoco and Mobil in the 1970s contained asbestos. If necessary, plaintiff will provide the testimony to about asbestos content from other sources.

Similarly, Amoco's bald assertion that Mr. Parker's methodology for his "new opinion" must necessarily be different than the methodology used for his report and deposition testimony is unsupported by the facts.[2] Amoco argues that "According to Mr. Parker himself, this methodology... was not sufficient or adequate to allow him to render specific inhalation opinions attributable to specific Defendants." (Amoco motion at 7.) But Amoco fails to cite any evidence in the record that Mr. Parker admitted his methodology was "insufficient or inadequate" to allow him to render opinions attributable to specific defendants. Nowhere in Mr. Parker's expert report or deposition testimony did Mr. Parker state that he can not render the opinion he provided in his declaration. Accordingly, Amoco's assertion that Mr. Parker needs to use and specify an alternate methodology for his "new opinion" fails.

Amoco's assertion that Mr. Parker's "new opinion" is a "sham" fails for the same reason. (Amoco's motion at 7.) As stated above, Mr. Parker never testified that he is unable to provide

---

[2] It is unclear what Amoco is referring to by the term "new opinion." Plaintiff assumes Amoco is referring to Mr. Parker's declaration dated January 25, 2012, wherein Mr. Parker stated, in relevant part: "Mr. Krik was occupationally exposed to significant concentrations of airborne asbestos fibers each time he had to disturb the asbestos containing insulation in order to break the steam lines connected to the steam units that he worked on at the Mobil Oil facility." (Ex. 11 at ¶2.)

any opinions specific to Amoco. Accordingly, Mr. Parker's opinions regarding Amoco in his declaration do not constitute a "sham." Further, counsel for Amoco was present at Mr. Parker's deposition in this case and had the opportunity to ask Mr. Parker whether he could render any opinions specific to Amoco in this case, but chose not to do so.

3.  *The "every exposure" theory is admissible.*

Amoco and Mobil both argue that the "every exposure" opinion of plaintiff's experts is inadmissible. Co-defendants Owens-Illinois and Crane in this case filed motions to exclude the "each and every exposure" opinion, and plaintiff filed a consolidated response to those motions. Plaintiff incorporates by reference the consolidated response to the co-defendants' motions.

Defendants also misstate the record when they claim Dr. Frank stated any exposure to asbestos above zero is a *cause* of an asbestos-related disease. (Amoco motion at 5; Exxon motion at 6.) Rather, as defendants admit in their own motions, Dr. Frank testified that "any exposure above zero *is a contributing factor to the cumulative exposure*." (Amoco motion at 5; Exxon motion at 6.) [emphasis added] Because defendants' assertion that Dr. Frank's "each and every exposure" opinion is inadmissible is based on a misstatement of the record, defendants' argument for excluding Dr. Frank's opinions collapses under their own weight.

4.  *This court should deny the motions as untimely dispositive motions.*

Granting Amoco's motion to bar Frank and Parker entirely would likely have a case-dispositive effect. Dr. Frank is plaintiff's only medical causation expert. Mr. Parker is plaintiff's primary expert on the significance or magnitude of plaintiff's asbestos exposures in

response to arguments these are *de minimus*. Case-dispositive motions were required by the MDL-875 scheduling order to have been filed in the MDL court over 18 months ago and are now untimely. The MDL court ordered all defendants to file case-dispositive motions *in limine* by March 2, 2012.

Amoco's motion should be denied as untimely because Amoco did not file its motion to bar Frank and Parker by the March 2, 2012, deadline in the MDL court. Plaintiff briefed this argument in Plaintiff's Response to Defendants' Motion for Leave to File *Daubert* Motions (Doc. No. 59) and incorporates that response by reference.[3]

5.  *Defendants can challenge Dr. Frank's and Mr. Parker's testimony in front of the jury*.

Defendants' arguments go to the weight (not admissibility) of Dr. Frank's and Mr. Parker's testimony and read like a blueprint for a cross-examination that has often been used by defendants' counsel. Defendants will have every opportunity to cross-examine Dr. Frank and Mr. Parker about the purported weaknesses in their methodology and the alleged insufficiency of their data. Cross-examination is the proper method to challenge plaintiff's expert witnesses.

The Seventh Circuit has held in multiple rulings that "[d]etermination on admissibility should not supplant the adversarial process":

> [Defendant] is, of course, critical of the quality of [the expert's] testimony and does not believe that it ought to have been credited by the district court. These criticisms do not go to admissibility but to the appropriate weight that should be accorded to the evidence. As we noted in *Gayton*, "[d]etermination on

---

[3] Plaintiff does not dispute ExxonMobil timely filed a motion in limine to exclude opinions of Dr. Frank and Mr. Parker by the March 2, 2012, deadline. The motion was denied without prejudice and leave to refile.

> admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination."

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010). Likewise, the Seventh Circuit held in 2000:

> The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based.

*Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000).

## Conclusion

Plaintiff requests that this court deny Amoco and Mobil's motions to bar opinions and testimony of plaintiff's experts Dr. Arthur Frank and Frank Parker. The Amoco motion should also be denied as untimely.

Dated: September 20, 2013

/s/ Robert G. McCoy
Attorney for plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Ave.
Chicago, Illinois 60607
Telephone: (312) 944-0600
Fax: (312) 944-1870
bmccoy@cvlo.com