UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES KRIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10-cv-7435[1] |
| v. ) | |
| ) | District Judge John Z. Lee |
| BP AMOCO CHEMICAL COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

Plaintiff's Response to Defendants' Second Joint Motion to Bar
<u>Undisclosed and Improperly Disclosed Witnesses</u>

Defendants Crane Co., ExxonMobil Oil Company ("Mobil"), Owens-Illinois, Inc. ("Owens-Illinois"), and Weil-McLain move to bar witnesses listed on Plaintiff's trial witness list. The motion based on improper disclosure during discovery should be denied for several reasons. First, the witnesses were timely disclosed pursuant to MDL-875 scheduling orders requiring a fact witness disclosure by plaintiffs on June 22, 2011. Defendants raised no earlier objections to Plaintiff's witness disclosures in the MDL proceedings in the *Krik* case, and the case was remanded as "trial ready." Second, Defendants do not met the standard under FRCP 37 for striking witnesses as a discovery sanction. Third, defendants only cite to rulings by an MDL-875 magistrate in other, later Cascino Vaughan Law Offices ("CVLO") MDL-875 cases and do not cite to any rulings in *Krik*. In the other CVLO cases, the supervising judge of the MDL-875

---

[1] On September 28, 2011, the two Charles Krik cases pending under Civil Action Numbers 11-63473 and 08-91296 in the Eastern District of Pennsylvania were consolidated under Civil Action 11-63473. That consolidated case was then remanded to this court.

1

litigation denied several hundred motions to strike witnesses based on the same arguments cited in Defendants' *Krik* motion. Defendants' motion inaccurately states and mischaracterizes the record in the MDL by citing only to decisions by one of the MDL-875 magistrate judges. Fourth, if necessary, the matter is appropriate for consideration by the MDL-875 special master. The special master was appointed to deal with matters arising from the history of the MDL-875 asbestos litigation proceedings and to help achieve consistency in the rulings on issues that commonly arise in remanded asbestos cases.

### 1. Timely Disclosure

Defendants contest several fact witnesses and two experts. One witness, Joseph Ferriter, is both a fact and an expert witness.

*Fact Witnesses*

On June 9, 2011, a scheduling order was entered in this matter which required disclosure of Plaintiff's "fact witnesses" by June 22, 2011. As background, the Krik case is one of the "top ten" or "first ten" of the Cascino Vaughan Law Offices (CVLO) MDL-875 cases to be put on a scheduling order for completion of pretrial proceedings before remand. (Ex 22.) Pursuant to the scheduling order, Plaintiff served a document captioned in the *Krik* case titled "Plaintiff's Fact Witness Disclosure 6/22/11" on June 22, 2011.[2] (Ex 6.) The fact witness list included eleven categories of witnesses, including the following:

---

[2] The document was served by giving email notice that the document was deposited with the IKON document service in in Chicago. (Ex 8.) At that time IKON was being used as a depository for documents in the several hundred CVLO cases pending in MDL-875.

1. Exhibit A: Case Specific Witnesses

2. Representative witnesses designated by each defendant....

3. Persons identified by or who should be identified by defendants in interrogatory answers filed in the Cascino Vaughan Law Offices ("CVLO") mediation cases, this specific case....

4. Any defendant's current or former employees who have given testimony under oath in a prior claim for asbestos related injury, or property damage or insurance coverage related to asbestos claims.

6. Any witness identified by any defendant.

7. Any witness deposed in this case.

The contested fact witnesses all fall into one or more of the above categories and are often identified and used in asbestos cases.

The past testimony of a designated corporate witness is also admissible as an admission by a party opponent under FRE 801(d)(2). For the purposes of accommodating trial scheduling, Plaintiff will agree that a witness who will be called live by defendants need only appear once at trial and can do so in defendant's case-in-chief, provided the witness is identified as a witness for both parties.

