UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES KRIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-7435 |
| ) | |
| BP AMOCO CHEMICAL COMPANY *et al.*, ) | District Judge John Z. Lee |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR SECOND JOINT MOTION
TO BAR UNDISCLOSED AND IMPROPERLY DISCLOSED WITNESSES**

Pursuant to Federal Rules of Civil Procedure 16 and 37 and the Order of October 31, 2013 (ECF No. 148), Defendants Crane Co., ExxonMobil Oil Company, Owens-Illinois, Inc., and Weil-McLain submit this Reply in Support of their Second Joint Motion to Bar Undisclosed and Improperly Disclosed Witnesses (ECF No. 151).

**ARGUMENT**

Plaintiff cannot rely on "eleven categories of witnesses," served purportedly in his Indiana case before consolidation, to introduce testimony from any deposition ever taken or anyone ever disclosed in the largest, longest-running mass tort litigation in United States history. Pl.'s Resp. 2-8. Plaintiff's consolidated case included, in fact, more than 40 other defendants. The entire notion that sweeping categories—such as "any defendant's current or former employees who have given testimony under oath in a prior claim for asbestos related injury, or property damage or insurance coverage related to asbestos claims"—qualifies as disclosure should be rejected. Therefore, Defendants can agree with Plaintiff only this far: a defendant may call a properly disclosed witness in its case-in-chief. Pl.'s Resp. 3.

Both the MDL 875 Court and the Seventh Circuit have made clear that complex cases, such as this one, must have enforceable deadlines and disclosure requirements. Def.'s Mot. 9-14 (citing

and discussing decisions). Unlike cases with few parties, this case involved at least four dozen defendants, and Plaintiff's eleven categories would extend to all of these defendants — not merely the specific product or premises defendant against whom the witnesses would testify. Each defendant is not required to piece together information from thousands of other cases. *Shine v. Keene Corp.*, No. 87 C 4687, 1991 WL 86100, at *3-4 (N.D. Ill. May 17, 1991), *aff'd*, 979 F.2d 93 (7th Cir. 1992). Each defendant is thus prejudiced by having to rebut testimony that it could not reasonably have been expected to investigate before Plaintiff's pretrial witness list. *See id.*; *see also In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 2000 WL 748155, at *5 (N.D. Ill. June 5, 2000).

For example, Plaintiff argues that two 1991 deposition transcripts of Richard Grimmie should "qualify" as disclosed. Pl.'s Resp. 6. Neither transcript was disclosed by any party in this case, and Plaintiff's statement that Owens-Illinois disclosed these transcripts is simply untrue. *Id.* Likewise, Plaintiff's statement that Owens-Illinois listed a deposition transcript of Willis Hazard from March 27, 1981, in the draft final pretrial order is inconsistent with the record. *Id.* at 7. The deposition transcripts of William McLean from December 15, 1995, Bruce Larson from March 23, 2010, and Arthur Pabst from November 26, 1980, were never disclosed by any party either. *Id.* at 4-9. Thus, rather than preparing a final pretrial order in a trial-ready case, each defendant was forced to request stacks of random undisclosed transcripts, like those of Messrs. Grimmie, Hazard, McLean, Larson, Pabst, and several others, from Plaintiff and then try to remake their own respective product and premises cases. The well-designed process in the Standing Order Governing Proposed Pretrial Orders was derailed. Most importantly, however, Defendants could not discover rebuttal facts or develop their own factual and expert evidence in order to respond.

Plaintiff's claims with respect to Joseph Ferriter also do not accurately reflect the actual record. Pl.'s Resp. 5. First, Plaintiff's unsigned "Fact Witness Disclosure," allegedly made in his previously filed Indiana case (to which many current Defendants, including Mobil, were not a party),

is so deficient as to constitute a nullity. The sum total of information disclosed about Mr. Ferriter is: "LastName: Ferriter; FirstName: Joseph; Type1: Siteworker; CVLO client? [blank] (sic)." Pl.'s Fact Witness Discl. (ECF No. 157-8) at Ex. A. The disclosure contains no other information—not the sites at issue, the subject matter of the testimony, the defendants against whom Mr. Ferriter's testimony would be used, or anything else regarding Mr. Ferriter's expected fact testimony. *See id.*

Second, Plaintiff was required to provide information about any witness in the court-ordered standard interrogatories, including information about each co-worker's job sites and asbestos-product information. Defs.' Mot. 4-5. Although Plaintiff never provided verified responses in this case, he did provide an unsigned response that excluded Mr. Ferriter. *Id.* at Ex. H. Plaintiff apparently had submitted a different undated and unsigned response in his Indiana case that identified Mr. Ferriter at "Quantum Chemical" between 1989 and 1990. Pl.'s First Resp. Standard Interrogs. (**Ex. A**) at No. 20 & Ex. A. Mr. Ferriter was not disclosed for any other site and specifically the column for workers about the Mobil Joliet site is blank—indicating that there were no witnesses at Mobil Joliet. *Id.*

Third, Mr. Ferriter appeared for deposition as a purported fact witness on June 14, 2011, pursuant to the MDL 875 Deposition Protocol. Because of numerous glaring deficiencies in the deposition notice, and because of irregularities at the deposition, Defendants were forced to contact MDL 875 Judge Strawbridge, who ultimately quashed the deposition and declared it a nullity. Joseph Ferriter Dep. (**Ex. B**) at 108-109. Plaintiff was then directed to submit a revised, more accurate deposition notice for Mr. Ferriter as a fact witness. Plaintiff never did so, and never re-tendered Mr. Ferriter for deposition as a fact witness.

