<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3  CHARLES KRIK,                  )   Docket No. 10 C 7435
                                   )
 4                  Plaintiff,     )
                                   )
 5        v.                       )   Chicago, Illinois
                                   )   October 31, 2013
 6  BP AMERICA, INC., et al.,      )   9:00 o'clock a.m.
                                   )
 7                  Defendants.    )

 8              TRANSCRIPT OF PROCEEDINGS - STATUS
                BEFORE THE HONORABLE JOHN Z. LEE
 9
    APPEARANCES:
10
    For the Plaintiff:            CASCINO VAUGHAN LAW OFFICES,
11                                LTD., by
                                  MR. ROBERT G. McCOY
12                                220 South Ashland Avenue
                                  Chicago, Illinois 60607
13
    For Defendant Owens-          SCHIFF HARDIN LLP, by
14  Illinois:                     MR. MATTHEW J. FISCHER
                                  MR. BRIAN O'CONNOR WATSON
15                                233 South Wacker Drive
                                  Suite 6600
16                                Chicago, Illinois 60606

17  For Defendant ExxonMobil:     JOHNSON & BELL, by
                                  MR. H. PATRICK MORRIS
18                                33 West Monroe Street
                                  Suite 2700
19                                Chicago, Illinois 60603

20

21

22              ALEXANDRA ROTH, CSR, RPR
                   Official Court Reporter
23               219 South Dearborn Street
                         Room 1224
24               Chicago, Illinois 60604
                     (312) 408-5038
25
</pre>

```
 1   APPEARANCES:   (Continued)

 2   For Defendant Crane:          GUNTY & McCARTHY LAW OFFICES, by
                                   MR. JAMES PAUL KASPER
 3                                 150 South Wacker Drive
                                   Suite 1025
 4                                 Chicago, Illinois 60606

 5   For Defendant Marley-         SEGAL McCAMBRIDGE SINGER &
     Wylain:                       MAHONEY, LTD., by
 6                                 MR. SHAWN PATRICK BABIUCH
                                   233 South Wacker Drive
 7                                 Suite 5500
                                   Chicago, Illinois 60606
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (Proceedings had in open court:)

2         THE CLERK:  10 C 7435, Krik versus BP America, for

3    motion hearing.

4         MR. McCOY:  Good morning, your Honor.

5         MR. FISCHER:  Good morning, Judge. Matthew Fischer and

6    Brian Watson for the defendant Owens-Illinois.

7         MR. MORRIS:  Good morning, your Honor.  Pat Morris --

8         THE COURT:  Slow down for a second.  Let me just get

9    everyone.

10         MR. McCOY:  Bob McCoy for the plaintiff, Judge.

11         MR. MORRIS:  Pat Morris for the defendant, your Honor,

12    for ExxonMobil.

13         MR. KASPER:  Good morning, your Honor.  James Kasper

14    for Crane Co.

15         MR. BABIUCH:  Good morning your Honor.  Shawn Babiuch

16    on behalf of Weil-McLain.

17         THE COURT:  Okay.  So we have Owens, we have Exxon, we

18    have Crane.  And I'm sorry?

19         MR. BABIUCH:  Weil-McLain.

20         THE COURT:  Do we have anyone from BP?

21         MR. McCOY:  Judge, I don't think there is going to be

22    anyone from BP.  We are very close to settlement with BP.

23         THE COURT:  Okay.  So I have been following with

24    interest the various submissions by the parties with regard to

25    the whether you want to call it draft pretrial order, or second

1   amended draft pretrial order, what have you.

2           What I can tell you is that I have a substantial

3   amount of concerns regarding the current state of the final

4   pretrial order and how this case is shaping up for trial.  Not

5   the least of which is that the final pretrial order, or let's

6   put it this way, the second draft or amended second draft of

7   the final pretrial order that was submitted on Monday by the

8   plaintiff's and BP, without the signatures of the other

9   defendants, is 825 pages long.

10          Now, I know you all are very experienced trial

11  lawyers.  And if you can point me to a three-week trial where

12  you needed an 800-page-long pretrial order I'd like to know

13  about it, because frankly I don't think one is needed here.

14          Now, I understand that it could perhaps be reduced if

15  the parties had sufficient amount of time to try to resolve

16  their differences, to meet and confer and to try to come to

17  some agreements on them.  But this is what I have observed and

18  you can let me know.  And I will give everyone a chance to kind

19  of provide me with their comments.  Okay?

20          So back in July I ordered the parties to submit a

21  joint final pretrial order on October 25.  So what we got on

22  the 25th was, we got in the afternoon the defendants provided a

23  courtesy copy, I believe out of an abundance of caution, of

24  what they called a draft of the final pretrial order that

25  contained red line corrections or comments that they had to the

1    one proposed by plaintiff.

2            Now, I understand that there may have been some

3    previous exchange of exhibit list or exhibit lists, plural,

4    between the parties before or early in October.  But at least

5    the defendants state that the plaintiff provided them with the

6    draft proposed pretrial order the day before, on the 24th.

7            At 11:45 p.m., five minutes remaining on October 25,

8    the plaintiff filed what I would generously call a draft of

9    pretrial order, which plaintiff represented was the most

10   current version of the order.  But the only parties to sign

11   that were plaintiffs and BP Amoco.  Plaintiffs provided some

12   e-mails, noting that with regard to the other defendants there

13   were ongoing discussions and concerns about objections that the

14   other defendants had to the final pretrial order, and that

15   those discussions were ongoing.  Presumably that is why only BP

16   and the plaintiff signed onto the, well, 10/25 order.

17           Then as we are in the process of trying to make some

18   headway into understanding the 25th pretrial orders, on October

19   29 plaintiffs then submitted a second draft pretrial order,

20   stating that it's basically substantially similar to the one

21   filed on 10/25.  But there again, it bore the signatures of

22   plaintiffs and BP Amoco only.  Okay.

23           And my standing order, as I am sure you all are aware,

24   are very clear on how I want the parties to go about trying to

25   prepare a final pretrial order; that is -- and believe it or

1    not, I have spent substantial amount of time coming up with the

2    standing order.  That is, plaintiffs counsel has responsibility

3    to prepare the initial draft of the final pretrial order and

4    must provide a draft to defendants' counsel no later than 21

5    days before the date the final pretrial order is due.  That

6    doesn't mean components of the pretrial order.  That means the

7    entire draft pretrial order.

8         Defendants' counsel must respond in writing to

9    plaintiff's draft by no later than 14 days before the final

10   pretrial order is due, including any objections, changes and

11   additions to plaintiff's draft, as well as defendants' portion

12   of the draft pretrial order.

13        The parties then must meet and confer by no later than

14   seven days before the final pretrial order is due to discuss

15   the respective drafts and to reach agreement to the extent

16   possible.  Any non-compliance with these requirements will

17   subject the party and/or his counsel to imposition of

18   sanctions.

19        Now, there is actually a reason why that procedure is

20   in place; and that is, it's intended to allow all of the

21   parties an opportunity to meaningfully meet and confer to try

22   to narrow the disputes and the issues that the parties will

23   bring in front of the Court in the final pretrial conference.

24   Also it allows the parties themselves time to consider and

25   streamline the pretrial order based upon those conversations,

1   and which would include the list of witnesses, as well as

2   exhibit lists, so that the trial can proceed as efficiently as

3   possible.

4         Furthermore, in a case like this, where we have

5   multiple defendants, it's intended to allowed defendants

6   themselves to meet and confer so that they can, if possible,

7   submit consolidated voir dire questions, consolidated jury

8   instructions, consolidated objections to plaintiff's proposals.

9         Now, I understand that in certain instances you all

10  have duties to your own clients, and they all have their

11  particular issues perhaps.  And I understand that at times you

12  need to, in addition to consolidated objections and proposals,

13  submit your own.  However, my speculation is, based upon my

14  experience both as a lawyer and as a Judge, that if you have

15  the time and take the time to do that, then you will be able to

16  come to some sort of general agreement on a consolidated set of

17  proposal and responses, and then narrow the ones where

18  individually your clients have particular unique positions.

19  Okay.

20        That will just allow us to proceed at the pretrial

21  conference in an orderly fashion, okay, and to proceed at trial

22  in a somewhat orderly fashion.  Okay?  We tried to go through

23  the various jury instructions that were part of the proposed

24  final pretrial order.  And frankly, I challenge any one of you

25  to get one of your most industrious associates to try to do the

1   same.  And you will end up with a spreadsheet that is not

2   incomprehensible.  Okay?

3           So the whole procedure is intended to allow all of

4   those discussions to take place.  Okay.  Last thing we want to

5   do is waste multiple days at a final pretrial conference when

6   the time is better spent you preparing for trial and for us

7   preparing what we need to do for trial as well.

8           I think my conclusion, perhaps speculative but I don't

9   think so, is that the reason why the final pretrial order, the

10  last one I got, was 825 pages, was because the parties just

11  didn't have a meaningful opportunity to have those discussions,

12  either with one another amongst the defendants or with the

13  plaintiff.

14          And abundantly clear to me, having reviewed -- and I

15  have to say I haven't reviewed all 825 pages, but I flipped

16  through all of it and read parts of it -- that it is way beyond

17  what is needed for this case, okay, particularly where I

18  anticipate a significant amount of the testimony will be

19  offered in some sort of expert form.  Okay?

20          So turning to the motions in limine, the failure of

21  the parties, for whatever reason, to engage in a meaningful

22  meet-and-confer process is I think only further illustrated by

23  the fact that the parties have filed over 36 motions in limine,

24  including, I might add, two what I would call omnibus motions

25  in limine that address a total of 53 separate issues.  I looked

1    through a lot of those issues.  Okay?  And it seems to me that

2    the parties can streamline those as well.  This, of course,

3    doesn't include the six Daubert motions that are now fully

4    briefed that we are considering.

5          So before I wrap this up.  There are a couple other

6    things I want to raise.  First, BP has stated that it has a

7    jurisdictional concern, which is why I wonder why they weren't

8    here.  To the extent they have a jurisdictional concern, I

9    recognize that subject matter jurisdiction is not something

10   that's waived.  However, it seems to me that a company like BP

11   and their able attorneys should have raised that earlier, and

12   if it did not had some reason not to.  Okay?  But I am not

13   going to speculate as to which I think is the case.

14         As I said, when I was practicing, I myself was

15   involved in a lot of MDL cases.  And so I am no stranger to

16   this process.  But BP has raised it, and so I am going to

17   address it.  And I am going to address it sooner rather than

18   later before I proceed to trial, because if BP Amoco remains a

19   defendant in this case, and if what they say is true, then you

20   are in the wrong court.

21         So BP is to file its motion to dismiss for lack of

22   jurisdiction within seven days.  Plaintiff or any other

23   defendants can file their responses seven days thereafter.  I

24   don't need a reply.

25         So if BP wants to proceed with its motion, it needs to

1    do so now.  If it wants to get out of this case, it can talk to

2    plaintiffs about how it wants to do that.  But that

3    jurisdictional issue is troubling to me.

4         Also troubling for the purpose of trial is that when I

5    go through the list of defendants, okay, the defendants that

6    are before me today are a small subset of the number of

7    defendants that are still outstanding.  So the ones who are

8    what I would call actively defending the case, at least from my

9    view, from what we've seen, is BP Amoco, ExxonMobile, Crane,

10   Owens-Illinois, Marley-Wylain or Weil-McLain.  There are

11   defendants who are named, who are represented by counsel, but

12   not participating in any way in the pretrial, such as Bechtel

13   Construction, CBS, Cleaver Brooks, Ingersoll Rand.  I don't

14   know whether they intend to be here at trial or not.  That's

15   something I intend to find out.

16        Defendants on the docket that have answered but have

17   filed no appearance that haven't participated, Union Carbide,

18   Certainteed Corporation, again, I intend to get some

19   information either from the parties and/or from defendants

20   themselves as to what their intention is with regard to trial.

21        There are defendants on the docket that haven't filed

22   an answer or appearance at all.  Rapid American, Trane.

23   Plaintiff needs to know what they want to do with these people.

24        MR. McCOY:  These are all the ones left.  I know that.

25   And I am sure we can --

1    THE COURT:  Okay.  Because right now I tell you that

2    on voir dire of the jury, we are going to go through all of the

3    defendants if this is the list because they are the ones that

4    are parties in this litigation.  And it seems to me that it

5    would only confuse the jury to have a trial where most or a

6    substantial number of defendants just aren't here.  I don't see

7    the point of that, okay, unless, of course, the defendants say

8    that they will be here and they intend to defend themselves, or

9    that they are intentionally not doing so.  And I am sure that

10   we can find some way of addressing that one way or the other.

11        In any event I'd like the plaintiff to file within 14

12   days a status report as to the remaining defendants.

13        MR. McCOY:  Okay.

14        THE COURT:  Okay.  Couple other things.  It's also

15   apparent to me that even after the meet and confer that I am

16   going to order that the parties have with regard to final

17   pretrial order, that we are going to need at least two full

18   days, if not more, for a final pretrial conference.  The

19   original schedule that I set was based upon statements made by

20   the attorneys at the status conference where we set these days.

21   It's apparent to me that based upon those statements I did not

22   appreciate the full extent of the issues and disputes that are

23   going to be placed before me and before the jury going forward.

24        So we are going to -- I am going to go ahead and

25   schedule at least two if not three additional days for final

1  pretrial conference.  So what does that all mean?

2       What it means is that I am striking the trial date.

3  Okay?  Given the current state of the final pretrial order, the

4  parties in this case, the jurisdictional issues that BP Amoco

5  has raised, I really think that it is in the best interest

6  really of everyone to do so.

7       So I know the parties have requested three weeks for

8  trial, and that's fine.  But again I want to set a date that we

9  can keep.  Also I have decided that for purposes of this case,

10 because we are going to have I believe successive jury

11 conferences during the trial as well as the case moves along,

12 we are going to have trial on Monday through Thursdays, and not

13 on Fridays.  Fridays I am going to reserve both for my criminal

14 docket, but also for any conferences that are necessary during

15 the trial.  Okay?

16      That raises in my mind another point; which is, in

17 light of the length of the trial and the issues involved, I

18 don't know whether you are familiar with the Seventh Circuit

19 jury studies.  Given the length of the trial, I would be

20 inclined to allow short attorney summaries, okay, at the end of

21 each week, at the end of the first week and the end of the

22 second week.

23      But I will only do so -- well, I want the parties to

24 think about that and to talk to one another about that.  Okay?

25 And if one of the parties thinks it's a good idea and if there

1    is some objection, you can go ahead and raise it with me.   And

2    I will just make my decision.   But I think in light of the

3    issues involved and given the length of the trial that you are

4    seeking, I think that a short summary at the end of the first

5    week and the second week might not be a bad idea for the jury.

6    Okay?

7            So the trial date.   The new trial date in this case

8    will be May 19.   We will start at 9:00 a.m.   I will schedule it

9    for three weeks, again no Fridays.   The final pretrial order,

10   to allow the parties an opportunity to do everything that I

11   have asked the parties to do, the final pretrial order should

12   be submitted by December 20.   The final pretrial conference

13   dates will be April 17, April 18 and April 22.

14           Yes?

15           MR. MORRIS:   Judge, I have my daughter's college

16   graduation the 20th and 21st of May.

17           THE COURT:   She is graduating during the week?

18           MR. MORRIS:   Yes, we leave on Wednesday.   The ceremony

19   starts on Thursday with the actual, you know, various

20   graduation things the weekend, for the various things that she

21   is involved in, softball team, sailing club, all that sort of

22   stuff.   I am back the 26th.   I -- my wife is one of my law

23   partners, so she would understand if I told her that you

24   scheduled this trial instead.   But she probably wouldn't like

25   it.

1    So I throw it out there.  I know your schedule.  So I

2    am going to try to do anything to give you information.

3          THE COURT:  I understand that.

4       (Discussion had off the record.)

5          THE COURT:  Okay.  That's fine.  We will -- no, I

6    understand that completely.  Let me propose an alternate date.

7    And --

8          MR. MORRIS:  I suppose the other option would be to

9    try to do something on the 19th and 20th --

10         THE COURT:  What about starting the 28th of April?  So

11   the week of the 28th, week of May 5 and week of May 12?  Does

12   that work for everyone here?

13         MR. McCOY:  Okay.

14         MR. MORRIS:  Yes, Judge.

15         THE COURT:  Then I am going to move up the final

16   pretrial dates.  I want to make sure that you all have

17   sufficient time.  Let's keep the 17th and the 18th.  Let's

18   strike the 22nd and instead make that the 11th.  Does that work

19   for everyone?  So we will have the first final pretrial

20   conference date on the 11th of April.  And then if necessary we

21   will continue the following week on the 17th and 18th.

22         MR. McCOY:  Okay.

23         THE COURT:  Okay.  Very good.  Any other questions?

24         MR. McCOY:  I do have a couple.

25         THE COURT:  Yes.

1       MR. McCOY:  It's in relationship to completing this

2   pretrial order.  One of the questions, concerns, is, expect to

3   use and expect to offer and may offer if need arises

4   distinction over the exhibits.  And I was -- wasn't sure.  I

5   thought we had this worked out.  But now that we are in front

6   of you, I'd like to get clarification.

7       THE COURT:  Sure.

8       MR. McCOY:  We have tried as plaintiffs to create a

9   list of 150 exhibits that we expect to use.  There is thousands

10  of other exhibits that have been used in asbestos and are on

11  list because if you don't have them on your list, then the

12  defendants can raise an issue that has long ago been resolved

13  by that document, but it might be raised if you don't have it

14  on your list.  So that creates that very long may use if the

15  need arise -- arises.

16      And the question I had was, my understanding of the

17  defendants, we are trying to get a stipulation on this, but

18  we're not expecting them to make objections to those.  And

19  certainly not to have your Honor to rule on all those may use

20  if the need arises exhibits, because that's just obviously not

21  something that would facilitate anybody's use of the -- good

22  use of his time of this trial.

23      So what I was wondering is if that's acceptable to

24  your Honor, that we would have these exhibits and there

25  wouldn't have to be a need for defendants to go back, object

1   item by item to those may use if the need arises.  That focuses

2   on our 150 or so expect to offer.

3         MR. FISCHER:  Thank you, Judge.  Matthew Fischer for

4   Owens-Illinois.

5         There is no distinction between expect to offer and

6   may use under Rule 16.  That's a Rule 26 language that applies

7   at the very beginning of trial, not at the final pretrial order

8   stage.  The defendants object to having a pile of exhibits,

9   thousands of exhibits high, that no one has looked at, no one

10  has objected to, and that your Honor hasn't had a chance to

11  rule on.

12        The final pretrial order is designed to allow the

13  parties and the Court to have some certainty about what will

14  happen at trial.  And this is exactly the problem that we have.

15  We have a moving target with regard to what the exhibits are

16  that are being proffered.

17        The notion that 150 exhibits isn't enough and that

18  there ought to be a back room of thousands more that might come

19  up but nobody really is paying any attention to, is absolutely

20  antithetical to the final pretrial order and federal practice.

21  We don't agree to do that.  We have begged the plaintiff to

22  give us a list of exhibits that are actually the exhibits that

23  they intend to submit during the course of trial, so that we

24  can do our job pursuant to the final pretrial order.  And we

25  haven't been able to get it.

1          This is the core of the problem because if there are

2    thousands of exhibits that they say they want to be able to dip

3    into but they don't really expect to, it affects everything

4    else.  It affects the witness designations.  It affects jury

5    instructions.  It affects every other issue.  And that really

6    is why we have, as your Honor said, out of an abundance of

7    caution tried to do our jobs under the final pretrial order

8    submitted to you on that Friday, what we submitted, and why we

9    brought these motions, so that we can bring this issue to the

10   Court's attention as soon as we reasonably could.

11         MR. McCOY:  Judge that's finger-pointing.  And I

12   didn't come here for that purpose.  But in response to that,

13   the list we're talking about were all submitted.  The only

14   question was whether the defendants needed to object to the may

15   expect to offer.  And that is a pretrial statement in Rule

16   26(a)(3).

17         THE COURT:  How many exhibits do the plaintiffs

18   currently have designated on all of its lists, do you know?

19         MR. McCOY:  I didn't count all of them, but it's over

20   a couple thousand, I am sure.  And for sure it's over 2,000.

21         MR. FISCHER:  Most recently, Judge, we think -- and

22   there has been several different lists, but on the most recent

23   submission we think there are 2,094 proposed exhibits.

24         MR. McCOY:  That hasn't changed.

25         MR. MORRIS:  What was that?

1    THE COURT:  Hold on.  The answer to your question is

2  that there is no distinction in my mind with those lists.

3  Okay?  The other thing I want to tell you is that the reason I

4  gave the parties until -- basically two months to propose, to

5  submit, its final pretrial order is so that the parties,

6  including the plaintiff, can go back and try to figure out what

7  it actually may need for trial.  Okay?

8    Now, I understand that sometimes you have to prepare

9  for issues that may arise.  But it seems to me that 2,000, over

10  2,000 documents, it seems to me kind of unreasonably excessive

11  in light of what I know about the trial and the three-week

12  nature of the trial.

13    So I would encourage the plaintiff to go back and try

14  to streamline those issues.  If you believe that if there are

15  categories of documents that you think you can do away with, if

16  the defendants stipulate to a particular issue that's

17  uncontroverted, then you can explore that.  But it seems to me

18  that there is no way you are going to use anywhere close to

19  2,000 documents in a three-week trial.  I would be surprised if

20  you use anywhere close to 60, 70 documents in a three-week

21  trial.

22    MR. McCOY:  That's why we have 150 on our list.

23    THE COURT:  Right.  And I understand if you have to go

24  over the 150, you know, to make sure that you dot your I's and

25  cross your T's.  But it seems to me that 2,000 -- let's put it

1   this way:  Maybe you might think it's necessary.  But it seems
2   to me that having just a list of documents that you might use
3   at trial really does create some difficulties for the other
4   side in trying to respond to them and prepare the trial
5   strategy.
6          And so I would encourage the plaintiff over the next
7   couple of weeks to go back and try to narrow the exhibit list
8   to the extent possible.
9          MR. McCOY:  Are you saying to take -- take out part
10  that we designated as may use if the need arises?
11         THE COURT:  No, I am not saying that at all.  What I'm
12  saying is, go back and look through your list of may use and
13  see if you can pare that down to something that you might
14  actually use, not that you will but that you might actually
15  reasonably use at trial.  Okay?  If in the end you believe that
16  you need all 2,000 documents, I want you to explain to me why.
17         MR. McCOY:  I can say we got 150.  I don't know that I
18  have ever taken one off of the other list in several years now.
19         THE COURT:  Okay.
20         MR. McCOY:  That's -- that's the thing.
21         But the other question I had, Judge, was the 803(18)
22  type of documents.  Now, in the past I've never submitted a
23  list of 803(18) documents in advance.  These come from the
24  experts.  So the defendants, getting through this process
25  ultimately, made clear finally that we -- they expected the

1    plaintiff to provide an 803(18) list, at least someone did.  I

2    can't say -- someone called me up and said they agreed with me

3    that we didn't need to do it, but I am not going to get into

4    that.  Some of them said so --

5            THE COURT:  I'm trying to remember my hearsay

6    exceptions.  Publicly available documents?

7            MR. FISCHER:  Learned treatises.

8            MR. McCOY:  So these are -- 803(18), I just found the

9    rule out myself.  I did it in practice all the time, but

10   somebody else pointed out to me that it was actually a rule.

11   And I didn't even know it.

12           So what you do with experts typically is you have the

13   document.  You usually put it up on a screen, and you highlight

14   the part you want the jury to see and the expert talks about

15   it.  And then the jury doesn't go get the document.  And it's

16   typically not admitted into evidence in the same way that the

17   other documents are.

18           So -- so the question of this 803(18) list was the one

19   that ultimately evolved, and I think that was the -- that was

20   the big holdup and still is probably.  I think everything else

21   in this pretrial order is effectively done.  But this 803(18)

22   list, which we prepared after they said -- after the -- some of

23   the defendants said we should actually have this list, is -- is

24   that something that your Honor is also expecting in your

25   pretrial orders?  And -- because it just isn't clear.  I didn't

1    know how you wanted us to deal with this, the documents that

2    are not going to the jury.

3           And our original position on it was even, well, we can

4    all just stipulate on those 803(18)s because their experts are

5    going to come in there and they are going to say these are --

6    the rule requires that the experts say something I rely on.

7    Basically when they say that, then it can be used for the

8    limited purposes that we talked about.

9           So we can do an 803(18) list.  But I just don't know

10   we can possibly figure out an expert might use because a lot of

11   these experts are not prepared on these cases for the final

12   presentations until they fly in the night before.  The experts

13   in asbestos, they're all busy 24 hours a day, seven days a

14   week.  And -- and so you get -- you get their final attention.

15   And you also know what the issues are when they come to trial.

16          So that means there may be some documents that they

17   come up with that are just documents in their profession that

18   they want to talk about that are, you know, not anything

19   specific to this case.  But you want to use them.  My concern

20   was, you know, you tie yourself in if you present everything

21   that's 803(18) in a list.  But I am happy to do what -- again

22   what our best knowledge of that is at this point in time.

23          And it's a long list.  It is a list of about four, 500

24   articles.  And for the most part, those are ones that the

25   experts may choose to cite.  I really couldn't eliminate any of

1  those until I actually met with them and we knew exactly where

2  this case stood.  And there is a lot of experts, and that's

3  why, because 40, 50.  And each expert in their report usually

4  cites a hundred or some articles alone.

5       So that was -- that was the more -- that was the other

6  question that I wanted to pose to your Honor, how we should

7  handle these 803(18)s.  I'm -- like I said, we prepared a list,

8  but I can't say that that's all and everything.

9       MR. FISCHER:  Thank you, your Honor.  Just quickly,

10  the final pretrial order is not in my view close.  The 803(18),

11  as Mr. McCoy calls them, is not the only issue.  There are lots

12  of other issues.  Your --

13       THE COURT:  By the way, I would agree with that.  I

14  think that the final pretrial order needs a substantial amount

15  of work from everyone, frankly.

16       MR. FISCHER:  Your final pretrial instructions are

17  very clear on this subject.  They indicate that a schedule --

18  paragraph 6, a schedule of all exhibits a party may introduce

19  at trial as well as any demonstrative exhibits or evidence

20  identified by trial exhibit number, and then it goes on to

21  describe what your Honor expects us to do.

22       What Mr. McCoy is describing are demonstrative

23  exhibits, things that he intends to show to the jury, that

24  would not be admitted into evidence.  It is the very definition

25  of a demonstrative exhibit.  We have pointed him to this

1   paragraph previously in the course of our meet and confers.  I

2   don't -- your -- you have already told us what you expect us to

3   do with regard to these exhibits.

4        MR. MORRIS:  Judge, Pat Morris.

5        In addition, the innocuousness of calling them learned

6   treatises I think belies in some respects the way that these

7   exhibits are used.  And the way they are used -- we have a

8   motion to bar the historian.  But the way they are really used

9   in part is that they get the historian on the stand, and they

10  have him read in in some quasi form as an effort to create

11  substantive evidence the seconds of those treatises.  And then

12  the distinction between substantive and reliance materials is

13  completely lost on the jury.  And then it is argued in closing

14  argument, you know that Owens-Illinois knew or you know that

15  Exxon knew or whomever.

16       And this is why we've been trying to pin down this

17  moving target of exhibit list, which I think we have in whole

18  or in part the piecemeal submissions.  We have 40-some

19  submissions to us that went in piecemeal, including exhibits

20  that went onto an exhibit list and off of an exhibit list

21  yesterday.

22       And I hear what you're saying, and I understand why

23  you're saying what you're saying about the trial date and the

24  pretrial order.  And I get all of that.  But I haven't

25  abandoned, you know, the request here that my client be

1   recompensed for the efforts that we went through that were

2   literally hundreds of thousands of dollars to try to turn

3   around in reliance on this Court's date and our promise to you

4   that we would come here, we would comply with that date.

5         We did the work that the plaintiff should have done

6   because we didn't have the gall to ignore your order.  And so

7   the defendants together literally in the 18 hours overnight and

8   Mr. Fanning 4:00 o'clock in the morning put together this

9   document that the plaintiff should have known, in the best way

10  that we could.

11        So I haven't abandoned the request that I guarantee

12  you my client will make to ask to be reimbursed for that amount

13  of money, which we had no reason to incur.  So we do have some

14  motions here that I think go to the heart of the issue and

15  would be essential prior to the time that we got to this

16  another meet and confer or a fourth or fifth meet and confer or

17  a sixth telephonic meet and confer or a 37th meet and confer by

18  piecemeal email.

19        We have motions here to strike witnesses, which were

20  admittedly never disclosed.  So if we take care of that, Judge,

21  I think we can streamline the pretrial.

22        THE COURT:  I will get to the motions in a little bit.

23  Don't worry.

24        MR. McCOY:  I don't know if I got to 4:00 a.m., but I

25  had several nights that were pretty darn close.  So did others

1    at our firm.

2            THE COURT:  So with regard to the exhibits or

3    treatises or whatever they may be, to the extent that anyone,

4    any of the parties, is going to use them, either on the Elmo or

5    display, whether or not they are actually going to be admitted

6    or not, they need to be disclosed in the final pretrial order.

7    Okay?  So it is what it is.  And so I think that's what my

8    standing order says.  And I think that's really the only

9    orderly way to go about this, frankly.  Because if we don't,

10   then I think the other side, you know, will argue that they

11   didn't get notice, that they didn't have sufficient time to

12   prepare.

13           I think it just delays things at trial.  And my main

14   goal is twofold:  One is obviously to give the parties as fair

15   a trial as possible.  And No. 2 is to make it as understandable

16   and as efficient as possible for the members of the jury that

17   is going to be sitting through three weeks of this trial.

18   Okay?

19           So the answer to your question is, yes, they need to

20   be disclosed to the extent they are going to be used at trial.

21   Okay?

22           MR. McCOY:  Should they be disclosed as 803(18)

23   documents?

24           THE COURT:  They don't have to be disclosed as

25   803(18).  They can be disclosed anyhow as long as they are

1    listed in the final pretrial order.  Because what it does is,

2    it provides the other side with notice that that might come up.

3    As you all know, trial isn't, you know, a game of ambush.  And

4    it allows everyone to prepare accordingly for the trial.

5         MR. McCOY:  So then, your Honor, the understanding

6    that I usually have in these cases with defense counsel would

7    be, as the rule says, that those kinds of documents don't go

8    back to the jury.  I mean, that just affects the preparation we

9    do in the pretrial stage in terms of these -- these kinds of

10   documents, what objections we might make and so on.

11        So I would kind of want to confirm that that is how we

12   plan to do it here too.  That's my question.

13        THE COURT:  I would say that you should have those

14   discussions with defense counsel and see if you can come to

15   some sort of agreement on it.

16        MR. FISCHER:  And, your Honor, just because I see

17   what's coming here, I want to be very clear about it.  I think

18   what Mr. McCoy is suggesting is, he's asking for an exception

19   to paragraph 6 of your standing order, which would require that

20   he actually number the demonstrative exhibits.

21        MR. McCOY:  I didn't ask for that.  That's

22   anticipation, Judge.  I didn't ask for that.  I understood what

23   your Honor said.  And I would appreciate, you know, these

24   people not characterizing what the plaintiff's positions are.

25        MR. FISCHER:  That's fair enough.

1      MR. McCOY:  That will facilitate getting this done

2  more quickly.

3      MR. FISCHER:  Fair enough, Judge.

4      THE COURT:  Very good.  So that then leaves us with

5  the two motions that were noticed for today.  That is the joint

6  motion to bar undisclosed and improperly disclosed witnesses,

7  and Owens and ExxonMobil's motion to exclude any exhibits from

8  plaintiffs' nonconforming exhibit list.

9      With regard to the motion to exclude any exhibits from

10  nonconforming witness list, I am going to deny that motion as

11  moot without prejudice.  Obviously this is going to be revised

12  as we go forward.  I anticipated that the plaintiff will be

13  providing revised versions of their exhibit list to the

14  defendants after going back and reviewing all of their

15  exhibits.  And so that motion is denied.  But again, if we have

16  to revisit the issue, we will revisit the issue.

17      Mr. McCoy, I just want to be clear so that you

18  understand exactly what I am saying.  I am not saying that you

19  have to rely only upon the 150 whatever exhibits that you

20  listed.  You can list more.  Okay?  If you believe that that's

21  necessary and appropriate for you to represent your client in

22  this case, you can list more.

23      But what I want to do is think long and hard, and I

24  want you to think long and hard, about whether or not and to

25  what extent and how many of those other documents you really

1    may use at trial.  Okay?  That's all.

2         MR. McCOY:  I got that message.  Yes, I understand

3    that fully.

4         THE COURT:  Very good.

5         Now, with regard to the joint motion to bar

6    undisclosed, improperly disclosed witnesses, you know, I must

7    say I am trying to figure out as I went through this, I was

8    expecting somewhere, is there -- maybe there is not.  Is there

9    a list of these witnesses that you anticipate that they will

10   actually present as part of the pretrial order process that

11   weren't disclosed previously?  And if so, where is that list?

12   Because right now I am looking at the motion, and you say

13   undisclosed, improperly disclosed witnesses.  And I don't know

14   who they are.

15        MR. FISCHER:  I do have a list, your Honor.

16        THE COURT:  Okay.

17        MR. FISCHER:  These are witnesses who were never

18   disclosed pursuant to Rule 26 and then show up in the

19   plaintiffs' draft of the final pretrial order.  So that's where

20   they show up, and that's how we find out they are now offering

21   these folks.

22        THE COURT:  How many people are on that list?

23        MR. FISCHER:  One, two, three, four, five, six, seven,

24   eight, nine, ten.  Actually there is 11.  One of them was

25   Charles Krik.  He's the plaintiff.  We're not trying to exclude

1 the plaintiff's testimony. I think we all had a pretty good

2 idea that he would be testifying.

3    THE COURT: All right. So this is what I want you to

4 do. I am going to give the defendants seven days to file an

5 amended motion actually identifying the people that they want

6 me to strike. That would be helpful. And identifying where

7 they appear on the pretrial order, okay, and so that we can

8 more closely hone this issue. I mean, clearly if witnesses

9 haven't been disclosed at all as part of this entire process

10 and the defendants would be prejudiced by their now being

11 inserted at trial, as a general matter I agree that they should

12 be barred. Okay?

13    But the devil is in the details, right? It is, did

14 they come up in discovery or otherwise? What sort of

15 notification do the defendants have of those witnesses, and

16 what prejudice would they suffer? Those are the types of

17 issues, as well as obviously who do you want me to bar? Those

18 are the types of issues that need to be laid out in a motion of

19 this type.

20    So I am willing to give you more than seven days if

21 you think that's necessary.

22    MR. WATSON: That's fine, your Honor. Just in a point

23 of clarification, there has been different witnesses listed in

24 the draft pretrial order at different points in time. The most

25 recently filed one has different witnesses than the one filed

1    on the 25th.

2         Would your Honor request that we put in the names of

3    any individual that appeared at any point in the draft pretrial

4    process, or the most recently filed pretrial order by

5    plaintiff?

6         MR. McCOY:  There might have been some less names.

7         THE COURT:  In the newer one?  I would use the most

8    recent one that was filed by plaintiff this week.

9         MR. MORRIS:  With the idea, Judge, that we're not

10   going to have then a resurrection of witnesses who were removed

11   that will be inserted sometime between now and April?

12        THE COURT:  Certainly, yes.  If they are barred now,

13   then they are barred, right?  Now --

14        MR. McCOY:  I have a comment on the witness motion

15   thing I wanted to add, Judge.  And that is, the motion largely

16   relies on some historical analysis in the MDL, the bunch of

17   rulings.  They call it the MDL 875 court.  Those rulings were

18   actually rulings of one of the four Magistrate Judges.  They

19   are not rulings from district court.  The district court

20   actually struck down and denied all of the motions to strike

21   witnesses that were filed when he ultimately got over 200 of

22   these motions.  And that's what happened.  It's not mentioned

23   in there.

24        I would suggest -- again, I am not here to argue the

25   motion.  And -- but I would suggest that this is an appropriate

1    issue to consult with the special master who has been appointed

2    specifically to deal with a lot of these issues that

3    historically what happened in these MDL proceedings.  That's

4    Francis McGovern.  And I think we provided you at some point in

5    time his name and the order that appointed him to deal with

6    these very kinds of issues so that your Honor doesn't have to

7    revisit the history of what went on in the MDL.  He is

8    appointed for that.

9         He is appointed also to help develop consistency on

10   the rulings on motions in limine about these expert witnesses

11   that come up in hundreds of asbestos cases that are being sent

12   back to the MDL around the United States.  That's his function.

13   And I -- it's your Honor's discretion.  But I think I strongly

14   would suggest that.

15        And of course we can respond.  But our responses in

16   the MDL ultimately led to the district court denying 200 pages

17   to strike, might even total ended up being 150 pages, because

18   of all the different -- I mean, the rulings that they are

19   citing to are probably over a hundred pages by the Magistrate

20   Judge.  Our responses ultimately ended up being 150 pages that

21   the district court had.  And then he made his rulings and he

22   denied all the motions to strike, and he overruled some --

23        THE COURT:  What are defendants' -- I'd like to hear

24   from the defendants on their position with regard to the

25   special master.

1          MR. FISCHER:  Thank you, Judge.

2          We'll certainly file a motion.  We'll do it within the

3   page limit by the Northern District.  The Krik case was one of

4   ten cases that were handled by MDL 875 separately than a lot of

5   others.  I am confident we'll be able to demonstrate to your

6   Honor that what Mr. McCoy is talking about with Judge Robreno's

7   subsequent ruling doesn't apply to the Krik case.  So that's

8   one thing.

9          With regard to Mr. McGovern, this case has been

10  remanded to the Northern District of Illinois because the

11  plaintiff told the MDL Judge that it was ready for trial.  We

12  are now here.  And we are here, and we are trying to get ready

13  for trial as December 2.  We don't want to go back piecemeal to

14  the MDL.  If they want -- I don't even want to go back with the

15  whole case to the MDL.  It has been remanded.  It has been

16  assigned to your Honor.  And I am personally convinced that

17  using Special Master McGovern or anyone else associated with

18  the MDL at this point in this case is not going to be

19  productive.

20         We will, of course, do anything that your Honor

21  orders.  And we will do it in good faith.

22         MR. McCOY:  All the rulings that are cited, Judge, are

23  rulings that are not part -- part of the first ten cases.

24  That's what the defendants are relying on.

25         THE COURT:  Mr. McCoy, I will give you an opportunity

1    to set forth all those arguments.  So defendants, I want

2    defendants to file let's call it a revised joint motion to bar.

3    And I will give you until next Friday, November 8, to do that.

4            Mr. McCoy, how much time would you like to respond?

5            MR. McCOY:  On the motion to bar?

6            THE COURT:  Yes.

7            MR. McCOY:  And their due date was November?

8            THE COURT:  Eight.

9            MR. McCOY:  Eight.  I think that requires at least 14

10   days to assemble the information.

11           THE COURT:  All right.  Very well.  So I will give you

12   until November 22 to provide the response.

13           MR. McCOY:  Okay.

14           THE COURT:  Okay?  And I will provide defendants with

15   29th for reply if they think it's necessary.  If you are going

16   to file a reply, it better be short and sweet.  Okay?  Given

17   the fact that's the week of Thanksgiving, I think your families

18   will probably appreciate that too.

19           All right.  Is there anything else that we need to

20   address today?

21           MR. McCOY:  I wanted to ask about the motion in

22   limine, response deadline.

23           THE COURT:  Yes, you know --

24           MR. McCOY:  I want if I can --

25           THE COURT:  Mr. McCoy, that's a good point.  With

1   regard to the motions in limine, the Daubert motions I am going

2   to address separately.  But with regard to the 36 motions in

3   limine, I am going to strike them all today.  You can resubmit

4   them if you think it's necessary as part of the final pretrial

5   order back later in December.  The parties and obviously

6   plaintiff -- I know plaintiff and I believe maybe Crane, I'm

7   not sure, who filed the omnibus motions in limine, okay.

8           MR. KASPER:  Yes.

9           THE COURT:  Think long and hard about whether or not

10  you really need rulings on those at the final pretrial

11  conference, or is that something that we can just take up at

12  trial.  Remember, motions in limine are granted only if there

13  is really no reasonable basis to believe that the evidence

14  would come in at trial.  Okay?

15          Also there are a lot of issues, particularly things

16  dealing with 403, whether it's prejudicial, whether prejudice

17  overweighs probative value of things.  A lot of those

18  determinations have to wait for trial for me to see how it's

19  going to come in to make that determination.  So think long and

20  hard about whether or not you need rulings on or want rulings

21  frankly on all of the issues set forth in the omnibus motion in

22  limine, frankly for all the motions in limine.

23          And when I say the parties should really meet and

24  confer and talk about it, I really mean it.  And I don't mean

25  just exchange e-mails about things.  I mean, I know sometimes

1    it's hard to coordinate, but if defendants need to appoint a

2    point person to speak on their behalf, go do so.  But I want

3    active communication between the defendants and the plaintiff

4    throughout this pretrial process.

5                    MR. MORRIS:  We did --

6                    MR. McCOY:  We did --

7                    MR. MORRIS:  -- sit down, your Honor.  The problem is,

8    they treated the agreements at the conference, that's to the --

9                    MR. McCOY:  We did have four --

10                   THE COURT:  And I will say also, I think there might

11   be some question, and it's not a bad one, about what happens if

12   during the pretrial conference process meet and confer issues

13   come up, right?  Bring them to my attention.  Okay.  File

14   motions.  File status reports.  If things are -- if you want

15   clarification on things, ask for them.  Okay?  So don't be shy.

16   I am here.

17                   MR. MORRIS:  Judge, one thought on the Daubert

18   motions.  I don't know if in anticipation of this you had

19   already filled that December 2 schedule in whole or in part.

20   But one thought I was having when I was standing here is that

21   maybe we can take up the Daubert motions during that time

22   frame.  Clearly got it blocked out.

23                   THE COURT:  You know, I am trying to make a

24   determination now as to whether I need a hearing on them, and

25   if so on what motions.  My thinking right now is, I probably

1  won't need a hearing on all of them.  There may be one or two,

2  though, where I think a hearing would be helpful.

3         And actually what I would suggest the parties do is

4  keep open the November 22 date, okay, in case we determine that

5  we would like a hearing on a Daubert motion.  And we will let

6  the parties know that probably in the next week or two.

7         MR. McCOY:  That's fine.

8         THE COURT:  And we will have the hearing then.

9         MR. McCOY:  I have one other question.

10        THE COURT:  Yes.

11        MR. McCOY:  I have a bunch of them this morning.  This

12  one is about the other defendants that are listed in -- I am

13  assuming these are in the court files, is what you are

14  referring to?

15        THE COURT:  They are on the docket, yes.

16        MR. McCOY:  Okay.  We will clear that up.

17        THE COURT:  Okay.  Very good.

18        MR. FISCHER:  I'm sorry, your Honor.  One last thing.

19  Owens-Illinois has a pending motion for the admission of a

20  lawyer pro hac vice.  His name is Peter Moir.  He's from Texas.

21  I just inquired of Mr. McCoy and he indicated he had no

22  objection.  Rather than have us notice that up separately, is

23  that something that you'd be willing to take up today?

24        THE COURT:  That's fine.  I will go ahead and grant

25  that.  So has he -- have they filed an appearance yet or are

1    they going to?

2         MR. FISCHER:  The motion is on file.  If it's granted

3    we will have appearance on file immediately.

4         THE COURT:  The motion is granted.

5         MR. MORRIS:  We have a similar motion, a lawyer

6    apparently from Texas as well, your Honor.  I don't have it on

7    file yet.  If it turns out that it's agreed, is there protocol

8    that we can use to simply notify the Court?

9         MR. McCOY:  There obviously won't be any objection.

10   They can just submit an agreed order.

11        THE COURT:  Just file an agreed motion, that's fine.

12   I won't make the parties appear on something like that.

13        All right.  So where does that leave us?  Let's set a

14   status in this case and --

15        MR. McCOY:  Is that 11/22 date still --

16        THE COURT:  No, I want to set a status on the pretrial

17   order, see how that's coming along.  Let's set it for the first

18   week in December, the week of December 2.

19        MR. McCOY:  December 2?

20        THE COURT:  Hold on for a second.

21        Carmen?

22        THE CLERK:  December 4.

23        THE COURT:  It can be later in the day, too.

24        THE CLERK:  At 9:15.

25        THE COURT:  Let's do how about 10:00 o'clock that day,

1    Carmen?

2           THE CLERK:   Okay.   10:00 o'clock on December 4.

3           THE COURT:   But as I said, don't wait until then to

4    bring up any issues.   If there are any, just let us know.

5           MR. MORRIS:   Just two quick things, Judge.   One, I

6    assume it goes without saying that this extension of the trial

7    date doesn't somehow operate to eviscerate the fact that

8    discovery is closed and isn't used by someone to open up

9    discovery into new matters.   No. 1.

10          And No. 2, the portion of the motion with respect to

11   the exhibit list, I think we did request another relief, as I

12   made abundantly clear.   I don't know if we need to enter and

13   continue -- you said we'll take it up when we get to it.   But

14   the portion that asked for that is going to be our request for

15   monetary relief.   And I don't know whether in a minute order we

16   need to say something or just --

17          THE COURT:   We don't.   Just go ahead.   If you want the

18   Court to impose some sort of sanction for lack of a better

19   word, go ahead and file a separate motion on that.   Okay?

20          All right.   Anything else?

21          MR. McCOY:   No.

22          THE COURT:   One other thing, and this worked well in

23   the past for other cases like this.   If during the pretrial

24   process there is a dispute over issues, what I want you to do

25   is call Ms. Acevedo.   Let her know that you want to be heard.

1 Okay?  And then submit a very brief, a very brief, joint status

2 report outlining what the issue is and setting forth the

3 respective positions of the parties.  Preferably a consolidated

4 defendants' position and a plaintiff's position.  If it's not

5 consolidated, just let me know why.  And then we will just

6 schedule it for a quick hearing, and we will just deal with it.

7 Okay?

8          All right?  Very good.  Thank you.

9          MR. McCOY:  Thank you, Judge.

10     (Which were all the proceedings had at the hearing of the

11      within cause on the day and date hereof.)

12                         CERTIFICATE

13          I HEREBY CERTIFY that the foregoing is a true, correct

14 and complete transcript of the proceedings had at the hearing

15 of the aforementioned cause on the day and date hereof.

16

17  /s/Alexandra Roth                              11/15/2013

18  _____    _____
 Official Court Reporter                       Date
 U.S. District Court
19  Northern District of Illinois
 Eastern Division

20

21

22

23

24

25