UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES KRIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-7435 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| BP AMOCO CHEMICAL COMPANY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OWENS-ILLINOIS, INC.'S
RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2**

Owens-Illinois, Inc. ("Owens-Illinois") submits this Response to Plaintiff's Motion *in Limine* No. 2 (ECF No. 211).

**INTRODUCTION**

First, Plaintiff's thirteen motions *in limine* should be stricken and denied because they are "boilerplate" motions combined in a single filing and therefore violate the Standing Order Governing Proposed Pretrial Orders. Indeed, this Court previously struck Plaintiff's motions *in limine* for these reasons. Order (ECF No. 148) at 1, Oct. 31, 2013; *see also* Hr'g Tr. (ECF No. 166) at 33:25-34:22, Oct. 31, 2013 (admonishing Plaintiff for filing "omnibus" motions *in limine* and ordering him to "think long and hard about whether or not you really need rulings on those").

Second, Plaintiff's bankruptcy claims are relevant evidence to maritime law's proportionate responsibility and Plaintiff's credibility, especially where these party-admissions about asbestos exposure and cigarette smoking contradict his sworn testimony. Plaintiff has voluntarily settled with and dismissed more than 30 potentially responsible entities after sworn party-admissions that he "altered, repaired or otherwise worked with an asbestos-containing product such that [he] was exposed on a regular basis to asbestos fibers," "was employed in an industry or occupation such that [he] worked on a regular basis in close proximity to workers who did" those activities, and did not

ever smoke cigarettes.[1] Owens-Illinois is entitled to offer these party-admissions, and any other competent evidence, for the jury to allocate the proportionate responsibility among all potentially responsible entities and to evaluate Plaintiff's credibility.

## BACKGROUND

Plaintiff claims exposure to innumerable asbestos-containing products, made and sold by many potentially responsible entities, over his 16 years as an enlisted sailor in the U.S. Navy and 26 years as a pipefitter in Indiana and Illinois. Pl.'s Compl. ¶¶ 1-28, No. 01-cv-242, ECF No. 1 (N.D. Ind. filed Mar. 23, 2001); Pl.'s Compl. ¶¶ 1-28, No. 10-cv-07435, ECF No. 1 (N.D. Ill. filed Nov. 18, 2010); Pl.'s First Amend. Compl. ¶¶ 1-28, No. 11-cv-63473, ECF No. 56 (E.D. Pa. Sept. 16, 2011) (consolidated complaint in MDL 875). He has voluntarily settled with and dismissed more than 30 of those entities before trial, and Owens-Illinois, a fringe manufacturer and seller of high temperature thermal insulation product from 1948 to 1958, is not left to shoulder *their* responsibility by simply defending itself at trial.

Owens-Illinois is, and always has been, a glass company. Its principal business in the 1940s and 1950s was, as it is now, the manufacture of glass containers. Owens-Illinois is named as a defendant in this case because, for a limited period of time ending on April 30, 1958, it made and sold a high temperature thermal insulation product called Kaylo to the U.S. Navy. On April 30, 1958, Owens-Illinois sold the entire Kaylo business to Owens Corning Fiberglas — a separate company that continued to make and sell Kaylo into the 1970s. Dozens of other companies made these insulation products, many of whom sold complete lines of asbestos-containing materials into the 1970s. Owens-Illinois did not make or sell Kaylo after April 30, 1958.

Since the United States Supreme Court declared a "crisis" in asbestos litigation, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997), nearly 100 companies have sought protection from

---

[1] *See* Pl. Charles Krik's Resp. Bankr. Trust Discovery Served by Georgia Pacific - 9/30/11 at (Ex. A) 1-310, an un-redacted copy of which will be submitted as Exhibit A for the Court's review.

the tort system through bankruptcy, including the largest manufacturers like Johns Manville, Armstrong, W.R. Grace, and Owens Corning Fiberglas, and they have established more than $36.8 billion in trusts to pay personal injury settlements, *see* U.S. Gov't Accountability Office, Asbestos Injury Compensation: The Role and Administration of Asbestos Trusts at 1-3 (Sept. 2011), *available at* www.gao.gov/assets/590/585380.pdf; *In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014). Plaintiff has voluntarily settled with most of these entities and collected six figures in settlements, by admitting he altered, repaired, or otherwise worked around their asbestos-containing products on a regular basis. Pl. Charles Krik's Resp. Bankr. Trust Discovery Served by Georgia Pacific - 9/30/11 at 1-310. Allowing these clear party-admissions and other evidence against every potentially responsible entity will ensure that Owens-Illinois is held responsible only for its share of liability and Plaintiff is precluded from double recoveries in this case.

## ARGUMENT

In its landmark decision, the United States Supreme Court adopted the proportionate share approach for maritime law and held the liability of non-settling defendants should be calculated by the jury's allocation of their proportionate responsibility for the total obligation. *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 204, 209 (1994). Under that approach, the jury should assess the fault of all potentially responsible parties. *Id.*; *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 325 (3d Cir. 2003); *Lundquist v. United States*, 116 F.3d 1486, 1997 WL 355933, at *6 (9th Cir. June 27, 1997); *Sigler v. Grace Offshore Co.*, 663 So.2d 212, 213 (La. Ct. App. 1995). As such, Owens-Illinois is entitled to present evidence about all potentially responsible entities and their potential responsibility at trial.

In *McDermott*, the plaintiff (McDermott) sued a crane manufacturer (AmClyde), the manufacturer of a crane hook (River Don), and three manufacturers of steel slings for damage to a crane and an offshore platform. 511 U.S. at 204-05. Before trial, McDermott settled with the three sling manufacturers for $1 million dollars. *Id.* at 204. The remaining two defendants did not settle,

and the jury assessed damages at $2.1 million and apportioned fault at 32% to AmClyde, 38% to River Don, and 30% jointly to McDermott and the sling defendants. *Id.* at 206. In deciding how to apportion liability among the non-settling defendants, the Court adopted the proportionate share approach (rather than a *pro tanto* approach, with dollar-for-dollar settlement credits) and calculated the liability of each non-settling defendant by the jury's allocation of proportionate responsibility. *Id.* at 210, 217, 218.

Since *McDermott*, juries have decided the fault of all potentially responsible entities under maritime law. In *Calhoun*, a product liability case tried under maritime law, the Court of Appeals affirmed instructions requiring the jury to apportion the fault of all potentially responsible entities, including two non-parties. 350 F.3d at 325. The plaintiffs claimed that the jury should not consider the negligence of non-parties under joint and several liability. *Id.* The Court of Appeals dismissed the argument and applied *McDermott* that, "[i]n such cases [of a non-settling defendant], the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. There is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement." *Id.* at n.11 (citation omitted).

Just as in *Calhoun*, courts nationwide have held that a jury in maritime law must decide the proportionate responsibility among all potentially responsible entities. Under "the proportionate method of allocating fault as adopted by the United States Supreme Court in *McDermott*, [a non-settling defendant] cannot be cast for more than its proportionate share." *Sigler*, 663 So.2d at 213 (allocating fault to two non-parties); *accord Harrison v. Garber Bros., Inc.*, 750 F. Supp. 203, 204-05 (E.D. La. 1990) (allocating fault to a non-party because "the jury is to determine the relative degrees of fault among Garber Bros., Mr. Harrison, and the drunk driver"). Owens-Illinois is entitled under the proportionate share approach of maritime law to offer evidence about every potentially responsible entity and evidence about its potential responsibility — and not merely the evidence

hand-picked by his attorneys against a non-settling defendant at trial.

*McDermott* stands for an equitable approach that, when a plaintiff's recovery is limited by his voluntary choices, he cannot complain about any shortfalls. 511 U.S. at 221. Plaintiff chooses the potentially responsible entities to sue, dismiss, settle, or bring to trial. Therefore, "no suits for contribution from the settling defendants are permitted nor are they necessary, because the non-settling defendants pay no more than their share of the judgment." *Id.* at 209. By precluding contribution rights, *McDermott* unquestionably requires an allocation at trial among the plaintiff, the non-settling defendants, the settling entities, the entities voluntarily dismissed by plaintiff, and the entities that plaintiff voluntarily elected not to sue. That allocation ensures a non-settling defendant, like Owens-Illinois, "pays only its proportionate share of the judgment." *Id.* at 212.

In particular, Owens-Illinois should not shoulder the disproportionate liability from Plaintiff's voluntary settlements with more than 30 potentially responsible entities that have created asbestos personal injury trusts to pay settlements. As the Court of Appeals has held, "*McDermott* did not create an exception for a plaintiff who settles with an insolvent joint tortfeasor. Quite to the contrary, the Court clarified that, when a plaintiff chooses to settle with one joint tortfeasor, the plaintiff's recovery is limited only by the plaintiff's own choice to settle." *Lundquist v. United States*, 116 F.3d 1486, 1997 WL 355933, at *6 (9th Cir. June 27, 1997). Just like the plaintiff in *Lundquist*, Plaintiff chose voluntary to settle his claims, and "he eliminated the risks associated with litigation and obtained money to finance his litigation against" non-settling defendants. *Id.*; *accord McDermott*, 511 U.S. at 213 (a voluntary settlement "provides the plaintiff with a 'war chest' with which to finance the litigation against the remaining defendants"). After collecting six figures of settlements, based on unmistakable party-admissions of asbestos exposure, Plaintiff is precluded from trying Owens-Illinois for the amount he could have been awarded had he not settled and obtaining double recoveries. *Lundquist*, 116 F.3d 1486, 1997 WL 355933, at *6.

**CONCLUSION**

For these reasons, and those submitted by any co-defendants, Owens-Illinois, Inc. respectfully requests that Plaintiff's Motion *in Limine* No. 2 (ECF No. 211) be denied.

Dated: March 7, 2014  Respectfully submitted,

By: /s/ Brian O. Watson
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)
*Attorneys for Defendant Owens-Illinois, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on March 7, 2014, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

12997-8392

CH2\14342792.1