IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES KRIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:10-cv-07435 |
| v. ) | |
| ) | |
| BP AMOCO CHEMICAL CO., et al. ) | District Judge John Z. Lee |
| ) | |
| Defendants. ) | |
| ) | |

<u>Plaintiff's Response to Owens-Illinois' Motion in Limine Regarding the Synergistic Effect</u>

Plaintiff opposes the Owens-Illinois ("O-I") Motion in Limine No. 1 regarding the synergistic effect of tobacco and asbestos. (Doc # 193.)

Untimely dispositive motion

As O-I states, this motion is based on the absence of any "duty" owed by O-I. The existence of a duty is a matter for determination by the court as a matter of law. *Choate v. Ind. Harbor Belt R.R. Co*, 980 N.E.2d 58, 67 (IL 2012), *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 884 (7th Cir. 1992). The motion seeks a ruling which is dispositive of Plaintiff's claim that O-I owed him a duty and should have been pursued before the dispositive motion deadline during the MDL-875 proceedings. The bar against new dispositive motions in this remand court has already been briefed by plaintiff in earlier filed "Plaintiff's response to Defendants' Motion for Leave to File *Daubert* Motions." (Doc. # 59.) Plaintiff adopts and incorporates those arguments herein by reference. The instant motion should be denied as an untimely dispositive motion.

Admissibility of the evidence of synergistic effects

Should this court reach the merits of this motion in limine, evidence of the synergistic effects of tobacco and asbestos exposure are relevant to show the negligence of O-I. O-I does not dispute the evidence that the synergistic effects of tobacco and asbestos exposure increases by a factor of about fifty the risk of developing lung cancer, compared to the risk faced by a person exposed to neither. The synergistic effect from the combination of tobacco and asbestos is dramatically greater than the effect of either tobacco (10 times greater-than-normal risk) or asbestos (5 times greater-than-normal risk) alone. (Ex 1 at 13.)

The synergistic effect is the product of several factors such as the 1) binding of asbestos fibers to tobacco carcinogens and 2) destruction of the cilia which are a bodily defense mechanism that prevents the entry of many asbestos fibers into the airways of the lungs. (Ex 2 at 33-42.) Both of these biological effects result in increased delivery of asbestos fibers to the airways within the lungs.

The evidence also shows a series (at least 5 or more) of genetic mutations (errors) is necessary to produce lung cancer. (Ex 3 at 59.) Whether an individual mutation is caused by asbestos or tobacco cannot be distinguished. (Ex 2 at 75-6.)

Plaintiff does not dispute Mr. Krik's lung cancer is caused by both asbestos and tobacco exposure. The primary culprit in the increased statistical risk of lung cancer, which plays a major role in assessing cause, is the synergistic effect. Without hearing testimony about synergistic effect, the jury is deprived of critical evidence needed to assess cause. As discussed below, the synergistic effect is relevant to both the issues of Mr. Krik's contributory negligence and to O-I's negligence. O-I's motion, however, contends the synergistic effect is not relevant or is prejudicial to O-I.

*Contributory negligence*

O-I alleges 1) Mr. Krik is contributorily negligent due to his own smoking and 2) smoking was the sole cause of the lung cancer. Under Illinois pattern jury instructions contributory negligence of Mr. Krik is determined by his legal responsibility for the injuries. (Ex 4, IPI B45.03A.)

The synergistic effect is relevant because Mr. Krik cannot be held responsible (contributorily negligent) for the portion of the lung cancer caused by the combined effect of tobacco and asbestos. No evidence will be presented that Mr. Krik had knowledge of the synergistic effect before he ceased smoking in 1982. His knowledge was limited to the dangers of the tobacco alone.

The statistical evidence shows the risk of developing lung cancer is 50 times greater from the combined exposure to tobacco and asbestos. The risk is only 10 times greater if only exposed to tobacco. Based on the statistical evidence of risk, the individual genetic errors within the series of mutations that led to Mr. Krik's cancer are far more likely to have been caused by the synergistic or combined effect of the two toxins.

Whatever role tobacco smoke played in causing Mr. Krik's lung cancer, he is not legally responsible for the vast majority attributable to the synergistic effect of which he had no knowledge. If a jury attributes 60% of the cause of Mr. Krik's cancer to smoking, the jury should significantly reduce the percentage attributable to Mr. Krik to take into account the combined effect for which he has no legal responsibility. For example, a jury could find Mr. Krik to be legally responsible for only 15% of the 60% attributable to smoking by subtracting the proportionate share attributable to the synergistic effect for which he has no legal responsibility.

The dramatic reduction in the legal responsibility or contributory negligence of Mr. Krik

is relevant to damages regardless of O-I's own negligence. Reducing contributory negligence to 50% or less avoids the bar to any recovery by a plaintiff under Illinois law. Second, the percentage of contributory negligence, assuming under 50%, determines what the plaintiff can recover in damages.

*O-I's negligence*

O-I also argues no evidence exists that O-I would have known to warn Mr. Krik about the synergistic effect. O-I stopped manufacturing Kaylo on April 30, 1958, and argues the first medical publication about the synergistic effect was in 1968. (Ex 5.) The argument fails to consider all the allegations about O-I's negligence or other available evidence about the harmful effects of both smoking and tobacco exposures as carcinogens.

The time line of the knowledge of the combined effects of smoking and asbestos exposure in causing lung cancer begins in 1949 or earlier. In that year the highly respected Journal of the American Medical Association ("JAMA") published an editorial which cited the high incidence of lung cancer among persons who also had the disease asbestosis and recognized the need for further study. (Ex 6.) The harmful effects of asbestos were established by the 1920s (Ex 7 at 2-3.) The harmful effects of smoking were recognized as early as the 1930s and the connection to lung cancer and smoking was reported by 1952 in the scientific literature.[1] Other statistical evidence showed the vast majority (70-80%) of males in the construction trades were cigarette smokers in the 1950s and 1960s. (Ex 9 at 51) Before Mr. Krik began his naval

---

[1] "Following the publication of several notable retrospective studies in the years 1952-1956, the medical evidence tending to link cigarette smoking to cancer of the lung received particularly widespread attention." (Ex. 8, "Smoking and Health: Report of the Advisory Committee to the Surgeon General of the Public Health Service," 1964.)

service in 1954 and was exposed to O-I Kaylo, the dangers of both toxins were known and the combined effects reported in 1949 in JAMA.

One of Plaintiff's claims made against O-I is its failure to investigate the health hazards of Kaylo. The significance of the evidence above is that O-I knew or should have known about the risks of asbestos and tobacco to the end users of Kaylo, most of whom who were cigarette smokers. Under Illinois or general negligence law, a manufacturer is held to the standard of an expert as to the dangers of its products. *Modelski v. Navistar Int'l Transp. Co.*, 302 Ill.App.3d 879, 887-888 (1st Dist. 1999) ("Manufacturers are charged with the knowledge of experts…. ); *George* v.Celotex Corporation, 914 F.2d 26, 29 (2d Cir. 1990). In assessing the negligence of O-I a jury is entitled to consider whether the combined effect of the two toxins should have been investigated. A jury could find O-I was negligent 1) in not conducting such an investigation, 2) in failing to issue a warning that the combined dangers had not been investigated of 3) in failing to issues a precautionary warning about smokers protecting themselves from the asbestos exposures.

Also relevant to O-I's negligence is the evidence of the resources O-I had to conduct such an investigation. The combined effect with smoking could have been studied by O-I. By the early 1940s O-I employed sophisticated industrial hygiene and medical staff personnel to handle the investigations of Kaylo hazards. (Ex 10 at Factual Stips. 1 and 2.) O-I retained the renowned Saranac Laboratory to investigate health hazards of Kaylo in the 1940s. The Saranac Laboratory study could have been expanded to include the combined effects.

The impact of the evidence is for the jury to consider. A motion in limine is not the

proper vehicle for resolving the admissibility of the testimony which has yet to be presented.[2]

O-I can also seek a partial directed verdict at the close of the evidence.

## Conclusion

The motion in limine on the duty of O-I should be denied as an untimely dispositive motion. The motion should also be denied based on the evidence or ruling deferred until trial.

---

[2]"Motions in limine are disfavored, as courts prefer to resolve questions of admissibility as they arise." *Tallman v. Freedman Anselmo Lindberg, L.L.C.*, No. 11-3201, 2013 U.S. Dist. LEXIS 82768, at *2 (C.D. Ill. June 12, 2013); and see *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F. Supp. 686, 690-691 (N.D. Ill. 1994) ("This court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.") (citing *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400-1401 (N.D. Ill. 1993)). Especially in a case such as this – where the Defendant moving in limine neglects to explain to the Court exactly what evidence regarding the conduct of Defendant is at issue – this Court should defer ruling on the motion and await trial so as to evaluate in a proper context the foundation, relevancy and potential prejudice of any evidence that is being challenged by this motion. See *Rosenberg v. Cottrell, Inc.*, No. 05-545-MJR, 2007 U.S. Dist. LEXIS 50383, at *2-3 (S.D. Ill. July 12, 2007) (repeatedly denying motions in limine because "the admissibility of this evidence substantially depends upon the facts developed at trial and the laying of an appropriate foundation, and so a ruling at this juncture would be premature); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (where motions in limine cannot be sufficiently evaluated prior to trial "the interest of both parties would be better served by deferring the ruling until the issue could be determined in a more concrete setting"); *U.S. v. Brown*, No. 08-cv-1009, 2011 U.S. Dist. LEXIS 1275, at *6 (N.D. Ill. Jan. 6, 2011) (citing *Jonasson* ). As the court stated in *Mi-Jack Prods. v. Int'l Union of Operating Engineers, Loc. 150*, No. 94 C 6676, 1995 U.S. Dist. LEXIS 16930, at *3-4 (N.D. Ill. Nov. 14, 1995): "Denial of a motion in limine does not mean that all evidence contemplated by the motion will be admissible at trial. Rather, denial means that the court cannot determine whether the evidence should be excluded outside the trial context." See also *U.S. v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

Dated: March 7, 2014

<u>/S/ Robert G. McCoy</u>
Attorney for Plaintiff
Robert G. McCoy
Jin-Ho Chung
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600