IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES KRIK, Plaintiff, | ) | Case No. 10-cv-7435 |
| v. | ) | Judge John Z. Lee |
| CRANE CO.; EXXONMOBIL OIL CORPORATION; OWENS-ILLINOIS, INC.; and THE MARLEY-WYLAIN COMPANY, Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this asbestos personal injury case, Defendants Crane Co. ("Crane"), ExxonMobil Oil Corporation ("Mobil"), and Owens-Illinois, Inc.[1] ("Owens") have variously moved the Court to bar Plaintiff Charles Krik ("Krik") from calling certain expert witnesses at trial. Before the Court for decision are multiple motions to preclude the testimony of Dr. Barry Castleman ("Castleman") (Dkt. 63, 64, 77) and to bar evidence and testimony of certain videotaped experiments conducted by Dr. William Longo ("Dr. Longo") and his company, Materials Analytical Services ("MAS"). (Dkt. 65, 77, 158.) Krik offers Dr. Castleman to testify regarding what he terms the historical health risks associated with asbestos exposure. Krik also wishes to tender the Longo/MAS videotaped experiments to demonstrate the potential pathways of exposure to asbestos fibers. The Court, applying the guiding principles of Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), grants in part and denies in part Defendants' motions.

---

[1] The Marley-Wylain Company (f/k/a/ Weil-McLain) joined in certain of the instant motions, but has since been dismissed as a defendant in this action. [Dkt. 288]

**Legal Standard**

The admissibility of expert testimony is governed by Rule 702 and the Supreme Court's seminal cases of *Daubert*, 509 U.S. at 590, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 expressly allows the admission of testimony by an "expert" with the requisite "knowledge, skill, experience, training, or education" to help the trier of fact "understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Experts are only permitted to testify, however, when their testimony is "(1) based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

*Daubert* requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements of reliability and relevance are satisfied before allowing the finder of fact to hear the testimony of a proffered expert. *See Daubert*, 509 U.S. at 589; *see also Kumho Tire* 526 U.S. at 147-49; *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in determining the admissibility of expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).

"The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has "'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). Before admitting expert testimony, district courts employ a three-part analysis: (1) the expert must be qualified as

an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94. The district court may apply these factors with flexibility given the different forms of expert testimony that it may be asked to consider; the relevant factors, therefore, may "be adjusted to fit the facts of the particular case at issue." *U.S. v. Brumley*, 217 F.3d 905, 911 (7th Cir. 2000) (citing *Kumho Tire*, 526 U.S. at 149-50)). Finally, the proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## Analysis

### I. Dr. Castleman

Krik seeks to tender Dr. Castleman as an expert in order to "explain the historical development of knowledge of the health hazards of asbestos as reported in thousands of pieces of scientific literature, studies, and professional or trade organization documents." Pl.'s Resp. 1. Krik further states that Dr. Castleman will "select for presentation to the jury certain documents from among thousands of documents within O-I's [Owens-Illinois'] files to provide testimony, based on his public health and research background, regarding the actual knowledge of the company and actions the company took in response to the information about the state of the art knowledge on asbestos." *Id*. 2. Therefore, according to Krik, Dr. Castleman's testimony is designed to go to "[p]roof of what a defendant knew or should have known about the dangers of its products," which is "an element in any toxic tort case." *Id.*

Defendants seek to bar Dr. Castleman's testimony on numerous grounds. Defendants first argue that Dr. Castleman is an expert for hire for plaintiffs in asbestos cases who improperly "spin[s]" information gleaned from medical articles and corporate documents to indict corporations for their alleged historical knowledge of the dangers of asbestos exposure. Owens Mot. 2. Defendants next contend that Dr. Castleman uses a "one-size-fits all approach" against all asbestos defendants in each case he testifies, which fails to satisfy *Daubert* standards. *Id.* 3. This approach, Defendants argue, uses no reliable methodology or technique that can be tested; has never been subject to peer review; has no means of determining the potential rate of error; and is not generally accepted in the relevant scientific community. *Id*. 10-12.

Krik responds, in relevant part, that Defendants' concerns are negated because "Dr. Castleman will limit his testimony to the development of the awareness of the hazards of asbestos and available substitutes in the scientific and technical publications, internal corporate documents, and trade and professional organization documents." Pl.'s Resp. 7.

Dr. Castleman's expert report sets forth his relevant qualifications. Dr. Castleman possesses a B.S. in Chemical Engineering, a M.S. in Environmental Engineering, and a Sc.D. in Health Policy, all from Johns Hopkins University. Pl.'s Resp., Ex. 1 (Castleman Rpt.) at 1. Dr. Castleman is the author of a book entitled *Asbestos: Medical and Legal Aspects*, which was originally published in 1984, and is now in its fifth edition. *Id.* The book represents the research he has conducted, into a "historical review of the asbestos problem as a public health problem . . . worldwide." *Id.* He has authored numerous articles and testified at trial in more than 300 asbestos cases throughout the country. Pl.'s Resp. 1.

Defendants challenge the notion that the foregoing qualifies Dr. Castleman as an expert, instead likening him to a mere "librarian of asbestos research." *Id.* 8 (quoting *Rutkowski v.*

*Occidental Chem. Corp.*, No. 83 C 2339, 1989 WL 32030, at *1 (N.D. Ill. Feb. 16, 1989). The Court disagrees. Dr. Castleman clearly has substantial experience in researching the state of the art for asbestos (that is, what was known about asbestos and its risks), at least from a historical perspective. Moreover, Dr. Castleman's report sets out his reasoning and methodology in detail. For example, Dr. Castleman's report contains a full explication of the scope of his research, identifying the documents he reviewed, the types of individuals that he interviewed in the course of crafting his thesis, and the techniques he used in obtaining the materials he reviewed. Pl.'s Resp., Ex. 1 (Castleman Rpt.) at 1-2, 14. The Court therefore concludes that Dr. Castleman's testimony, subject to certain limitations that are set forth below, will assist the jury in understanding the state of the art with respect to asbestos from a historical perspective. This is particularly true given the sheer volume of data available on this topic.

In so holding, the Court recognizes that other courts, including some in this district, have precluded Dr. Castleman from testifying in other asbestos cases. *See*, *e.g.*, *Rutkowski*, 1989 WL 32030, at *1. However, many others have permitted him to testify, either on an unrestricted or a limited basis. *See*, *e.g.*, *Anderson v. A.P.I. Co.*, 559 N.W.2d 204, 208-09 (N.D. 1997) (allowing Dr. Castleman's testimony and collecting cases). In the end, the Court agrees with the logic expressed by another judge of this district in *Deyerler v. Georgia-Pacific, LLC*, Case No. 08 C 5362 (Bucklo, J.). *See* Owens *Daubert* Mot., Ex. D (Pre-Trial Hearing Tr.). After a pretrial conference where the defendants raised substantially the same arguments made here, Judge Bucklo declined to exclude Dr. Castleman's testimony in its entirety. Instead, Judge Bucklo expressly limited Dr. Castleman to testifying as to "state of the art generally at any given time," and refused to allow him to testify "about what . . . defendants knew or supposedly knew." *Id.* 101. Judge Bucklo allowed this limited testimony because she concluded that it could be useful

to the jury as a "sort of anthology" of the copious available literature. *Id.* 123. The Court finds this reasoning persuasive. As Judge Bucklo recognized, Dr. Castleman possesses "specialized knowledge" regarding the literature relating to asbestos available during the relevant time periods. Thus, his testimony is appropriate for this limited purpose. *See* Fed. R. Evid. 702(a) (witnesses are qualified to testify if they possess "specialized knowledge" that "will help the trier of fact to understand the evidence . . . ."); *Walden v. City of Chi.*, 755 F. Supp. 2d 942, 950 (N.D. Ill. 2010) (Castillo, J.) (admitting historian's testimony pursuant to Rule 702 where witness possessed "background to find, evaluate, and synthesize historical documents pertinent" to policies in place sixty years ago).

That said, Dr. Castleman may not testify as to what any particular Defendant knew or should have known at any given time regarding asbestos, including but not limited to asbestos' potential hazards, because he lacks direct knowledge regarding what the individual Defendants knew and when they knew it. Assuming that there is sufficient basis in the record, he may observe that certain companies were members of relevant organizations, or that representatives of certain companies were members of relevant committees, but again he may not testify as to what a particular company knew or should have known as a result because he lacks sufficient foundation to do so. And, in any event, the prejudicial effect of such testimony would far outweigh its probative value, given its highly speculative nature. *See* Fed. R. Evid. 403. Similarly, Dr. Castleman may not testify as to "the actions of the [D]efendants in response to this information as reflected in corporate documents." Pl.'s Resp. 9.

Accordingly, the Court grants in part and denies in part Defendants' motions to exclude Dr. Castleman's testimony as follows. Dr. Castleman will be permitted to testify as a "state of the art" expert to the extent that he may describe the asbestos literature he has reviewed for the

relevant time period(s). Defendants, of course, may cross-examine Dr. Castleman as necessary, including but not limited to questions regarding the methodology he used to select the literature upon which he relies. For his part, Krik may introduce documents produced by Defendants as exhibits during Dr. Castleman's testimony, and Dr. Castleman may cite to and/or read the documents aloud. But, to the extent that the documents upon which he relies relate to subject areas in which Dr. Castleman has little or no demonstrated expertise (such as medical literature), Dr. Castleman may not testify as to the accuracy of the conclusions contained therein. The Court will of course entertain objections to specific lines of questioning and testimony as they may arise at trial.

## II. Longo/MAS

Defendants also seek to bar Krik from presenting evidence and testimony of certain videotaped experiments conducted by Dr. William Longo ("Dr. Longo") and his company, Materials Analytical Services ("MAS"). John Templin, a MAS employee, was disclosed as a testifying expert this past summer in place of another MAS witness (previously designated to testify on behalf of Dr. Longo), who became ill. Plaintiff tendered Mr. Templin for deposition, and Defendants deposed him on November 1, 2013.[2] The parties have not provided the resume or qualifications of Mr. Templin, who has been designated to testify in Dr. Longo's place.[3] Pl.'s Resp. 1 n.2; Ex. 1 (Longo Aff.) ¶ 11. However, Dr. Longo has tendered an affidavit setting forth his own expert qualifications, which includes a Ph.D. in Materials Science, a MS in Engineering and a BS in Microbiology, all from the University of Florida. Pl.'s Resp., Ex. 1 ¶ 2. In addition, Dr. Longo is a member of numerous professional groups, including the Environmental Protection

2 Defendants have separately moved to bar Mr. Templin, along with a number of other witnesses, as undisclosed. [Dkt. 151] That motion remains pending.

3 Defendants raise no objections as to Templin's qualifications.

Agency Peer Review Group for the Asbestos Engineering Program, the American Industrial Hygiene Association, and the American Society for the Testing of Materials, among others. *Id*. ¶ 3. Dr. Longo has more than twenty years of experience in studying the "content, type, and release of asbestos fibers from asbestos-containing products." *Id.* ¶ 5. He also has testified on numerous occasions as an industrial hygienist in asbestos actions and supervises other certified industrial hygienists working for MAS, including Mr. Templin. *Id.* ¶ 11.

Dr. Longo and his staff at MAS have conducted a series of videotaped experiments designed to demonstrate how a person may be exposed to asbestos dust (the "Longo/MAS Videos"). A brief history and description of the Longo/MAS Videos are necessary prior to addressing the parties' arguments.

Kaylo was a brand of thermal insulation materials originally manufactured by Owens-Illinois; the Kaylo brand was later sold to another company, Owens Corning Fiberglas. Pl.'s Resp. 1. Dr. Longo and the employees of his company, MAS, focus their practice in studying asbestos fibers, and in particular, measuring and analyzing air samples for asbestos. *Id.* Dr. Longo conducted certain videotaped experiments on the Kaylo product, which ostensibly "show dust being released during the cutting of Kaylo thermal insulation."[4] *Id*. Plaintiff seeks to use the Longo/MAS Videos to demonstrate "the 'pathway of exposure' from the source of dust to an individual." *Id*. 2. The Longo/MAS Videos purport to do so by utilizing a lighting technique called "Tyndall Lighting," which provides back-lighting so that asbestos dust can ostensibly be viewed with the naked eye and on videotape. *Id*. 3; *see also id.*, Ex. 1 (Longo Aff.) ¶ 45.

Defendants challenge the admissibility of the Longo/MAS Videos and the testimony of the MAS expert on numerous grounds. First, Defendants argue that the Longo/MAS Videos do

---

[4] Owens disputes whether the Kaylo product tested in the Longo/MAS Videos was the same Kaylo product Owens sold during the relevant time period of Krik's exposure.

not "fit the facts of this case" on either an environmental or a product level. Owens Mot. 7-9. Defendants contend that the environmental conditions in the Longo/MAS Videos are neither "tied or fit to the facts in this case, nor were they designed to be sufficiently tied or fit." *Id*. 8. Indeed, it is undisputed that, although the demonstrations in the Longo/MAS Videos were conducted in a controlled setting, the setting was not designed to replicate Krik's actual exposure. *Id*., Ex. F (Longo Dep.) at 28:18-19. Moreover, Owens specifically argues that the Longo/MAS Videos are an insufficient product fit because they were not conducted on the same Kaylo product Owens produced as it relates to this action. Instead, according to Owens, Dr. Longo tested a Kaylo product manufactured in 1966, after the time that Owens sold its Kaylo business to Owens-Corning Fiberglas. *Id*., Ex. J (Longo Dep.) at 30:1-17. Krik responds that even if "[t]he videos may not be a perfect fit," they are nevertheless a useful simulation of the typical uses of the Kaylo product that would aid the jury in understanding Krik's exposure. Pl.'s Resp. 5.

Defendants also object to the experiments, arguing that "the Longo/MAS videos are not scientifically reliable." Owens Mot. 9. Applying the *Daubert* factors, Defendants argue that the technique demonstrated in the Longo/MAS Videos has never been tested or shown that it can be; has never been subjected to peer review or publication; Dr. Longo has never demonstrated that there is a known or potential rate of error; and there is no evidence that the technique is generally accepted by any scientific community. Krik responds that the Longo/MAS Videos are "purely demonstrative" and meant only to demonstrate the "'pathway of exposure' from the source of dust to an individual." Pl.'s Resp. 2. Moreover, Krik contends that the Tyndall lighting technique used in the Longo/MAS Videos is a generally accepted scientific method of

demonstrating the pathway of exposure, endorsed by the EPA to observe asbestos exposure. *Id.* 3; *id.*, Ex. A (Longo Aff.) ¶ 48.

Third, Defendants argue that the Longo/MAS Videos are irrelevant and will not assist the jury in deciding the issues in this case. Owens Mot. 12. Not only do the Videos bear no relation to Krik's alleged exposure to Kaylo, according to Defendants, but "respirable asbestos fibers are not visible on the videos, and the visible dust does not reflect the amount of asbestos exposure." *Id*. Thus, Defendants claim, the Videos will confuse the jury into thinking it can see respirable asbestos, while in reality all that appears on the videotape is dust. *Id*. 13. Moreover, the visible dust does not demonstrate the actual amount of asbestos exposure. *Id.* As a result, Defendants argue, the risk of confusing the jury far outweighs any probative value the Videos could provide. *Id*. 14. Krik responds only that the Videos "are purely demonstrative" and will "assist the jury in understanding how Mr. Krik was exposed to airborne asbestos fibers." Pl.'s Resp. 2.

After considering the briefs and exhibits submitted by the parties, the Court agrees with Defendants that there is an insufficient fit between the Longo/MAS Videos and the facts of this case. *See In re Lamar Cnty. Asbestos Litig.*, No. 2000-3559, slip op. at 1-12, 2001 WL 35918974, at *1 (Tex. Dist. Ct. Jul. 5, 2011) (striking Dr. Longo's testimony because tests conducted by MAS "constitute[d] 'junk science,'" and were "not sufficiently tied to the facts of any individual case in a manner to aid the finder of fact in resolving a factual dispute."); *Tyre v. CSC Transp., Inc.*, No. 16-2002-CA-4837, slip op. at 1-10, 2003 WL 26474173, at **1-4 (Fla. Cir. Ct. Sept. 24, 2003).

The *Tyre* case is particularly instructive. In *Tyre*, a Florida circuit court excluded MAS' test results and videotaped demonstration of alleged "work practices" because they failed to comply with Dr. Longo's own standards for simulated testing, rendering them unreliable. 2003

WL 26474173, at *5. In making this determination, the court relied upon statements made by Dr. Longo in a published 1994 study entitled *Baseline Studies of Asbestos Exposure during Operation and Maintenance Activities*. There, Dr. Longo stated that a simulation "is only valid if the simulation is realistic, that is if the work conditions and worker performance are faithfully reproduced." *Id.* at *6. Examining the facts before it, the court found that MAS had failed to "faithfully reproduce" the conditions faced by the plaintiffs. *Id.* at **6-7. Instead, MAS had not investigated the environment where plaintiffs were allegedly exposed prior to conducting the air sampling study; had never even visited the facility; had not gathered any information about the size of the facility or the type of ventilation used; and had not interviewed witnesses who had worked in the facility. *Id.* at **6-7. Because the studies had not been conducted in "substantially the same conditions" as the alleged exposure, *see Rindfleisch v. Carnival Cruise Lines, Inc.*, 498 So. 2d 489, 493 (Fla. Dist. Ct. App. 1986), the Longo/MAS evidence was excluded. 2003 WL 26474173, at **7-8.

Likewise, here, there is no relationship between the Longo/Mas Videos to the facts of this case. There is no evidence that Krik was exposed to the particular product that was the subject of the Longo/MAS experiment; there was no attempt to replicate the conditions under which Krik may have been exposed; nor was there any attempt to replicate the dosage at which Krik was allegedly exposed. Indeed, there is no indication in the record that anyone from MAS has investigated, gathered information about, or visited any of the locations where Krik was allegedly exposed prior to conducting their study. The Longo/MAS Videos simply have nothing to do with Krik at all and instead were created as part of a generalized litigation strategy developed before this case was even filed. *See Tyre*, 2003 WL 26474173, at *9 (citing *Berry v. CSX Transp., Inc.*, 709 So. 2d 552, 561 (Fla. Ct. App. 1998) (significant concerns raised by the

fact that the Longo/MAS studies had been conducted for general litigation purposes, not for the particular cases before court)). As a result, the Court finds that there is insufficient "fit" between the Longo/MAS Videos and the facts of this case to warrant their use at trial.[5]

Finally, the Court finds that, to the extent that the Longo/MAS Videos have any probative value at all, it is substantially outweighed by the prejudicial impact that such stark videos would have upon the jury and would cause significant jury confusion. *See*, *e.g.*, *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 & n.10 (5th Cir. 1996) (where "dealing with a videotape," court must "take into consideration that this evidence could be very powerful to a jury"); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 530 (7th Cir. 1995) (simulated crash test excluded in product liability action because the accident depicted "was just similar enough to the . . . accident to confuse the jury and leave jurors with the prejudicial suggestion that the [plaintiffs] flipped over backwards during the crash"); *Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 36 (1st Cir. 1990) ("if a videotaped test is insufficiently comparable to the circumstances in the case, the videotape is inadmissible" and was properly excluded).

*Guillory* is particularly apt. There, the district court excluded expert testimony and videotaped evidence as likely to confuse the jury where the model shown in the videotape "was not sufficiently similar to the forklift which caused the accident," and "involved highly technical information and . . . differed in several respects from the forklift and the accident scene." 95

[5] A number of other courts have rejected the reliability of the Longo/MAS evidence. *See In re Lamar Cnty*. at 1. In *Lamar Cnty.*, a Texas state court premised its exclusion of the Longo/MAS evidence on the fact that the "MAS tests fail[ed] to account for reasonably foreseeable conditions and pathways of exposure that could be experienced with respect to . . . sawing Kaylo products . . . so as to render the MAS tests little more than speculation." (Slip Op. 1.) In another case, *Sclafani v. Air and Liquid Sys. Corp.*, Nos. 2:12-cv-3013-SVW-PJW, 2:12-cv-3037-SVW-PJW, 2013 WL 2477077, at *6 (C.D. Cal. May 9, 2013), a district court judge for the Central District of California excluded the MAS studies because the defendants had presented "substantial evidence that the techniques used in the MAS study are at odds with the Occupational Safety and Health Administration's methods for measuring exposure, and therefore are *not* the product of 'reliable principles' and methods'" as required by Rule 702.

F.3d at 1330. On appeal, the Fifth Circuit explained that while "vigorous cross-examinations" normally would resolve concerns over the differences between a model or demonstration and real life events, "where technical information is involved, it is easier for the jury to get lost in the labyrinth of concepts," and mere cross-examination "could not salvage the truth" where "the unreliable evidence here would have been presented in a format resembling a recreation of the event that caused the accident." *Id.* at 1331. Indeed, even if the videotape and testimony had not been barred properly under *Daubert*, the district court still would have been well within its discretion to exclude it as prejudicial under Fed. R. Evid. 403. *Id.* at n.11. The same logic applies here.

In sum, the Longo/MAS Videos were not prepared in anticipation of *this* litigation to assist *this* jury in reaching its conclusion, and Dr. Longo/MAS made no attempt to replicate the conditions experienced by Krik that may have led to his exposure to asbestos. Nor did Dr. Longo/MAS make any attempt to verify that the product demonstrated in the videotapes is the same product to which Krik was allegedly exposed. Given the lack of a "fit" between the Longo/MAS Videos and the facts of this case, the Court finds that they would not assist the jury in reaching its verdict. Moreover, any slim probative value the Longo/MAS Videos may have is outweighed by the strong likelihood of jury prejudice and confusion. Therefore, Defendants' motions to bar the Longo/MAS Videotaped Experiments and Related Testimony (dkt. 65, 77, 158, 161) are granted.

## **Conclusion**

Defendants' motions to preclude the testimony of Dr. Barry Castleman (dkt. 63, 64, 77); are granted in part and denied in part. Dr. Castleman will be permitted to testify at trial on the limited basis outlined in the Court's opinion. Defendants' motions to bar the Longo/MAS Videotaped Experiments and Related Testimony (dkt. 65, 77, 158) are granted.

SO ORDERED

ENTERED 10/21/14

John Z. Lee
United States District Judge