IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES KRIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10-cv-7435 |
| v. ) | |
| ) | Judge John Z. Lee |
| CRANE CO.; EXXONMOBIL OIL ) | |
| CORPORATION; OWENS-ILLINOIS, ) | |
| INC.; and THE MARLEY-WYLAIN ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In this asbestos personal injury case, Defendants Crane Co. ("Crane"), ExxonMobil Oil Corporation ("Mobil"), Owens-Illinois, Inc. ("Owens"), and the Marley-Wylain Company (f/k/a Weil-McLain)[1] ("Weil") have variously moved the Court to bar Plaintiff Charles Krik ("Krik") from calling certain expert witnesses at trial. Krik seeks to present testimony from experts including Dr. Arthur Frank, Frank Parker, and Dr. Arnold Brody, who intend to testify that, in general, each and every exposure to asbestos products results in injury to the person so exposed. Krik believes that this testimony will help him to establish that his injuries resulted from exposure to asbestos products manufactured and sold by the Defendants. Defendants contend that this theory of causation, commonly referred to as the "Each and Every Exposure" theory, the "Any Exposure" theory, and the "Single Fiber" theory, should be excluded from the trial as inadmissible and unduly prejudicial.

---

[1] Weil has since been dismissed as a defendant in this action. Dkt. 288. However, because Weil filed its own motion (dkt. 71), which raises related but different arguments than those asserted by the remaining defendants, and because that motion was joined by Mobil (dkt. 77), the Court will consider it here in conjunction with the other *Daubert* motions.

Before the Court are the following motions:

- Motion to Exclude the "Each and Every Exposure" Opinion offered by Drs. Frank and Brody (filed by Crane, Weil, and Mobil) (dkt. 62, 73, 77);

- Motion to Exclude the "Any Exposure" Opinion offered by Dr. Frank (filed by Owens and Mobil) (dkt. 66, 77);

- Motion to Exclude the "Single Fiber Theory" of Dr. Frank and any others (filed by Weil and Mobil) (dkt. 71, 77); and

- Motion to Bar the Expert Opinions of Frank and Parker (filed by Mobil) (dkt. 67[2], 76, 77);

For the reasons below, Defendants' request that the Court bar expert testimony espousing the "Each and Every Exposure" theory, the "Any Exposure" theory, and the "Single Fiber" theory is granted. The motions are denied in all other respects.

## **Legal Standard**

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703, and the Supreme Court's seminal cases of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 allows the admission of testimony by an "expert" with the requisite "knowledge, skill, experience, training, or education" to help the trier of fact "understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Experts are only permitted to testify, however, when their testimony is "(1) based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

---

[2] One of these motions was filed by Defendant BP America, Inc. (dkt. 67), who was dismissed from the action on November 7, 2013. Dkt. 149. However, because Mobil joined the motion, the Court will consider the arguments raised therein.

Rule 703 in turn provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

*Daubert* requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements of reliability and relevance are satisfied before allowing the finder of fact to hear the testimony of a proffered expert. *See Daubert*, 509 U.S. at 589; *see also Kumho Tire* 526 U.S. at 147-49; *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in determining the admissibility of expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).

The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has "'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). Under *Daubert*, district courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94.

The district court may apply these factors with flexibility given the different forms of expert testimony that it may be asked to consider, and the relevant factors may "be adjusted to fit the facts of the particular case at issue." *United States v. Brumley*, 217 F.3d 905, 911 (7th Cir.

2000) (citing *Kumho Tire*, 526 U.S. at 149-50). Finally, the proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## Analysis

### I.     Expert Testimony Regarding the Various "Exposure" Theories

Defendants have filed three separate motions, all of which ultimately seek to bar Plaintiff from relying upon a theory of asbestos exposure offered by asbestos plaintiffs nationwide. The theory, commonly referred to as the "Any Exposure" theory, posits that any exposure to asbestos fibers *whatsoever* constitutes an underlying cause of injury to the individual exposed.[3] Krik seeks to present as experts at trial Dr. Arthur Frank, Dr. Arnold Brody, and Frank Parker. The first two are expected to testify as to the issue of medical causation, while Parker will testify in his capacity as an industrial hygienist. Defendants anticipate that each of these experts will provide testimony espousing the "Any Exposure" theory.

Defendants raise numerous arguments challenging the admissibility of this theory and ask the Court to exercise its gatekeeping function to exclude it under Rule 702 and *Daubert*. In response, Krik points to a number of cases in which courts have allowed plaintiffs to present expert testimony in support of the "Any Exposure" theory, and asks this Court to do the same. The parties do agree, however, that the Seventh Circuit has yet to weigh in upon the admissibility of the "Any Exposure" theory in an asbestos action. After considering the decisions of other courts and the record before it, the Court concludes that Krik has not established that the "Any Exposure" theory is sufficiently reliable to warrant admission under Rule 702 and *Daubert*.

---

[3]     Other monikers include the "Each and Every Exposure" theory, the "Single Fiber" theory," and the "no safe level of exposure" theory.

Accordingly, Plaintiff will be precluded from offering any expert testimony espousing the "Any Exposure" theory at trial.

As a threshold matter, the Court is presented with a choice-of-law question. Certain of the Defendants contend that Illinois substantive law controls the standard to establish causation in a personal injury case, while other Defendants rely upon maritime law. *See*, *e.g.*, Dkt. 66 (citing *Krik v. BP Am., Inc.*, No. 11-cv-63473, 2012 WL 2914238 (E.D. Pa. May 15, 2012) (determination by MDL court that maritime law is applicable to Krik's claims against Owens-Illinois). The difference is not material to this decision because, under both Illinois common law and maritime law, the "substantial contributing factor" test applies to the issue of asbestos injury causation. *See Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 493 (6th Cir. 2005) (maritime law); *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 457 (Ill. 1992) (Illinois law).[4]

Having addressed the choice-of-law issue, the Court now turns to the standard articulated by the Supreme Court in *Daubert*: a scientific theory or technique may be considered to be "reliable" where it (1) "can be (and has been) tested"; (2) "has been subjected to peer review and publication"; (3) has a "known or potential rate of error"; and (4) is "general[ly] accept[ed]" in the "relevant scientific community," to a sufficient degree. 509 U.S. at 593-94. Applying these factors, Defendants contend that the "Any Exposure" opinion is not scientifically reliable because it lacks a sound toxicological basis. Specifically, the "Any Exposure" opinion ignores what Defendants term a fundamental principle of toxicology, *i.e.*, that the "dose makes the poison." The "Any Exposure" theory, they contend, allows a plaintiff to skirt this fundamental

---

[4] Under this test, a plaintiff can establish causation where he can show that the worker regularly worked in the area where the defendant's asbestos product was frequently used and the worker did in fact work close enough to the area to have come into contact with the product, commonly referred to as the "frequency, regularity, and proximity" analysis. *Thacker*, 603 N.E.2d at 457. *Id.*

principle by wholly bypassing the dosage requirement. Defendants further argue that the "Any Exposure" theory is speculative and not based on any identifiable methodology or research.

For his part, Krik responds that the methodology underlying the "Any Exposure" opinion "is proper." Resp. 6. Specifically, Krik argues that the theory "was developed at an international conference of medical experts in Helsinki, Finland in 1997" and is referred to as "The Helsinki criteria." *Id.* 6-7 Krik also cites to documents from the United States Environmental Protection Agency and National Institute of Occupational Safety and Health, both of which state that there is "no safe" level of asbestos exposure. *Id.* 7. Krik further argues that Illinois law does not require plaintiffs to quantify their individual levels of exposure in order to establish causation and disagrees that there is a trend among courts to exclude the "Any Exposure" opinion, citing numerous cases that have allowed it. In the end, Krik argues that Defendants' challenges to his experts in this regard are best addressed via cross-examination at trial rather than via a *Daubert* motion.

With that backdrop, the Court first will examine whether the "Any Exposure" theory is sufficiently reliable to pass *Daubert* muster. We start with Plaintiff's acknowledgement that the ailment that he suffers—asbestos-induced lung cancer—is dosage dependent. As Krik concedes, his own expert, Dr. Frank "stated in his deposition in this case that asbestos-related lung cancer is a dose-responsive disease." Pl.'s Resp. 6 n.5. Krik's counsel also acknowledged at oral argument that Dr. Frank and Dr. Brody each intended to present "dosage dependent theories" at trial. 4/8/14 Hearing Tr. at 39.

Yet, despite this, Plaintiff would have his experts testify that *any* exposure to asbestos, even the very first one, regardless of dosage is sufficient to cause asbestos-induced lung cancer. *See id.* at 30 (noting that Dr. Frank would testify that "any exposure, even the first exposure"

6

would be considered a substantial contributing factor); 38 (acknowledging that Dr. Frank would testify that the first exposure, no matter how limited, would be a substantial cause).  In support, Krik cites to a number of studies for the proposition that there is no known threshold or safe level of asbestos exposure.  *See* Pl.'s Resp. 7.  But, as the Seventh Circuit observed in *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 433-34 (7th Cir. 2013), the notion that it is theoretically possible that any amount of exposure could cause injury is different from an opinion that the particular level of dosage experienced by a plaintiff was sufficient to cause his or her particular injury.  *Id.* at 432 ("It is important to understand the difference between these two statements.").

In that regard, it is helpful to contrast the expert opinions in this case to those at issue in *Schultz*.  There, the plaintiff, a painter, suffered from acute myeloid leukemia ("AML") and alleged that his occupational exposure to benzene caused the illness.  To support his theory of causation, he offered the expert testimony of a physician, who opined that a person, like the plaintiff, who had been exposed to more than eleven parts per million-years of benzene would be at an eight-times greater risk for developing AML that the general population.  *Id.*  The district court excluded the testimony, but the Seventh Circuit reversed, finding the physician's testimony sufficiently reliable.

In contrast to the plaintiff in *Schultz*, Krik does not offer any expert testimony as to how much asbestos exposure he experienced and whether that dosage of exposure was sufficient to cause his lung cancer.  Rather, he relies upon the "Any Exposure" theory and argues that a single exposure to asbestos is enough and every additional exposure contributed as well.  The primary basis for the "Any Exposure" theory seems to be that Krik's experts cannot rule out that a single dose of asbestos causes injury.  From this, they conclude that any and all exposure to asbestos is necessarily harmful.  *See* 4/8/14 Hearing Tr. at 33 (Krik's counsel stated that "they always say . .

7

. that the cumulative exposure is the cause. So that's [what] Dr. Frank is saying, each exposure is [a] substantial contribution to the cumulative total."). This is not an acceptable approach for a causation expert to take. *See Schultz*, 721 F.3d at 432 (recognizing that such broad opinions give rise to concerns about "an ill-defined floor"); *see also Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *3 (D. Utah Jan. 18, 2013) (where a causation opinion was based upon the assumption that all asbestos exposures were contributing factors, it "asks too much from too little evidence as far as the law is concerned.").

Krik nevertheless asserts that because the precise exposure to asbestos cannot be calculated, even *de minimis* exposure satisfies the substantial contributing factor test. The Court disagrees. As the MDL court explained in its opinion denying Crane's summary judgment motion, under maritime law, "[a] mere 'minimal exposure' to a defendant's product is insufficient to establish causation." *Krik v. BP Am., Inc.*, MDL No. 875, 2012 WL 2914244, at *1 (E.D. Pa. May 15, 2012) (quoting *Lindstrom*, 424 F.3d at 492). As *Lindstrom* teaches, "the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Lindstrom*, 424 F.3d at 492 (quotations omitted).

Illinois law requires a similar showing. Indeed, the controlling case from the Illinois Supreme Court, *Thacker*, explicitly adopted the "frequency, regularity, and proximity" causation test "as the rule of law in Illinois," from a Fourth Circuit case entitled *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986). *Thacker*, 603 N.E.2d at 457; *see also Nolan v. Weil-McLain*, 910 N.E.2d 549, 558 (Ill. 2009) (reaffirming adoption of "frequency, regularity, and proximity test"). *Lohrmann*'s holding, in turn, was based upon what the Fourth Circuit termed a "*de minimis*" rule, that "a plaintiff must prove *more than a casual or minimum contact*

with the product." *Id.* at 1162 (emphasis added). Thus, Krik's argument that a single exposure or a *de minimis* exposure satisfies the substantial contributing factor test under Illinois law incorrectly states the controlling law: it is not that *de minimis* exposure is sufficient, but that more than *de minimis* exposure is required to prove causation.[5] Krik's argument, therefore, is unavailing.

Next, the Court concludes that the "Any Exposure" theory also is inadmissible given Krik's experts' wholesale failure to base their opinions on facts specific to this case. *See* Rule 702(d) (requiring the expert to reliably apply the principles and methods to the facts of the case). Indeed, as other courts have cautioned when considering the admissibility of this theory, "the Court must base its opinion on the facts and testimony presented in *this* case, rather than on the testimony of experts in other cases." *Anderson v. Ford Motor Co.*, No. 2:06-CV-741 TS, 2013 WL 3179497, at *6 (D. Utah. June 24, 2013) (emphasis added).

Here, Krik's experts provide no information regarding the amount of exposure Krik may have had to asbestos, and Dr. Frank and Parker readily admitted in their depositions that they had not considered any such information in their analysis. Frank Dep. 108, 129; Parker Dep. 70. As for Brody, his expert report includes no specific references to Krik at all. Although Dr. Frank, at least, reviewed Krik's medical records and information about his work history, he also conceded at his deposition that he was "not able to quantify the extent of" Krik's exposure to asbestos-containing products. Frank Dep. 129.

The recent case, *Anderson v. Ford Motor Co.*, is particularly instructive. There, the court also barred experts from presenting the "Any Exposure" theory at trial in an asbestos action.

---

[5] In support of his argument, Krik cites to *Zickuhr v. Ericsson, Inc.*, 962 N.E.2d 974 (Ill. App. Ct. 2011), and *Johnson v. Owens-Corning Fiberglas Corp.*, 729 N.E.2d 883 (Ill. App. Ct. 2000). But these cases applied the rule in *Thacker* requiring more than a *de minimis* amount of exposure.

Critical to the *Anderson* court's decision was the fact that the experts "simply assert[ed] that any level of exposure is hazardous to human beings and fore[went] any examination of [plaintiff's] actual level of exposure." 2013 WL 3179497, at *6. The court found that such an approach was insufficient to allow the experts to testify that the plaintiff was exposed to a sufficient dose of asbestos to cause a "significant risk" of injury. *Id.* Further, the "experts testified that they have no way of knowing which fibers or which exposure caused" plaintiff's injury, and "there [was] no known error rate for this theory." *Id.* The court continued, "Although Plaintiff has pointed to instances in which people with very little known exposure to asbestos contracted mesothelioma, it is not known if the odds of people with so little exposure contracting mesothelioma is one out of a million or one out of a hundred." *Id.* As here, the plaintiff provided a number of articles claiming that there was no known safe level of exposure to asbestos, but the court found that unavailing because the plaintiff failed to show that "the type of exposure" that he "had to Defendants' products is likely to cause mesothelioma." *Id.*

The facts in *Anderson* are similar to those in the record here. Krik's experts have not presented any individualized analysis of his level of asbestos exposure. Moreover, the expert reports and briefs filed by Krik's counsel provided this Court with only generalized citations to scientific literature, with no indication that these are the authorities upon which its experts intend to rely. Nor do Krik's experts identify any peer-reviewed scientific journal adopting the "Any Exposure" theory, or cite any medical studies that set forth a known rate of error for this analysis. Frank Dep. 54-55; Dkt. 62-3 (Brody Report) (generally referencing unidentified "peer-reviewed publications and invited reviews"). Instead, Krik's experts tout the "Any Exposure" theory with little to no evaluation of the actual facts in this case. Just as the record in *Anderson*

10

was insufficient to allow the "Any Exposure" theory in the face of a *Daubert* challenge, so it is here.[6]

Lastly, Krik argues that the MDL court previously has held that the "Any Exposure" theory is admissible in this particular case. *See Schumacher v. Amtico (In re Asbestos Prods. Liab. Litig.)*, No. 10-cv-01627, 2010 U.S. Dist. LEXIS 144831, at \*\*4-7 (E.D. Pa. Nov. 2, 2010). But this is not so. In *Schumacher*, the court's ruling expressly addressed the admissibility of expert testimony in light of the facts and record *in that particular case*.[7] There is no indication that the court intended its ruling to have universal application and bind all of the cases that were part of the MDL proceeding.

Perhaps recognizing this, rather than arguing that the *Schumacher* decision is binding here, Krik suggests only that "[t]his court should follow the precedent of the MDL-875 supervising judge." Dkt. 79 at 5. But, the two cases are distinguishable. First, the *Schumacher* case involved different types of allegedly asbestos-containing materials and products than those at issue here. And, perhaps more importantly, the expert in *Schumacher*, Dr. Maddox, engaged in a more detailed and case-specific analysis that any of the experts at issue here. For example, in addition to scientific literature, Dr. Maddox reviewed plaintiff's deposition and the discovery

---

[6] Numerous other courts also have barred "Any Exposure" opinions in asbestos and toxic tort actions. *See, e.g., Moeller v. Garlock Sealing Techs., LLC*, 660 F.3d 950 (6th Cir. 2011); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439 (6th Cir. 2009); *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488 (6th Cir. 2005); *Davidson v. Georgia Pacific LLC*, No. 12-1463, 2014 WL 3510268, at \*6 (W.D. La. Jul. 14, 2014); *Smith*, 2013 WL 214378, at \*3; *Sclafani v. Air & Liquid Sys. Corp.*, No. 2:12-cv-3013-SVW-PJW, 2013 WL 2477077, at \*4 (C.D. Cal. May 9, 2013); *Betz v. Pneumo Abex*, LLC, 44 A.3d 27 (Pa. 2012); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216 (Pa. 2007); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007). *See also Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) (benzene).

[7] The *Schumacher* opinion is rife with such references: "Defendants' arguments mischaracterize Dr. Maddox's testimony *in this case*," *id.* at \*4 (emphasis added); "Dr. Maddox's underlying methodology involves reviewing *Plaintiff's testimony and Defendant's answers to interrogatories* regarding the percent of chrysotile asbestos contained in Defendants' respective products," *id.* at \*\*5-6 (emphasis added); "Dr. Maddox looks to case studies linking the specific products *at issue in the instant case* (floor tile, joint compounds, and gaskets and packing)," *id.* at \*6; and "he has cited case studies of individuals with occupational histories *similar to that of Plaintiff*." *Id.* at \*8 (emphasis added)

materials produced in that case, as well as case studies that linked the specific products at issue to asbestos-related disease. *See id.* at *5-6.

For these reasons, Plaintiff will be barred from offering any expert testimony espousing the "Any Exposure" theory, "Each and Every Exposure" theory, and the "Single Fiber" theory at trial.

## II.     Motion to Bar the Expert Opinions of Frank and Parker

Mobil also has moved individually to bar testimony of Dr. Frank and Parker. Mobil seeks two forms of relief as to Dr. Frank: *first*, to preclude him from espousing the "Any Exposure" opinion; and *second*, to bar him from "offering any specific causation testimony regarding Mobil." Reply 1. Mobil also asks the Court to bar Parker from testifying that Krik "was occupationally exposed to significant concentrations of airborne asbestos" at any Mobil-owned facility. *Id.* The first form of relief as to Dr. Frank has been addressed earlier in this opinion, and that portion of Mobil's motion is granted. However, for the reasons set forth below, the remainder of Mobil's motion is denied.

Mobil's remaining arguments are essentially the same as to both experts: because Dr. Frank and Parker offered no specific testimony during their depositions or in their initial expert reports tying Krik's exposure to Mobil's facility, they should be precluded from testifying as to Mobil at all. Krik responds, in relevant part, that these arguments go to the weight of the evidence and are appropriate for cross-examination, but are not grounds for exclusion under Rule 702. The Court agrees.

As the MDL court recognized in denying Mobil's motion for summary judgment, there was evidence in the record establishing that Krik "was exposed to asbestos from insulation he removed from steam lines while replacing unit heaters in 25 control rooms in ExxonMobil's premises, including during the sweeping of the insulation dust into the dustpan while not wearing

12

any protective gear." Pl.'s Resp., Ex. 8 at 16. Ignoring this finding, Mobil instead rehashes its unsuccessful argument that Krik had failed to testify that any materials in the Mobil facility in which he worked contained asbestos. Clearly the MDL court felt differently; otherwise Mobil would have prevailed on summary judgment. Accordingly, to the extent that Plaintiff will present facts at trial that he was exposed to asbestos at ExxonMobil facilities and Dr. Frank and Parker will rely upon such facts at trial, the experts will be permitted to testify at trial regarding such exposure, subject to the Court's ruling precluding testimony as to the "Any Exposure" theory. Any concerns that Defendant Mobil may have with respect to the testimony of Dr. Fran and Parker can be addressed adequately by cross-examination at trial. *See*, *e.g.*, *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (internal quotations omitted) (holding that a court's "'determination on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination.'"). Therefore, Mobil's and BP Amoco's Motions to Bar the testimony of Frank and Parker are granted in part and denied in part.

## Conclusion

For the reasons set forth above, the Court rules as follows:

- Defendants Crane Co.'s, Marley-Wylain's, and Exxon/Mobil's Motions to Exclude the "Each and Every Exposure" Opinion offered by Drs. Frank and Brody (dkt. 62, 73, 77) are granted;

- Defendants Owens-Illinois' and Exxon/Mobil's Motions to Exclude the "Any Exposure" Opinion offered by Dr. Frank (dkt. 66, 77) are granted;

- Defendants Marley-Wylain's and Exxon/Mobil's Motions to Exclude the "Single Fiber Theory" of Dr. Frank and any others (Weil, Mobil) (dkt. 71, 77) are granted; and

- Defendant Exxon/Mobil's Motion to Bar the Expert Opinions of Frank and Parker (dkt. 67, 76, 77) is granted in part and denied in part.

IT IS SO ORDERED.   ENTERED

                                                      _____
                                                      John Z. Lee
                                                      United States District Judge

Dated: December 22, 2014

14