UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES KRIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-7435 |
| ) | |
| OWENS-ILLINOIS, INC. *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OWENS-ILLINOIS, INC.'S
## MOTION FOR JUDGMENT AS A MATTER OF LAW

Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant
Owens-Illinois, Inc.*

Owens-Illinois, Inc. ("Owens-Illinois"), after the close of Plaintiff Charles Krik's case and pursuant to Federal Rule of Civil Procedure 50(a), respectfully requests judgment as a matter of law. In support of this motion, Owens-Illinois states as follows:

I.  **<u>INTRODUCTION</u>**

Plaintiff Charles Krik alleges that he developed lung cancer from a "synergistic" effect between his cigarette smoking and his exposure to asbestos from hundreds of products since 1954. He claims that Owens-Illinois knew or should have known in the 1940s and 1950s that individuals like him would be overexposed to asbestos by working with Kaylo, and that Owens-Illinois negligently failed to warn, investigate, or test the product in conjunction with cigarette smoking. Mr. Krik alleges that the absence of any warning, investigation, or testing caused him to be overexposed; he developed lung cancer from his "synergistic" cigarette smoking and asbestos exposure; and his exposure to asbestos from Owens-Illinois Kaylo was a substantial factor in causing his lung cancer.

Mr. Krik's negligence claim fails as a matter of law. First, Mr. Krik has no legally sufficient basis to prove medical causation, *i.e.*, that asbestos exposure was a cause of his lung cancer. Second, even if Mr. Krik could establish that asbestos played some role in causing his lung cancer, he has not proved specific causation, *i.e.*, that exposure to asbestos *from Owens-Illinois Kaylo* was a substantial factor in causing his lung cancer. Third, Mr. Krik's negligence allegations fail because Owens-Illinois owed him no legal duty (and breached no duty that actually and proximately caused his lung cancer) with regard to a "synergistic" effect between cigarette smoking and exposure to asbestos from Owens-Illinois Kaylo. Fourth, Mr. Krik did not show that Owens-Illinois's failure to warn the U.S. Navy of the

potential hazards of overexposure to asbestos dust proximately caused his lung cancer because the U.S. Navy already understood those potential hazards before Mr. Krik ever claims he was exposed to asbestos from Owens-Illinois Kaylo. Finally, Mr. Krik's claims based on an alleged negligent "failure to test" Owens-Illinois Kaylo fail as a matter of law, as the undisputed evidence in this case is that Owens-Illinois did test its Kaylo product.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 50(a), "a court should grant judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Winters v. Fru Con Inc.*, 498 F.3d 734, 745-46 (7th Cir. 2007). The standard "mirrors that employed in evaluating a summary judgment motion, except that the two motions are made at different times during the proceedings." *Id.* at 746.

## III. ARGUMENT

### A. There Is No Legally Sufficient Evidence of Causation.

Mr. Krik's negligence claim against Owens-Illinois is governed by maritime law. Proposed Pretrial Order § 1, ECF No. 318-1; *Krik v. BP Am., Inc.*, No. 11-cv-63473, 2012 WL 2914238 (E.D. Pa. May 15, 2012). Under maritime law, Mr. Krik is required to prove both *general causation* (that asbestos exposure in general caused his lung cancer) and *specific causation* (that his exposure to asbestos from Owens-Illinois Kaylo was a "substantial factor" in the development of his disease). *Lindstrom v. A-C. Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005). On the latter point, he must establish that exposure to Owens-Illinois Kaylo *alone* was a substantial factor in causing his lung cancer. Mr. Krik has produced no such evidence.

## 1. Expert Testimony Is Required to Prove Causation.

Where a plaintiff's injury has multiple potential etiologies, he must present expert testimony to survive judgment as a matter of law. *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010); *Korte v. ExxonMobil Coal USA, Inc.*, 164 Fed. App'x 553, 557-58 (7th Cir. 2006) (excluding plaintiff's expert on causation and entering judgment in favor of defendant); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (affirming judgment in favor of defendants where plaintiff lacked expert opinion on medical causation); *Seaman v. Seacor Marine L.L.C.*, 326 Fed. App'x 721, 723 (5th Cir. 2009) ("A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation"; applying maritime law and affirming grant of summary judgment due to failure to present expert testimony that exposure to chemicals aboard defendant's ships, as opposed to other chemicals or chemicals elsewhere, caused plaintiff's bladder cancer); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("[W]here an injury has multiple potential etiologies, expert testimony is necessary to establish causation.").[1]

The Seventh Circuit's opinion in *Myers* is instructive. In *Myers*, the plaintiff claimed cumulative trauma disorders caused by the negligence of his employer. 629 F.3d at 640. Before trial, the district court excluded each of plaintiff's causation experts under *Daubert*, finding their opinions unreliable, and subsequently granted the defendant's motion for summary judgment because plaintiff lacked the requisite expert testimony on specific

---

[1] While *Lindstrom* noted that expert testimony was not required to establish causation, *Lindstrom* involved only one allegedly causative substance. 424 F.3d at 491 (alleging exposure to asbestos, and asbestos alone, caused plaintiff's disease); *see also Stark,* 21 Fed. App'x at 373 ("Stark has mesothelioma, a form of cancer which can be, and Stark claims was in his case, caused by asbestos exposure."). Here, Mr. Krik and his experts admit that many substances could have contributed to his lung cancer. Trial Tr. 346-47, 685-86, 737-38.

causation. *Id.* at 641. On appeal, the plaintiff argued that testimony that his employer's actions "*can cause*" the types of injuries from which he suffered should have been sufficient to avoid summary judgment. *Id.* at 641-42. The Seventh Circuit rejected the plaintiff's argument that "general causation" was sufficient and held instead that, where a given injury has "multiple potential etiologies" or where an injury "can be caused by a myriad of factors, none of which is obvious or certain," then "expert testimony is necessary to establish causation." *Id.* at 643.

Similarly, in *Goffman*, the Seventh Circuit again considered the extent to which expert testimony is required to establish specific causation. In *Goffman*, the plaintiff claimed that his exposure in prison to second-hand smoke constituted deliberate indifference to his immediate medical needs because, according to the plaintiff, such exposure exacerbated certain medical problems. 59 F.3d at 670. Plaintiff's claims were dismissed after an evidentiary hearing at which the defendant's medical doctor opined that the plaintiff had no medical condition that had been exacerbated by his exposure to his cellmates' cigarette smoke. *Id.* at 671. The plaintiff did not provide any expert testimony in support of his claims and instead relied upon the testimony of several lay witnesses. *Id.* at 672. In affirming the dismissal, the Seventh Circuit expressly held that that plaintiff's reliance on non-expert testimony to support his claims was insufficient to withstand dismissal because the "medical effects of secondhand smoke are *not within the ken of the ordinary person.*" *Id.* (emphasis added); *accord Korte*, 164 Fed. App'x at 557-58 (quoting *Goffman* and holding that "whether exposure to coal dust could cause personal injuries is not within the ken of the ordinary person, and thus 'expert testimony is needed for the Kortes to prove their case'").

## 2. Plaintiff Failed to Prove Medical Causation.

Mr. Krik presented no expert testimony that asbestos exposure, in fact, caused his lung cancer. Expert testimony on medical causation is essential in this case because Mr. Krik was exposed to a numerous cancer causing agents during his lifetime. Trial Tr. 346:1-347:9. Rather than actual proof of causation, Mr. Krik presented testimony that the combination of smoking and asbestos exposure merely *can* cause a higher incidence of cancer.

There are, of course, hundreds of known carcinogens that we all encounter every day in the food we eat, the liquids we drink, and the air we breathe. Mr. Krik admittedly was exposed to a whole host of potentially cancer-causing agents, including cigarettes (which themselves contain 70 known carcinogens), benzene, coal dust, radiation, lead, welding fumes, and asbestos. *Id.* He smoked one and a half packs of cigarettes per day for 30 years. *Id.* at 868:18-19. He was also exposed to benzene on a daily basis for a minimum of nine months, and potentially significantly more, while working at U.S. Steel. Trial Tr. 987:1-24. As Mr. Krik testified, benzene would be vented into the atmosphere "every day at least once a day." *Id.* at 987:3-14.

Mr. Krik further admitted that he had significant exposure to coal dust. *Id.* at 988:14-16. He was directly exposed to coal dust for at least nine months in the mid-1980s. *Id.* at 988:17-23. His exposure was so significant that, as Mr. Krik admitted, doctors attributed his penile cancer to exposure to coal dust. *Id.* at 988:24-989:7. With regard to his radiation exposures, Mr. Krik worked for two years at various nuclear powerhouses. Trial Tr. 992:23-993:2. At Dresden Powerhouse, one of the nuclear power plants where Mr. Krik worked, Mr. Krik testified that he was exposed to such a high level of radiation that his personal

dosimeter "pegged out" and that the radiation protection office prevented him from working in the area again for an entire calendar quarter. *Id.* at 993:23-994:13. Mr. Krik also testified to his significant exposures to lead. Mr. Krik estimated that he spent as much as a third of his entire career doing welding work when asked to add up all such days consecutively. *Id.* at 991:23-992:3. Using lead solder while welding was "part and parcel" with his work as a pipefitter. *Id.* at 991:4-13.

Mr. Krik's own experts admitted that any of these substances — just like asbestos exposure – *could* have contributed to his lung cancer. Trial Tr. 685-86 ("Q. Numerous chemicals? A. Like I said, there's a long list, sure. . . . I said whatever the carcinogen is, this is what it does."), 737-38, 346-47. Mr. Krik's experts also admitted that he does not have asbestosis. *Id.* at 302-03 (A. "If you read my report, I did not say that he had asbestosis. It never says that in my report. I never agreed that he did."), 864 (Q. "[N]o treating physician, according to your records, that has ever diagnosed Mr. Krik with the disease asbestosis; is that correct? A. Yes."). Indeed, Mr. Kirk's treating physician testified there is no objective medical evidence that Mr. Krik's lung cancer is any different than the 87% of other lung cancers in this country that are caused by smoking. Trial Tr. 875:11-19. The evidence in this case shows that the mechanisms by which healthy cells are transformed into cancer cells, evade the body's defense mechanisms, and develop into solid tumors is, even now, only poorly understood.

Against this backdrop, Mr. Krik must prove that his lung cancer did not just occur for reasons we do not understand, was not the result of genetic predisposition, and was not caused by the myriad other carcinogens to which he was exposed, day after day, throughout

his life. He must prove that asbestos exposure, in fact, caused his lung cancer. Based on the evidence, however, the jury has no way to decide, without speculating, whether asbestos, cigarette smoke, benzene, coal dust, radiation, welding fumes, or some combination actually caused Mr. Krik's lung cancer, especially in light of his own experts' admissions that lung cancer could be attributed to each substance. Indeed, there is an open medical question whether a diagnosis of asbestosis is required to attribute a lung cancer to asbestos exposure. Trial Tr. 282:85-283:11. But there is no dispute that Mr. Krik has never been diagnosed with asbestosis. Trial Tr. At 302:21-303:7. None of his expert witnesses disputes that his smoking history was sufficient to have caused his lung cancer even if he had never breathed a single asbestos fiber. Allowing the jury to decide whether Mr. Krik's exposure to asbestos caused his lung cancer would invite the jury to engage in rank speculation and decide an open issue that the medical experts could not resolve under oath.

The myth that asbestos plaintiffs are somehow entitled to special, reduced burdens of proof, procedural shortcuts, and relaxed evidentiary standards has no foundation in law or sound public policy. Mr. Krik must prove to a medical and scientific probability that it was the carcinogen that his counsel has picked out to blame — asbestos — that proximately caused his lung cancer. Without expert testimony that asbestos exposure in fact caused Mr. Krik's lung cancer, Owens-Illinois is entitled to judgment as a matter of law. *Myers*, 629 F.3d at 643; *Korte*, 164 Fed. App'x at 557-58; *Goffman*, 59 F.3d at 672; *Seaman,* 326 Fed. App'x at 723; *Wills*, 379 F.3d at 46.

### 3. Plaintiff Has Also Failed to Prove Specific Causation.

Additionally, Mr. Krik cannot recover from Owens-Illinois by showing merely that he had lung cancer and that, at some point in his career, he came into contact with Owens-Illinois Kaylo. Under *Lindstrom*, a plaintiff must establish, "with respect to *each* defendant that the defendant's product was a substantial factor in plaintiff's injury." 424 F.3d at 493 (emphasis original). As noted above, expert testimony is required to establish causation in cases involving complex causation with multiple potential causes. *Myers*, 629 F.3d at 643; *Korte*, 164 Fed. App'x at 557-58; *Goffman*, 59 F.3d at 672; *Seaman,* 326 Fed. App'x at 723; *Wills*, 379 F.3d at 46.

Where, as here, expert testimony is required to show specific causation, it is not enough to simply allow a jury to "infer" such causation on the grounds that some evidence of exposure has been provided. *See*, *e.g.*, *Davidson v. Georgia Pacific, LLC*, No. 12-1463, 2014 WL 3510268 at *7 (W.D. La. July 14, 2014) (granting judgment to defendants in asbestos case where district court excluded plaintiff's expert on causation and where expert testimony was necessary to establish causation); *Avila v. Willits Envt'l Remediation Trust*, No. 99-3941, 2009 WL 1813125, *4 (N.D. Cal. June 18, 2009) (granting judgment in defendant's favor in toxic tort case; holding that even where exposure is proved, a plaintiff "must then show through admissible scientific evidence that it is more likely than not that exposure to the toxic substance . . . in fact did cause his injuries." (citations and internal quotations omitted)); *Leese v. Martin*, No. 11-5091, 2013 WL 5476415, *8-9 (D.N.J. Sept. 30, 2013) (same). To allow otherwise would be to negate the requirement for expert opinion to support specific causation. *Lindstrom*, 424 F.3d at 493.

Mr. Krik has presented no expert testimony that exposure to asbestos from Owens-Illinois Kaylo was a substantial factor in causing his lung cancer. Before and during trial, Mr. Krik's experts were precluded under Federal Rule of Evidence 702 and *Daubert* from offering any specific causation opinions with respect to Owens-Illinois. Trial Tr. 251-91; *Krik v. Crane Co.*, No. 10-cv-7435, 2014 WL 7330901 (N.D. Ill. Dec. 22, 2014). There was no evidence from any other witness or any exhibit in support of plaintiff's allegation that asbestos from Owens-Illinois Kaylo caused Mr. Krik's lung cancer. Accordingly, Mr. Krik has presented no medical opinion that exposure to asbestos from Owens-Illinois Kaylo was a substantial factor in causing his lung cancer and provided no sufficient evidentiary basis for the jury to decide proximate causation as to Owens-Illinois. For this reason, judgment as a matter of law in Owens-Illinois's favor is proper.

### 4. The Jury Cannot Be Permitted to Guess the Cause of Mr. Krik's Lung Cancer.

Without expert testimony, Mr. Krik could only ask the jury to guess which of the many carcinogens and products, if any, proximately caused his lung cancer. That question is, however, beyond the ken of an average juror and would only invite the jury to speculate about the cause of Mr. Krik's lung cancer. *Myers*, 629 F.3d at 643; *Goffman*, 59 F.3d at 672; *Kortes*, 164 Fed. App'x at 557. Defendants should not, and cannot, "be subjected to open-ended liability based solely on a jury's inexpert speculation on proximate cause" in asbestos exposure cases. *Stark*, 21 Fed. App'x at 376 (affirming trial court's grant of summary judgment to multiple defendants in action under general maritime law because plaintiff failed to establish exposure to defendant's products was a substantial factor in causing his injury).

Even if the jury were allowed to guess that asbestos exposure, as opposed to the myriad other cancer causing agents to which Mr. Krik has been exposed throughout his lifetime, caused Mr. Krik's lung cancer, there is no legally sufficient evidence for the jury to decide that exposure to Owens-Illinois Kaylo was a substantial factor in causing the lung cancer. The record contains evidence that Mr. Krik was exposed to asbestos supplied by Owens-Illinois, as well as many other companies. If Mr. Krik's hired experts could not testify that Owens-Illinois Kaylo was a substantial factor in causing Mr. Krik's lung cancer, how can the jury make that determination? *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 299 (7th Cir. 1990) ("Lacking scientific knowledge that an expert might have imparted to it but did not, no rational jury could bring in a verdict for the plaintiff."). The jury cannot, and should not, be asked to speculate as to whether exposure to Owens-Illinois Kaylo was a substantial factor. *Id.*; *Myers*, 629 F.3d at 643; *Korte*, 164 Fed. App'x at 557-58; *Goffman*, 59 F.3d at 672; *Seaman,* 326 Fed. App'x at 723; *Wills*, 379 F.3d at 46.

### B. Mr. Krik Lacks Sufficient Evidence to Support His Negligence Allegations Against Owens-Illinois.

Even if Mr. Krik had proven that exposure to Owens-Illinois Kaylo was a proximate cause of his lung cancer (which he did not), he still cannot recover unless he also proves the absence of any warning, investigation, or testing caused his lung cancer. To establish a negligence claim under maritime law, a plaintiff must prove that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

1. **Owens-Illinois Owed No Duty to Mr. Krik Regarding Any Alleged "Synergistic" Effect of Cigarette Smoking and Asbestos Exposure.**

Duty is a threshold question of law and measured by "ordinary reasonable care under the circumstances." *Id.* For any duty to exist, however, the law demands evidence that a defendant knew or should have known of the particular risk to plaintiff. *Id.*; *In re Signal Int'l, LLC*, 579 F.3d 478, 491 (5th Cir. 2009); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603, 611-12 (N.D. Ohio 2004), *aff'd sub nom. Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 488 (6th Cir. 2005).

Mr. Krik cannot show that Owens-Illinois owed him any duty to warn, investigate, instruct, test or manufacture Kaylo so as to avoid or protect against "synergistic" cigarette smoking and asbestos exposure. Owens-Illinois had no duty to test cigarettes. It is undisputed that medical science did not discover any risk of a "synergistic" effect, if any exists, until 10 years after Owens-Illinois ceased the manufacture and sale of its Kaylo product. Trial Tr. at 175:8-11. Owens-Illinois sold its Kaylo product line in 1958. Trial Tr. 92:3-5. The first reports of any "synergistic" effect between cigarette smoking and asbestos exposure on the risk of lung cancer did not, however, appear in medical science until 1968. *Id.* at 175:8-11.

Owens-Illinois cannot, as a matter of law, owe any duty to Mr. Krik based on a "synergistic" risk between cigarette smoking and asbestos exposure. Without a legal duty running from Owens-Illinois to Mr. Krik based on a "synergistic" effect, the entire structure of his negligence claim — breach of duty, causation, and damages — fails as a matter of maritime law. *Futo v. Lykes Bros. S.S. Co., Inc.*, 742 F.2d 209 (5th Cir. 1984); *Gemp v. United*

*States*, 684 F.2d 404 (6th Cir. 1982); *see generally* Robert Force & Martin J. Norris, 1 The Law of Maritime Personal Injuries § 8:3 (5th ed. & 2012 suppl.) ("When there is no duty, there can be no breach of duty and hence no negligence.").

As in *Bartel*, an asbestos case tried under maritime law, a manufacturer has no duty to a plaintiff where "there was no information available suggesting there was any condition requiring a warning. There is no duty to warn of unknown and unknowable hazards." 316 F. Supp. 2d at 611-12, *aff'd sub nom. Lindstrom*, 424 F.3d at 488. Owens-Illinois cannot, as a matter of maritime law and fundamental tort law, be negligent for breaching a nonexistent duty to Mr. Krik regarding a "synergistic" risk that medical science would not discover for 10 years. To hold otherwise would transform Mr. Krik's negligence claim into absolute liability and contravene maritime law by imposing a tort duty without any foundation in medical science or any meaningful principle.

### 2. Plaintiff Did Not Prove that Owens-Illinois's Failure to Warn the U.S. Navy Proximately Caused Mr. Krik's Lung Cancer.

Additionally, Mr. Krik has not shown that Owens-Illinois's failure to warn, investigate, instruct, or test Kaylo proximately caused his lung cancer. It is no answer to suggest that a warning label on Owens-Illinois Kaylo would have alerted the U.S. Navy about the alleged asbestos-related health hazards. As the evidence showed, the U.S. Navy had an experienced and high-quality industrial hygiene apparatus. The U.S. Navy knew it was using asbestos-containing insulation products, knew the threshold limit value for asbestos should not be exceeded, and knew all of the industrial hygiene techniques available to avoid excess exposure, including wetting techniques, ventilation, and respirators. Trial Tr. 496:5-16; 497:1-498:8; 498:16-499:5. During the relevant time period, there was nothing Owens-

Illinois could have told the U.S. Navy about any health risks associated with exposure (more accurately, over-exposure) to asbestos or the methods by which over-exposure could be prevented that the U.S. Navy did not already know.  Mr. Krik has not proven, therefore, that Owens-Illinois's alleged failure to warn the U.S. Navy of hazards about which the Navy already knew proximately caused his lung cancer.

In fact, the undisputed evidence is that Mr. Krik continued to be exposed to asbestos dust *without protection* until well after warning labels were placed on other asbestos-containing products in the 1960s, after Owens-Illinois ceased the manufacture and sale of its Kaylo product. *Id.* at 516:13-517:8. Accordingly, Mr. Krik has not shown that it was the absence of a warning label on Owens-Illinois Kaylo in the 1950s that caused him to be so exposed. Without such evidence of causation, Mr. Krik's negligence claims fails as a matter of law.

### 3. Plaintiff's Evidence Does Not Support His "Failure to Test" Theory.

Finally, Mr. Krik's negligence claim against Owens-Illinois is based, in part, on an allegation that Owens-Illinois negligently "failed to test" Owens-Illinois Kaylo. First, there is no legally cognizable duty to test a product for latent diseases that will not appear for decades in the manner plaintiff alleges.  Second, the evidence shows that Owens-Illinois did, in fact, test its Kaylo product. It is undisputed that Owens-Illinois engaged the Saranac Laboratory to perform animal studies on the dust from Kaylo and that those studies were published at Owens-Illinois's request. Trial Tr. 137:25-140:18; 152:4-10. The negligent "failure to test" theory is legally infirm and without evidentiary support and must therefore fail as a matter of law.

To the extent Plaintiff alleges Owens-Illinois failed to test Kaylo in conjunction with cigarette smoking, his claims similarly fail. First, Owens-Illinois had no duty to test cigarettes, a product it never produced. *See Apperson v. E.I. du Pont de Nemours & Co.*, 41 F.3d 1103, 1106 (7th Cir. 1994) (affirming trial court's holding that defendant "owed no duty of care to the plaintiffs since it is simply not responsible for a product that it did not create"). Nor did Owens-Illinois have a duty to test its products in conjunction with cigarettes. *See id.* Second, medical science did not discover any potential "synergistic" effect between smoking and asbestos exposure until 10 years after Owens-Illinois last sold its Kaylo product. Trial Tr. at 175:8-11. Owens-Illinois cannot have failed to test its product in conjunction with a product it did not produce (cigarettes) regarding a possible effect that was not uncovered until 10 years after Owens-Illinois last sold its Kaylo product. Accordingly, Owens-Illinois is entitled to judgment as a matter of law on any alleged failure to test claim.

**IV. CONCLUSION**

For these reasons, Owens-Illinois respectfully requests judgment as a matter of law after the close of Plaintiff Charles Krik's case and pursuant to Federal Rule of Civil Procedure 50(a).

Dated: April 28, 2015

Respectfully submitted,

By: /s/ Brian O. Watson
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant Owens-Illinois, Inc.*

# CERTIFICATE OF SERVICE

The undersigned attorney certifies on April 28, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

12997-8392
CH2\16503384.8