IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES KRIK, <br><br> Plaintiff, <br><br> v. <br><br> OWENS-ILLINOIS, INC. and <br> EXXONMOBIL OIL CORP., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 10-cv-7435 <br> ) <br> ) <br> ) <br> ) <br> ) |

## EXXONMOBIL OIL CORPORATION'S MOTION FOR DIRECTED VERDICT

NOW COMES the Defendant, ExxonMobil Oil Corporation (hereinafter, "Mobil"), and in support of its Motion for Directed Verdict, pursuant to Federal Rule of Civil Procedure 50(a), states as follows:

### I.     Introduction

Mobil is entitled to a directed verdict in its favor for the reason that the Plaintiff, Charles Krik, has failed to put forth any evidence that his medical condition was proximately caused by a breach of any cognizable duty by Mobil. The Plaintiff's experts provided inadequate testimony to establish specific causation as to Mobil, and failed to provide sufficient facts and data that would support any such opinion. Moreover, this Court barred all of the Plaintiff's expert testimony pertaining to both general and specific causation. Thus, as a matter of law, Mobil is entitled to a directed verdict in its favor.

### II.     Prior Court Opinion Regarding Causation Testimony

This Court previously ruled on the scope of the testimony the Plaintiff could elicit from his experts at trial. At issue were the "Each and Every Exposure" opinions of Dr. Frank and

Frank Parker. This Court noted that the Plaintiff has not offered any expert testimony regarding how much asbestos exposure he experienced and whether his exposure was sufficient to cause lung cancer. *See Krik v. Crane Co.*, 2014 U.S. Dist. LEXIS 175983 at *11 (N.D. Ill. 2014). Instead, the Plaintiff relied upon expert testimony that *any* exposure to asbestos is a substantial factor in causing asbestos-induced lung cancer [emphasis added]. *Id.* at 10. This Court declined to accept the Plaintiff's position, finding that a mere minimal exposure to a defendant's product is insufficient to establish causation. *Id.* at 12. This Court therefore granted the Defendants' motions to exclude any testimony related to the theory that any asbestos exposure constitutes a significant contributing factor to the Plaintiff's medical condition. As a result of this Court's ruling, the Plaintiff has been unable to elicit any expert testimony regarding either "general" or "specific" causation, and accordingly, Plaintiff's experts gave no such testimony.

### III. Plaintiff's Expert Testimony

On the second day of trial, the Plaintiff called retained expert Dr. Arthur Frank to testify regarding various matters related to asbestos and the Plaintiff's alleged exposure, including his opinions regarding the cause of the Plaintiff's medical condition[1]. Much of Dr. Frank's testimony during direct examination pertained to the likelihood of lung cancer in individuals who smoked cigarettes and/or were exposed to asbestos fibers. However, Dr. Frank was unable to provide relevant testimony as it related to the cause of the *Plaintiff's* cancer diagnosis.

Dr. Frank admitted that he has never been to the Joliet Mobil facility, nor had he spoken with the Plaintiff regarding his potential exposure to asbestos at the Mobil facility prior to the morning of his trial testimony. 332:25-333:7. In fact, Dr. Frank testified that he never evaluated

---

[1] During the afternoon proceedings on April 27, 2015, this Court instructed the Defendants to refrain from attaching the trial transcript as an exhibit to their respective Motions for Directed Verdict. Henceforth, any reference to the trial proceedings will merely include the page and line numbers from the transcript; i.e. 333:1-7 (Page 333, Lines 1-7).

2

Mobil's potential contribution to the Plaintiff's exposure at all, stating that "it doesn't matter to [him] and it never matters to [him] whose product it was that may have caused [the disease]." 332:15-21.

Dr. Frank testified that in order to determine whether an asbestos exposure level is above or below the OSHA permissible exposure limit, analytics related to the air quality would be "required." 336:14-17. However, the doctor has no knowledge regarding the dose or exposure from any given product, including products at the Mobil facility, or how exposure to a given product would increase the risk of cancer. 335:11-15. Despite reviewing "lots" of air sampling data, he has never reviewed any from the Joliet Mobil facility. 335:22-25. Dr. Frank's only testimony specific to Mobil was that based upon Mr. Krik's deposition transcript and a conversation Dr. Frank had with him earlier in the day, he *believed* there was asbestos in the materials Mr. Krik handled in association with the replacement of unit heaters at the Mobil facility [emphasis added]. 333:8-13. Dr. Frank did not, and could not, calculate any dose of asbestos from such work, and offered no opinion regarding whether such dose was capable of causing the claimed injury.

Likewise, Frank Parker provided no cognizable opinion with respect to either general or specific causation, and provided no foundation to establish any portion of a proximate cause analysis with respect to Mobil. Although Mr. Parker testified that Mr. Krik's purported exposures at Mobil, assuming hypothetical facts provided by the Plaintiff, would have been "significant" (466:6-11), Mr. Parker defined this term in a way that effectively eliminates any potential probative value. When asked for the meaning of "significant exposure," Mr. Parker explained:

3

> Basically with asbestos, significant exposure really has to do with anything associated with an occupational exposure where you're disturbing asbestos insulation. If you look at the literature and all that, that disturbance of these materials, you know, it produces a – what we call a distribution of concentrations in the air. So if you don't put much energy into them, you get low concentrations. You put a lot of energy into them, you get very high concentrations. So when you're talking about significant exposures to an industrial hygienist, it is this occupational, what's going on in the workplace. Almost inevitably, those are – those exposures are significant, I mean, in the sense that they add to his dose and they add to his risk, the worker's risk.

386:18-387:6. This Court struck the last sentence of the answer pursuant to Mobil's objection, and the Court's earlier rulings. 387:11-13. Mr. Parker's nearly incomprehensible definition of "significant exposure" utterly fails to create any causal inference whatsoever that Mr. Krik's alleged exposure to asbestos at the Mobil facility contributed to his lung cancer. To the extent that Mr. Parker's testimony could somehow be construed to draw such an inference, it should be disregarded, as it is tantamount to an "Each and Every Exposure" opinion, which was explicitly barred by this Court. Dr. Brody provided no testimony about either general or specific causation, and agreed that his role was limited to testifying about "how the disease works in everyone." 636:12-17.

### IV. <u>Legal Standard</u>

In diversity cases such as this one, the court is to apply the forum state's standard for directed verdicts. *Kessinger v. Grefco, Inc.*, 875 F.2d 153 (7th Cir. 1989). According to the Illinois Supreme Court, verdicts ought to be directed only in those cases in which all the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *See Pedrick v. Peoria & Eastern Railroad Company*, 37 Ill.2d 494, 229 N.E.2d 504 (Ill. 1967).

## V. <u>Argument</u>

### A. The Record Evidence is Devoid of Evidence Regarding both General and Specific Causation

In light of Dr. Frank's inability to properly attribute the Plaintiff's medical conditions to Mobil or the co-defendant, Owens-Illinois, Inc., this Court struck all of Dr. Frank's testimony pertaining to causation. 353:22-355:15; 362:12- 363:6. In support of its decision, this Court held that Dr. Frank's "cumulative exposure" opinion could not be disaggregated from the "Each and Every Exposure" opinion as a matter of evidence and would therefore be unfair and confusing, given the weakness of its probative value. 354:22-355:7.

The Plaintiff has now called all of his expert witnesses. During the Plaintiff's examination of his other experts, this Court was consistent in its position that *none* of the experts were able to provide causation testimony. For every expert the Plaintiff called, the Court either struck the causation testimony or Plaintiff's counsel conceded that the expert could not provide opinions regarding causation. Specifically, the Court barred causation testimony from Dr. Frank (353:22- 355: 15; 362:12-363: 6) and Frank Parker (419:20-420:2); and the Plaintiff conceded the causation issue with regard to testimony from Dr. Arnold Brody (593:6-8; 682:3-5), Dr. Barry Castleman (737:11-15), and Dr. Nafisa Burhani (828:3-4).

The is ample evidence of record establishing that Mr. Krik came into contact with numerous carcinogenic materials throughout his lifetime. During his initial hematology and oncology consultation with Dr. Luke Cho, the Plaintiff cited a history of exposure to asbestos, benzene, coal, lead, radiation, and chemicals. *See* Mobil Exhibit M353. When asked about these exposures, the Plaintiff testified that he was exposed to benzene at least once per day for approximately nine months while working at U.S. Steel and also had "a lot" of exposure to coal dust during that time. 987:1-988:2, 14-23. Additionally, Mr. Krik testified that he was exposed

5

to radiation over the course of two years while working on at least five different jobsites, none of which were the Joliet Mobil facility. 992:7-993:2. In fact, in 1979 or 1980, while working at the Dresden powerhouse, the Plaintiff was exposed to such a high dose of radiation that his dosimeter "pegg[ed] out" and he was moved to a different part of the plant for the remainder of the working quarter. 993:23-994:16. The Plaintiff testified that he did not seek treatment for any of these exposures. 988:3-5 (benzene); 988:24-989:2 (coal dust); and 994:13-19 (radiation).

The Plaintiff's own experts testified that all of the aforementioned exposures are known causes of lung cancer. When asked about Dr. Cho's medical record, Dr. Brody testified that benzene, coal, lead and radiation are all cancer-causing exposures. 737:19-738:4. He also stated that based upon the Plaintiff's smoking history, the "cancer process" would have already begun before he allegedly worked at the Mobil facility. 727:22-728:7. Dr. Frank testified that aside from cigarettes and asbestos, there are many other combinations of exposures, such as radiation and smoking, which can also cause lung cancer, and that if he were asked to list the causes of lung cancer, he could go from "A" to "W." 175:4-7; 200:19-201:1.

## B. The Record Evidence Provides No Analytical Framework to Evaluate General or Specific Causation

The Plaintiff rests his case relying upon the inference that because he had cancer, because cancer can be caused by asbestos exposure, and because he had some undefined "exposure" during his working life, including while working at a Mobil facility, asbestos generally, and Mobil specifically must be a cause of his medical condition (presumably in some combination with other causes). This inference compels the jury to draw from mere generalities to determine a highly-complex technical and medical causation issue pertaining to whether asbestos, generally, and Mobil, specifically, was, in fact, a substantial factor in Mr. Krik's lung cancer. No expert testimony in the record informs the specific analysis of the role of asbestos, or

6

Mobil's role, in causing the injury, and the jurors are left only to make an assumption based upon uninformed speculation: the very type of speculation that this Court barred when it was part of Dr. Frank and Frank Parker's proffered testimony. 353:22-355:15; 362:12-363:6; 419:20-420:2.

This is the same conundrum that Judge Posner addressed in *Krist v. Eli Lilly & Co.*, 897 F.2d 293 (7th Cir. 1990). In that case, the jury was asked to evaluate the reliability of certain memories as opposed to others without being provided the expert testimony necessary to perform such evaluation. *See Krist*, 897 F.2d at 297-8. Judge Posner opined that if the jury had no analytical tools to evaluate the scientific/factual issue, then any determination would necessarily fall outside of the "rational jury" standard. *Id.* at 299. Judge Posner explained:

> The issue is not whether a jury composed of experts in perceptual psychology, presided over by a judge equally expert in that field, could find for the plaintiff in the absence of evidence in the usual sense. The issue is whether a normal jury could so find. It could not. (Compare the principle that there can be no finding of medical negligence in the absence of expert testimony to support it. Prosser and Keeton on the Law of Torts, § 32, at p. 188 (5th ed. 1984).) **Lacking scientific knowledge that an expert might have imparted to it but did not, no rational jury could bring in a verdict for the plaintiff**, and therefore summary judgment was properly granted to Lilly.

*Krist*, 897 F.2d. at 299 (emphasis supplied).

Judge Posner's view of requiring expert testimony is not unique. In this Circuit, pursuant to various states' laws, including Illinois law, expert testimony is needed to establish causation in cases alleging an adverse health effect when the medical effects of exposure to the toxin are not within the ken of the ordinary person. *Korte v. ExxonMobil Coal USA, Inc.*, 164 Fed. Appx. 553, 556 (7th Cir. 2006). In order to prove causation, the Plaintiff's expert must base his opinions on facts and data, and not merely conjecture. *Korte*, 164 Fed. Appx. at 557.

Plaintiff must introduce evidence with reasonable probative force as to probability, as the jury will not be permitted to engage in mere speculation or imagination. *See Grant v. Chemrex, Inc.*, 1997 U.S. Dist. LEXIS 6058 at *34 (N.D. Ill. 1997). "When there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation." *C.W. v. Textron, Inc.*, 2014 U.S. Dist. LEXIS 141593 at *7 (N.D. Ind. Oct. 3, 2014) (citing *Myers v. Ill. Cent. RR Co.*, 629 F.3d 639, 643 (7th Cir. 2010).

A causal relationship is more than the mere possibility that a product caused a particular injury; there must be evidence which justifies an inference of probability that the product caused the injury. *Tragarz*, 980 F.2d 411, 418 (7th Cir. 1992). Expert testimony is necessary to establish a causal connection between an injury and its source unless the connection is such that it would be obvious to a layman (i.e. a broken leg from an automobile accident. *Grant*, 1997 U.S. Dist. LEXIS 6058 at *34 (this Court struck the plaintiff's expert's testimony regarding causation and because the plaintiff was unable to demonstrate any issue of material fact on the causation issue, granted summary judgment in favor of the defendant.); *Schmaltz v. Norfolk & Western Ry. Co.*, 896 F. Supp. 180, 182 (N.D. Ill. 1995).

Further, a causation expert must produce evidence of "but for" causation, showing that the Plaintiff's condition would not have occurred *but for* Mobil's conduct. *Harris v. Owens-Corning Fiberglas Corp.* 102 F.3d 1429, 1432 (7th Cir. 1996). The Plaintiff cannot meet his burden of proof by establishing that he inhaled asbestos fibers; rather, he must establish that he inhaled asbestos fibers produced by defendant's product. *Harris*, 102 F.3d at 1432. More specifically, a Plaintiff must prove that exposure to defendant's product caused his illness, as opposed to any other asbestos-containing product to which he may have been exposed. *Id.*

The need for expert testimony under Illinois law is elucidated in the Illinois Supreme Court decision of *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343 (Ill. 1992), which addressed the question of whether so-called "fiber drift" evidence, alone, can support proximate cause. The *Thacker* Court answered the question in the negative, and held that a plaintiff cannot meet the burden of production without "sufficient evidence tending to show that [defendant's] asbestos was actually inhaled by the decedent." 151 Ill. 2d at 364. The *Thacker* Court ultimately affirmed the appellate court's analysis, which liberally applied the frequency, regularity and proximity test to support a factual determination that decedent actually inhaled the defendant's asbestos, but then, only subject to "plaintiff's medical evidence which tended to show that only slight exposure could have caused the plaintiff's injury." *Id.*, at 364-65.

Plaintiff's experts were unable to provide any testimony whatsoever that the Plaintiff's medical condition was caused by asbestos generally, or by exposure to products at the Mobil facility specifically, and, in fact, testified that the Plaintiff's condition could just as easily have been caused by the Plaintiff's admitted exposure to other materials which are known to cause lung cancer. Therefore, by law, there is no set of facts available under which the Plaintiff could prevail and allowing this case to go to the jury would force the jurors to render a verdict based on guesswork and speculation. For the foregoing reasons, the Plaintiff is unable to satisfy his burden of proof and this Court should enter a directed verdict in favor of Mobil.

As the causation testimony from all of the experts the Plaintiff called at trial was either barred, conceded, or stricken, there is no expert testimony in the record related to causation attributable to Mobil. However, even if the Plaintiff *did* work at the Mobil facility, which is disputed, and even if he *did* work with asbestos-containing products at Mobil, which is also disputed, the Plaintiff still could not prove causation based on the testimony of his experts

9

because of the Plaintiff's misplaced reliance upon a so-called synergistic or cumulative effect of his many exposures to different types of carcinogens.

Even giving the Plaintiff the benefit of the doubt that he was at the Mobil facility and that there was asbestos present, which Mobil disputes, the testimony of the Plaintiff's own experts confirms the impossibility of attributing Mr. Krik's lung cancer to asbestos exposure at the Mobil facility. Moreover, the Plaintiff's case-in-chief lacks a sufficient basis for the jury to conclude that causation is attributable to Mobil versus any of the other claimed carcinogenic exposures. While Dr. Frank's testimony was certainly not light on generic facts and data, none of the information he provided created a causal link between the Plaintiff's purported exposure to asbestos and his diagnosis of lung cancer, and none of his testimony spoke to the scientific issue of whether Mobil was a substantial factor in Mr. Krik's lung cancer.

Missing from Plaintiff's case is any discussion of a specific dose – even in ranges – that have been shown to cause the claimed injury, either generically, or specifically. Plaintiff has provided this jury with no evidence of how much asbestos Mr. Krik likely inhaled, and cannot link this claimed amount to any lifetime dose that has been associated with lung cancer. With respect to Mobil, Plaintiff's only "exposure" evidence comes from Mr. Parker, who opines that the exposure at Mobil was "significant," but makes clear that this term "significant" bears no indicia of any scientifically valid quantum, and provides no rational basis to evaluate the probative value of the statement. Even if this claimed "significant" exposure bore any probative value, Plaintiff provides the jury with nothing by way of an accepted dose that has been shown to be capable of causing or contributing to the claimed injury, such as the expert testimony regarding medical causation extant in *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343 (Ill. 1992).

The jury is provided nothing by way of expert testimony to evaluate whether Plaintiff's claimed exposure at Mobil bears any relationship to proximate cause as defined in the controlling jury instruction. Here, like in *Krist*, the jury would be asked to speculate about a factual/scientific issue without the necessary tools to do so. Such speculation would rest only upon the temporal sequence of events; namely, that the Plaintiff was exposed to asbestos at Mobil, and later was diagnosed with cancer. This speculation falls prey to the logical fallacy of *post hoc ergo propter hoc* – "after this, therefore because of this" – and any determination based upon this fallacy necessarily falls outside the "rational jury" standard.

WHEREFORE, the Defendant, ExxonMobil Oil Corporation, prays this Honorable Court for the entry of a directed verdict in its favor, and for any other relief this Court deems necessary and just.

Respectfully submitted,

/s/ David F. Fanning
H. Patrick Morris – IL Bar #6187083
David F. Fanning – IL Bar #6274895
Attorneys for ExxonMobil Oil Corporation
Johnson & Bell, Ltd.
33 W. Monroe St., Suite 2700
Chicago, IL  60603
Telephone:  312/372-0770
Fax:  312/372-9818
morrisp@jbltd.com
fanningd@jbltd.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 28, 2015, the foregoing was served upon all parties who have appeared via hand delivery.

By /s/ H. Patrick Morris
H. Patrick Morris – IL Bar #6187083
David F. Fanning – IL Bar #6274895
Attorneys for ExxonMobil Oil Corporation
Johnson & Bell, Ltd
33 West Monroe St., Suite 2700
Chicago IL  60603
morrisp@jbltd.com