**Anthony Pantaleoni**

In email correspondence dated October 14, 2013, Crane Co. agreed to arrange for Anthony Pantaleoni's appearance at trial (Ex. 13). Crane Co. disclosed Mr. Pantaleoni as a witness on June 9, 2011. Crane Co. identified Mr. Pantaleoni as Crane Co.'s Vice President Environment, Health & Safety and stated that he "will...provide testimony regarding those

products that Plaintiff may attempt to associate with Crane Co." (Ex. 1). On defendants' draft pretrial order of October 25, 2013, he is listed in Crane Co.'s witness list as a corporate representative (Ex. 27) He is an employee of Crane Co. who has often testified in asbestos litigation. Therefore, Anthony Pantaleoni qualifies as disclosed under categories 2, 3, 4, and 6.

**Paul Schuelke**

In email correspondence dated October 15, 2013, defendant Weil-McLain agreed to arrange for Paul Schuelke's appearance at trial. (Ex 21.) Mr. Schuelke, Director, Technical Services of Weil-McLain, was disclosed as a lay witness in Weil-McLain's Witness Disclosure of October 12, 2011. (Ex 2.) On Defendants' draft of the Final Pretrial Order sent to Plaintiff on October 25, 2013, he was listed as a corporate representative under the "Who Will be Called" heading of Weil-McLain's witness list. (Ex 30.) Therefore, Mr. Schuelke qualifies as disclosed under categories 2 and 6.

**William McLean**

Plaintiff will present testimony that William McLean gave in a deposition on December 15, 1995. Mr. McLean, a former engineering director at Crane Co., appeared in the capacity of designated corporate witness for defendant Crane Co. at that deposition. (Ex 3 at 18.) Furthermore, Mr. McLean was identified as a witness in the instant case in Crane Co.'s initial disclosure of June 9, 2011. According to that disclosure, Mr. McLean

> will testify regarding the design/manufacturing and operation/use of Crane Co. products and Crane Co.'s understanding of its products over time. He will testify regarding the components of Crane Co. products including, without limitation, the type of gasket and

packing materials that were used in Crane Co. products. Mr. McLean will also testify as to the history and use of the products Plaintiff may attempt to associate with Crane Co. (Ex 1.)

Therefore, Mr. McLean qualifies as disclosed under categories 3, 4, and 6. Mr. McLean's testimony can also be allowed as the admission of a party opponent.

**Bruce Larson**

Plaintiff will present testimony that Bruce Larson gave in a deposition on March 23, 2010. Mr. Larson testified as a designated corporate witness for Mobil at that deposition. (Ex 17 at 27-29.) He was an employee of Mobil, where he worked as an industrial hygienist, from 1978 until 2000. (Ex 17 at 31-32.) He was disclosed in Mobil's Supplemental Disclosure of Witnesses dated October 14, 2011 (Ex 4), and again as an "Expect to Call" witness for Mobil in Defendants' draft Final Pretrial Order of October 25, 2013. (Ex 28.) Mr. Larson therefore qualifies as disclosed under categories 3, 4, and 6. Mr. McLean's testimony can also be allowed as the admission of a party opponent.

**Joseph Ferriter**

Plaintiff identified Joseph Ferriter as a siteworker witness in Exhibit A to his Fact Witness Disclosure of June 22, 2011. (Ex. 6.) Mr. Ferriter worked at some of the same job sites as Plaintiff.

**Arthur Pabst**

Plaintiff will present testimony that Arthur Pabst gave in a deposition on November 26,

5

1980. Mr. Pabst was employed by Mobil from 1932 until 1970 as a research chemist and industrial hygienist. (Ex 10 at 5.) He was disclosed in Mobil's Supplemental Disclosure of Witnesses as a witness whose testimony would be given by deposition. (Ex 4 at 62.) Therefore, Mr. Pabst qualifies as disclosed under categories 3, 4, and 6.

### Richard Grimmie

Plaintiff will present testimony that Richard Grimmie gave in a deposition that took place on September 20 and October 28, 1991. Mr. Grimmie's testimony relates to product development, corporate knowledge, and warning issues for asbestos dangers related to Owens-Illinois's Kaylo insulation. Mr. Grimmie was an employee of Owens-Illinois from 1947 until 1958. (Ex 12 at 13.) Owens-Illinois disclosed him in the instant case as a fact witness whose testimony would be presented by depositions dated September 20, 1991 and October 28, 1991. (Ex 11 at 3.) Therefore, Mr. Grimmie qualifies as disclosed under categories 3, 4, and 6.

### Willis Hazard

Plaintiff will present testimony that Willis Hazard gave in two depositions, the first on February 11, 1981, the second on March 27, 1981. Mr. Hazard was an industrial hygienist involved with the design, development, and safety testing for Owens-Illinois's Kaylo product. Owens-Illinois disclosed Mr. Hazard as a former employee on its list of fact witnesses in its witness disclosure dated July 15, 2011. (Ex 11 at 2.) In Exhibit A to that document, Owens-Illinois provided prior testimony designations from the same February 11, 1981 deposition as Plaintiff. (Ex 11 at 21.) Mr. Hazard is also listed as a witness "Whose Deposition Will Be

6

Used" by Owens-Illinois in defendants' draft Final Pretrial Order of October 25, 2013 (Ex 29.) Therefore, Mr. Hazard qualifies as disclosed under categories 3, 4, and 6.

*Expert Witnesses*

The scheduling order entered on June 9, 2011, for this case also contained a deadline for making "Rule 26(a)(2) expert reports." (Ex 22.) The two disputed expert witnesses prepared Rule 26 expert reports, which plaintiffs timely filed on October 19, 2011, under the amended scheduling order of October 12, 2011. (Ex 9.) During the MDL discovery proceedings, Defendants did not make a motion or raise any objections that Plaintiff's Rule 26 expert disclosures were insufficient.

**Joseph Ferriter**

As mentioned above, Plaintiff disclosed Joseph Ferriter as a fact witness in Plaintiff's Fact Witness Disclosure of June 22, 2011. Additionally, Plaintiff identified Mr. Ferriter as an expert witness in Plaintiff's Revised Statement of Expert Witness Reports on October 19, 2011, which included Mr. Ferriter's Rule 26 expert report and disclosures. (Ex 7.) Mr. Ferriter is an expert in the construction practices involving pipefitters such as Plaintiff.

On November 29, 2011, Mr. Ferriter was noticed for deposition during the expert discovery period. The deposition took place on January 12 and 13, 2012. Mr. Ferriter was examined by counsel for defendants Crane Co., Mobil Oil, Owens-Illinois, and Weil-McLain, each of whom appeared in the *Krik* case. (Ex 5.)

7

**John Templin**

John Templin is employed by Material Analytical Services, Inc. ("MAS"). In Plaintiff's Revised Statement of Expert Reports of October 19, 2011, Plaintiff disclosed "Material Analytical Services, Inc." as an expert witness for reports written and studies conducted by MAS. These studies relate to the Kaylo asbestos insulation products and asbestos-containing gasket products which are sources of Plaintiff's alleged exposures. Defendants made no request for a deposition of any MAS witness before discovery closed in the MDL.

Plaintiff had anticipated that another MAS employee, Richard Hatfield, would testify on behalf of MAS. On or about July 25, 2013, Plaintiff learned that Mr. Hatfield would be unavailable for trial due to health reasons. On July 26, Plaintiff informed defense counsel that John Templin would represent MAS instead of Mr. Hatfield (Ex 14.) Plaintiff voluntarily tendered Mr. Templin for deposition. Defendant Owens-Illinois noticed Mr. Templin's deposition, which was taken on November 1, 2013 in the *Krik* case (Ex 15.)

2. Rule 37 Sanctions are Not Proper

Striking witnesses as a discovery sanction should be governed by the precedent of the Third Circuit because discovery in *Krik* was conducted under the jurisdiction of the Eastern District of Pennsylvania. Third Circuit case law striking witnesses as untimely disclosed requires a finding of intentional nondisclosure or violation of a court order.[3] "The exclusion of critical

---

[3] In establishing "bad faith" for not disclosing information, the standard is "knowing concealment." "Before any duty arises for party to disclose newly discovered facts which render prior answer incorrect, it must be shown that failure to disclose new facts would amount to *knowing concealment*." *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263 (8th Cir. 1975) (emphasis added). Similarly, "Rule 26(e) is designed to prevent party from surprising his adversary in setting forth new acts *at trial* not disclosed during discovery; before any duty to supplement responses arises, it must be shown

evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Quinn v. Consol. Freightways Corp. of Del*., 283 F.3d 572, 576 (3d Cir.2002) (quoting *Meyers v Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir.1977)). In *Meyers* the witnesses were not identified until 18 days before trial. 559 F.2d at 905-06.

If a discovery order has been violated, the Third Circuit follows a five factor analysis in determining whether exclusion of the non-disclosed evidence is justified. The court held in *ZF Meritor, LLC v. Eaton Corporation*, 696 F.3d 254, 297-98 (3rd Cir. 2012):

> In considering whether the District Court [**109] abused its discretion in denying Plaintiffs' request to submit alternate damages calculations, we will consider: (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence. *Pennypack*, 559 F.2d at 904-05. The importance of the evidence is often the most significant factor.

Another example from the Third Circuit is the decision in *Sheehan v. Delaware & Hudson Railway Company, Inc*., 439 Fed. Appx. 130, 132 (3d Cir. 2011), which affirms the discretion of the trial court in allowing fact witness testimony at trial although the tendering party had not complied with discovery obligations in disclosing the testimony. The court noted the lack of bad

---

that failure to disclose new facts will amount to knowing concealment." *PIC, Inc. v. Prescon Corp*., 485 F.Supp. 1299 (D.C. Del. 1980) (emphasis added). The Third Circuit has imposed a similar "bad faith" standard: "Party's possible failure to provide names of two witnesses in its self-executing disclosures or to disclose them in response to interrogatories was not in bad faith and opponent knew names of witnesses and scope of their relevant knowledge well before trial." *Newman v. GHS Orthopedic*, 60 F.3d 153 (3d Cir. 1995). Defendants make no showing of any bad faith by the plaintiff or CVLO counsel.

9

faith and found the "testimony would not disrupt the trial." 439 Fed. Appx. at 133.[4]

As set forth above, Plaintiff complied over two years ago with specific scheduling orders in *Krik* by disclosing fact and expert witnesses by name or within certain well-defined categories. Defendants filed no motion during the discovery period in *Krik* to put Plaintiff on notice that the disclosures were inadequate or improper. Had Defendants done so at that time, the matter could have been corrected or ruled on during the discovery phase. Furthermore, the witnesses whom Defendants now seek to exclude are persons 1) listed in defendants' *Krik* witness lists, 2) designated by defendants as corporate witnesses, 3) subject to direct or cross-examination by defense counsel at past depositions which are being offered, and 4) well known to experienced counsel in asbestos cases. Defendants do not suffer prejudice or surprise from these witnesses.

The importance of the witness testimony to Plaintiff's case cannot be questioned. The events at issue occurred decades ago - mostly before 1980. Most of the witnesses from the period are deceased. The witnesses Defendants seek to strike have personal knowledge of the events in this era, are corporate witnesses designated to testify about the time period, or have done expert studies of the products at issue. Records are not available to prove what the corporate defendants knew about the dangers of asbestos or warnings and other worker protection from these dangers. Witnesses Hazard, Grimmie, Pabst, Larson, Schuelke, and Pantaleoni provide testimony about corporate practices of Defendants on these matters in the historical period. Records are also not available for issues of asbestos content and design of

---

[4]Seventh Circuit case law treats the sanction of striking witnesses in a similar fashion. In the often cited case of *Bronk v. Ineichen*, 54 F.3d 425,428 (7th Cir. 1995), the court listed the factors to be considered in striking a witness for a Rule 37 violation as follows: "prejudice or surprise to opposing party, ability of party to cure prejudice, likelihood of disruption [of the trial], and moving party's bad faith or unwillingness to comply."

products, fiber release from the products, or construction practices in the relevant historical time frame. Witnesses Hazard, Schuelke, Panteleoni, McLean, Ferriter, and Templin cover these topics.

<u>3. Defense Mischaracterization of the MDL-875 rulings in other cases</u>

Defendants' motion is based on a series of rulings which Defendants characterize as made by the "MDL-875 court." All the rulings are made by Magistrate Judge David Strawbridge, who is one of the four magistrate judges that recently handled the MDL-875 cases.

Defendants' cited rulings have minimal relevance. None of the rulings are from the *Krik* case or the "first ten" CVLO case group, which included *Krik*. nstead, Defendants cite to rulings made in other CVLO MDL-875 cases which are on separate scheduling orders. For example, the "first ten" CVLO MDL-875 cases had a specific "fact witness" disclosure requirement not in scheduling orders for later CVLO MDL-875 cases. The "first ten" cases are not subject to later rulings of the magistrate court in other cases with different case management/scheduling orders.

Defendants also mischaracterize and misstate the rulings made in the MDL proceedings involving other cases. The same arguments Defendants make in the instant motion were presented to District Court Judge Eduardo Robreno in hundreds of motions to strike witnesses at the summary judgment stage in other CVLO cases. On July 23, 2013, Judge Robreno issued a rule to show cause order which announced his intention to deny all the motions to strike pending in over 100 cases[5]. The order by Judge Robreno stated: "The Court finds that, given the

---

[5] The motions to strike were based on the same arguments and citing to the same series of rulings which defendants advocate are controlling in *Krik*.

11

procedural history of these cases, the substantive issues presented cannot be resolved on their merits based upon the current records."[6] (Ex 20 at 1, note 1.) The denial of the motions was made effective in an order entered on November 15, 2013. (Ex 23.)

Defendants' reliance only on rulings by a single magistrate judge in the MDL-875 proceedings as rulings of the MDL 875 court is improper and inaccurate. The magistrate judge himself acknowledged he had no authority to strike witnesses.

For example, in the case of *Ferguson v. AC AND S et al.* Case 2:10-cv-61115-ER , defendants sought to strike interrogatory answers in a CVLO case which disclosed the names of potential witnesses. The magistrate court stated in *Ferguson v. AC AND S et al.*:

> Defendants' request that we strike verified interrogatory responses based on the possible prejudice associated with the extent and character of information contained in the responses as well as the date when they were served, is premature. Without knowing how Plaintiffs would seek to use this information in a given case, we are unable to grant such relief. The judge presiding over the case when, and if, a Plaintiff attempts to utilize such a declaration or otherwise rely on such information from an interrogatory response will be in a much better position to engage in the prejudice analysis.

(Ex 25, *Ferguson v. AC AND S et al.* Case 2:10-cv-61115-ER Document 125 Filed 11/16/12)[7]

In the CVLO MDL-875 case of *Doyle v. A.C. AND S., INC. et al*, MDL 875 Case No. 08-89845-ER, Doc. 205, filed 1/11/13, the magistrate court considered a motion by defendant

---

[6] One of the rulings by the magistrate judge cited by defendants was reversed by the district court. Defendants cite on page 10 of their motion an order of the magistrate judge which, according to defendants, "found clear and willful disregard." The order was entered on a motion by the defense to strike and bar CVLO's amended expert witness IH report. Defendant's fail to mention the ruling was the subject of an objection filed by CVLO . (Ex 18, Case 2:08-cv-92210-ER Document 228 Filed 04/17/13.) The rule to show cause order of Judge Robreno denies the pending motions including the one subject to the objection. (Ex 20.)

[7] Defendant's cited to *Ferguson* ruling on page nine (9) of their brief, but did not mention the passage quoted by plaintiff *supra*.

CBS to strike testimony of a witness submitted in opposition to a summary judgment motion. The court held:

> CBS's request to strike the declaration of David Kedrowski is DENIED without prejudice in that the declaration has been submitted in response to CBS's motion for summary judgment. The disposition of such motions is beyond the authority granted to us pursuant to the July 9, 2012 referral order (see e.g., *Ahnert v. CBS Corp.*, 10-67443 Doc. 34) and 28 U.S.C.A. § 636 (b)(1)(A).

(Ex 26, *Doyle v. A.C. AND S., INC. et al* Case 2:09-cv-64733-ER Document 175 Filed 01/11/13). Though the defendants in the *Krik* matter now assert rulings of the magistrate court are governing authority from the "MDL court" on striking improperly disclosed witnesses, the magistrate judge himself disavowed the authority to make rulings striking witnesses.

Extensive briefing in MDL-875 cases that led to the rule to show cause order and denial of motions to strike by Judge Robreno established no sanctionable discovery violation occurred even in the "other" MDL-875 cases cited by defendants. The relevant history of the MDL-875 discovery proceedings is set forth in multiple briefs, totaling over one hundred pages and several hundred exhibits, which plaintiffs filed in the other MDL-875 cases. See, e.g., Exs. 31, 32, 33. These briefs deal in depth with the same issues defendants now raise in *Krik*. The trial should not be delayed by requiring this remand court to undertake an exhaustive review of the MDL-875 proceedings.

Defendants further contend Plaintiff did not make a rule 26 disclosure in the instant case. That is not accurate, because the *Krik* scheduling order did include the date for such a general filing and incorporated specific alternatives. Plaintiff in *Krik* by agreement served answers to standard interrogatories identifying many potential coworker witnesses and filed the fact witness list as ordered by the magistrate judge. As Rule 26 provides, the parties and court can "as

13

otherwise stipulated or ordered by the court" make alternative arrangements for disclosures in lieu of the express language of Rule 26. The standard interrogatory answers provided by plaintiff and fact witness lists served this purpose in the *Krik* case. The MDL scheduling order also contained a specific requirement for "Rule 26" experts which plaintiff served. Defendants also made no motion during the MDL discovery that plaintiff failed to satisfy Rule 26, the scheduling order, or other discovery disclosure agreements.

### 4. Special Master McGovern

The issues in the motion to strike are appropriate for resolution or recommendation by the special master recently appointed for the MDL-875 cases. (Ex 19.) Plaintiff's counsel advised the court of the appointment on September 9, 2013. (*Id.*) The fee for the use of the special master has been paid. (Ex 16.)

> The function of the special master is set forth in the order as follows:
> A. To assist the trial and/or transferee court in any manner deemed appropriate by those courts to insure the smooth and consistent remand of cases from MDL 875.
>
> B. To provide communication, coordination, and cooperation for the trial court judges who have cases remanded from MDL 875 to insure that the trial courts have knowledge of the procedural history of the case while pending in MDL 875 including the discovery conducted as well as the rulings from the MDL 875 court. This communication with the trial court by the special master may also include an overview of any additional discovery and/or motion practice that may be necessary for the case to be ready for trial post-remand.
> The arguments in the motions to strike reference the long chronology of historical rulings made in MDL 875.

(Ex 19; Case 2:01-md-00875-ER Document 8904 Filed 09/06/13)

All remand courts will be asked to interpret, reconsider, and apply these past rulings.

14

The characterization of the rulings will be disputed by the parties. This is particularly true for the CVLO cases which were assigned to a special docket starting in 2009. (Ex 24.) As discussed below, the citations and characterizations of the MDL 875 Court's rulings by defendants are inaccurate, inappropriate and incomplete. For each district court on remand to spend time reinventing the wheel of how to interpret the rulings is not a productive use of judicial resources and will lead to inconsistent rulings.

## Conclusion

For the reasons set forth above, the motion to bar should be denied.

Dated: November 22, 2013


\s\ Robert G. McCoy
Attorney for plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com