Fourth, and finally, Mr. Ferriter was produced as a purported "expert" witness on several occasions. However, he admitted that he had no expert opinions about any of the plaintiffs' cases in which his deposition was noticed:

> **Q.** **As I understand [your report], just to clarify, that is a report that's meant to characterize your own personal experiences that you've had yourself throughout your working career, right?**
> A. That's correct, sir.
> **Q.** **It's not an opinion about somebody else and his experience and his particular job throughout his career, true?**
> A. That's correct.
> **Q.** **Nor is it any opinion with respect to specific activities that he did or materials with or around where you worked; is that right?**
> A. That's correct, sir.
> **Q.** **Or whether any of those materials actually contained asbestos, right?**
> A. That's correct, sir.
> **Q.** **Or the level of airborne concentration of asbestos with respect to any person's work?**
> A. That's correct, sir.

Joseph Ferriter Dep. (**Ex. C**) at 132:19-136:8. As is evident from his own admissions, Mr. Ferriter is not an "expert" in anything, and does not purport to be. In short, Mr. Ferriter has never been properly disclosed as a fact witness in this case, he is not qualified as an expert, and moreover, his purported expert report contains no actual opinions about the remaining Defendants.

As their last point, Defendants must respond to Plaintiff's argument that the MDL 875 Court "struck down" the rulings cited in their motion, Hr'g Tr. at 30:14-23, Oct. 31, 2013, and that Defendants' motion "mischaracterizes the record in the MDL," Pl.'s Resp. 2, 11-12. Recently, the MDL 875 Court was faced with hundreds of filings—much like this motion and Plaintiff's 308-page response—based on his attorneys' disclosure and discovery violations. It therefore entered a rule to show cause for counsel to show why all pending motions should not be denied without prejudice and with new scheduling orders and briefing schedules. Order (**Ex. D**) at 1, July 22, 2013. At the rule to show cause hearing, the MDL 875 Court explained that plaintiffs should be required to answer court-ordered requests about the discovery record, the defendants could take depositions of any previously identified witness (and not new witnesses), and defendants could re-file their same motions or supplement their motions. Hr'g Tr. (**Ex. E**) at 6:7-8:10, 10:24-12:21, Sept. 4, 2013.

The MDL 875 Court then entered a renewed scheduling order in 25 test cases, Order (**Ex.**

**F**) at 1, Sept. 17, 2013, and denied the pending motions without prejudice. Order (**Ex. G**) at 1, Nov. 15, 2013. The MDL 875 did not vacate, overrule, reverse, or set aside any prior decision. Nor did the MDL 875 Court "establish[] no sanctionable discovery violation occurred." Pl.'s Resp. 13. Far to the contrary, the MDL 875 Court has reaffirmed its prior sanctions orders, including several orders cited here by the Defendants. Order (**Ex. H**) at 1-2, Nov. 6, 2013. The Plaintiff's effort to avoid the MDL 875 record only underscores the disclosure and discovery violations because he cannot show the violations were substantially justified or harmless.

## CONCLUSION

Although "the 'district court is not required to fire a warning shot' prior to imposing sanctions," *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 96 (7th Cir. 1992), the MDL 875 Court provided explicit notice that undisclosed and improperly disclosed witnesses could be excluded from trial. Plaintiff was required, and indeed admonished, to disclose his witnesses under several court orders, multiple discovery requests, and the black letter requirements of the Federal Rules of Civil Procedure. Especially in this complex case, with uniquely situated product manufacturers and premises owners, the automatic sanction of exclusion is proper because repeatedly "the requirement for disclosure had been called to the litigant's attention by either the court or another party." Fed. R. Civ. P. 37 advisory comm. note. Plaintiff's failure to comply therefore was neither substantially justified nor harmless.

For these reasons, and the reasons in their motion, Defendants Crane Co., Owens-Illinois, Inc., ExxonMobil Oil Company, and Weil-McLain respectfully request the Court grant their Second Joint Motion to Bar Undisclosed and Improperly Disclosed Witnesses (ECF No. 148).

Dated: November 29, 2013     Respectfully submitted,

By: /s/ Brian O. Watson
Matthew J. Fischer
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant*
*Owens-Illinois, Inc.*

By: /s/ David F. Fanning
H. Patrick Morris
David F. Fanning
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603-5404
(312) 372-0770
(312) 372-9818 (facsimile)

*Attorneys for Defendant*
*Exxon Mobil Oil Corporation*

By: /s/ Shawn P. Babiuch
Shawn P. Babiuch
Mark C. Sampson
Segal McCambridge Singer & Mahoney
233 S. Wacker Dr. Suite 5500
Chicago, Illinois 60606
(312) 645-7800
(312) 645-7711 (facsimile)

*Attorneys for Defendant*
*Weil-McLain*

By: /s/ James P. Kasper
James P. Kasper
Catherine L. Carlson
Gunty & McCarthy
150 S. Wacker Dr., Ste. 1025
Chicago, Illinois 60606
(312) 541-0022
(312) 541-0033 (facsimile)

*Attorneys for Defendant*
*Crane Co.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on November 29, 2013, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson