**1**

1          UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3    CHARLES KRIK,                    )
                                      )
4                    Plaintiff,       )
                                      )
5         vs.                         )  No. 10 C 7435
                                      )
6    OWENS-ILLINOIS, INC. and         )
     EXXON MOBIL OIL CORP.,           )  Chicago, Illinois
7                                     )  April 20, 2015
                     Defendants.      )  9:30 o'clock a.m.
8

9                        VOLUME 1-A
10                **EXCERPT** OF PROCEEDINGS -
           Pretrial Discussion/Jury Selection
11        BEFORE THE HONORABLE MANISH S. SHAH
                       and a Jury
12

13   APPEARANCES:

14   For the Plaintiff:    CASCINO VAUGHAN LAW OFFICES, LTD.
                           BY:  MR. ROBERT G. McCOY
15                              MR. DANIEL B. HAUSMAN
                                MR. ALLEN D. VAUGHAN
16                         220 South Ashland Avenue
                           Chicago, Illinois  60607
17                         (312) 944-0600

18   For Defendant Crane Co.: GUNTY & McCARTHY LAW OFFICES
                           BY:  MS. CATHERINE L. CARLSON
19                         150 South Wacker Drive, Suite 1025
                           Chicago, Illinois  60606-4163
20                         (312) 541-0022

21   For Defendant Owens-IL:  SCHIFF HARDIN, L.L.P.
                           BY:  MR. BRIAN O'CONNOR WATSON
22                              MR. EDWARD M. CASMERE
                           233 South Wacker Drive, Suite 6600
23                         Chicago, Illinois  60606
                           (312) 258-5784

24

25

```
1    APPEARANCES (Continued):

2

3    For Defendant ExxonMobil:JOHNSON & BELL, LTD.
                             BY:  MR. H. PATRICK MORRIS
4                                 MR. DAVID F. FANNING
                             33 West Monroe Street, Suite 2700
5                            Chicago, Illinois  60603
                             (312) 372-0770
6
                             BLACKWELL BURKE, P.A.
7                            BY:  MR. JERRY W. BLACKWELL
                             431 South Seventh Street, Suite 4600
8                            Minneapolis, Minnesota  55415
                             (612) 343-3200
9
     Also Present:           EXXON MOBIL CORPORATION
10                           BY:  MR. BEDOUIN L. JOSEPH
                             P.O. Box 2180
11                           CORP-EMB-1540C
                             Houston, Texas  77252-2180
12                           (713) 656-7827

13                           Mr. Samuel Ertel, legal assistant
                             Cascino Vaughan Law Offices, Ltd.
14
                             Mr. Michael J. Barron, paralegal
15                           Schiff Hardin, L.L.P.

16                           Mr. Paul Jepsen, DecisionQuest,
                             consultant for Schiff Hardin, L.L.P.
17
                             Mr. Sean Swaggerty, IT technician
18                           Johnson & Bell, Ltd.

19

20

21

22
                     COLLEEN M. CONWAY, CSR, RMR, CRR
23                        Official Court Reporter
                  219 South Dearborn Street, Room 1714
24                       Chicago, Illinois  60604
                             (312) 435-5594
25                   colleen_conway@ilnd.uscourts.gov
```

1    (Venire out.  Proceedings heard in open court:)

2         THE COURT REPORTER: 10 C 7435, Charles Krik versus

3    Owens-Illinois; jury trial.

4         THE COURT:  Okay.  Good morning, everyone.  If we

5    could get appearances on the record, please.

6         MR. McCOY:  Yes, Judge.  For the plaintiff, it's

7    Robert McCoy and Dan Hausman.  And Allen Vaughan is just

8    sitting in for jury selection only.  He's not going to speak at

9    all.

10        MR. CASMERE:  Good morning.  Edward Casmere with

11   Owens-Illinois.  With me is Brian Watson; our paralegal,

12   Michael Barron; and Mr. Paul Jepsen, who is here just for jury

13   selection.

14        MR. MORRIS:  Good morning, Your Honor.

15        Pat Morris -- and David Fanning you know -- for

16   ExxonMobil.

17        I told you Jerry Blackwell will be here subject to

18   the Court's approval.  We have a motion to admit him *pro hac

19   vice*.  This is Mr. Blackwell.

20        THE COURT:  Okay.  Mr. Blackwell, the motion is

21   granted.

22        MR. BLACKWELL:  Thank you, Your Honor.

23        THE COURT:  I think there is a pending Crane Co.

24   motion for *pro hac vice* as well, but maybe that's not an issue

25   anymore.

1          MS. CARLSON:  It is not, Your Honor.  Cathie Carlson
2     on behalf of Crane Co.
3          We settled last night, so Crane Co. is no longer --
4          THE COURT:  And are you in a position to have a
5     stipulation of dismissal filed?
6          MS. CARLSON:  We can file -- pursuant to plaintiff's
7     agreement, we can file a stipulation today.
8          THE COURT:  And will that be -- are you in a position
9     to have a stipulation with prejudice today?  It would have to
10    be without prejudice pending some final thing to work out.
11         MS. CARLSON:  Well, we would -- are you willing to do
12    a stipulation with prejudice today?
13         MR. McCOY:  Yes, Judge.  We have that agreement all
14    worked out, so --
15         THE COURT:  Okay.  Well, then I will grant the motion
16    to dismiss Crane Co. with prejudice subject to a stipulation of
17    dismissal getting filed today.
18         MS. CARLSON:  Okay.  Thank you, Your Honor.
19         MR. CASMERE:  Your Honor, I believe we're entitled to
20    know the amount.
21         THE COURT:  I believe they are.
22         MR. McCOY:  Well -- yes.  The amount of the
23    settlement is 15,000, Judge.
24         THE COURT:  Okay.
25         THE COURT REPORTER:  15?

1        MR. McCOY:  Yes.

2        MS. CARLSON:  Thank you, Your Honor.

3        THE COURT:  Okay.  So Crane Co. will be excused from

4    the trial.

5        (Ms. Carlson exited proceedings.)

6        THE COURT:  I think the venire will be coming up in a

7    few moments.

8        Mr. McCoy, does Mr. Krik want to have a seat at

9    counsel table for jury selection?

10        MR. McCOY:  Judge, I can have him come up here, sure.

11    I'll do that.

12        And this is Charles Krik, of course, and his wife,

13    Mary Krik.

14        THE COURT:  Good morning.

15        MRS. KRIK:  Good morning.

16        MR. MORRIS:  Your Honor, along the same lines, might

17    I introduce Bedouin Joseph from ExxonMobil Corp.

18        THE COURT:  Okay.  Good morning.

19        Yes, I think clients and client representatives

20    should be with counsel at counsel table.  And then I will ask

21    attorneys to introduce everybody at counsel table to the venire

22    at an appropriate moment.

23        (Pause.)

24        MR. CASMERE:  Your Honor, Edward Casmere.  I just

25    have one logistical question.

1          Before we are handing up the strikes to Your Honor,

2     will we have time to confer for a few minutes?

3          THE COURT:  Yes.

4          MR. CASMERE:  Okay.

5          THE COURT:  So what we'll do is take a break for

6     about 15, 20 minutes for both sides to exercise their strikes.

7          MR. CASMERE:  Thank you.

8          THE COURT:  And the letter that the jury is getting

9     downstairs does have Crane Co. listed in the title of the case,

10    but that's the only place that they will have heard reference

11    to Crane Co., so I don't really see any reason to fix that at

12    this late moment.  But, otherwise, I will be treating the case

13    as Owens-Illinois and ExxonMobil as the defendants.

14         MR. CASMERE:  In the event that we have duplicative

15    strikes and we end up with ten people, will you seat ten or

16    will you only seat eight?

17         THE COURT:  I was planning on only seating eight.

18         MR. CASMERE:  All right.  So with Nos. 9 and 10,

19    they'll just be excused?

20         THE COURT:  Correct.

21         MR. CASMERE:  Thank you.

22         THE COURT REPORTER:  Mr. Morris, do you have a copy

23    of the letter?

24       (Venire letter tendered to Mr. Morris.)

25         MR. MORRIS:  Thank you, Colleen.

1           THE COURT:  How long are opening statements?

2           MR. McCOY:  Plaintiff's opening will be just probably

3    under an hour, probably runs about 50 to 55 minutes, so --

4           MR. CASMERE:  I think collectively about an hour.

5           MR. MORRIS:  (Nodding.)

6           THE COURT:  Okay.  Thank you.

7       (Pause.  Venire in.)

8           THE COURT:  Okay.  Good morning, everyone.  Please be

9    seated.

10          Good morning, everyone.  Welcome to federal court.

11   And I appreciate your patience as we get everyone situated.

12   And we are endeavoring to keep everybody in the same order that

13   they're in so we can keep track of everyone, so I appreciate

14   your patience on that.

15          I am Judge Shah, and I'll be presiding over this

16   case.  We also have in the front here Colleen Conway, who's our

17   court reporter; Tony Balkissoon is one of the lawyers on my

18   staff; and you've already met Ms. Jauregui, who is our

19   courtroom deputy clerk.

20          Today we will be picking a jury in the case of

21   Charles Krik versus Owens-Illinois and ExxonMobil.

22          We have budgeted two weeks for this trial, including

23   today.  I'll tell you a little bit more about the schedule,

24   what our daily routine will be, a little bit later, but I want

25   you all to keep in mind that this trial is scheduled to last

1    for two weeks.

2            We appreciate your willingness to serve on a jury.  I

3    imagine many of you were not too happy to receive a summons for

4    jury duty, but hear me out a little bit.  Keep an open mind.

5    Jury service is one of the most important duties we have as

6    American citizens.  Our legal system, our system of justice is

7    the envy of the world because, in part, of our jury system.

8    People from the community come together and resolve disputes

9    that parties have.  We resolve disputes through a fair trial

10   system set up under our Constitution and laws of the United

11   States, and this is how we do it.  We resolve disputes fairly

12   and peacefully through a jury trial system, and we need you to

13   do it.

14           The other thing I'll say at the outset is that you

15   may be surprised at how rewarding and enlightening jury service

16   can be.  It's very common for people to come into this

17   courtroom annoyed, apprehensive, but by the end of the trial,

18   they are amazed and very surprised at how rewarding the

19   experience was.  So keep an open mind.  This is your duty as an

20   American citizen, but it can be very rewarding.

21           The way we pick a fair and impartial jury is by

22   telling you a little bit about the case, but then asking you a

23   series of questions, both individually and some questions that

24   I'll direct to the group and ask for a show of hands on.  I

25   expect that process is going to take a couple of hours this

1    morning.

2              And as we go through the questioning, please pay

3    attention, because I think the process will speed up as we move

4    along, and some of you who won't answer questions for a little

5    while will pick up the pattern of the questions, and things

6    might move along a little more quickly that way.

7              Our goal in asking questions is to ensure that we get

8    a fair and impartial jury for this case.  It's not to embarrass

9    anyone or reveal private information just for the sake of

10   revealing private information.  If there is an answer to a

11   question that you would feel more comfortable asking in a less

12   public setting, we could do that.  We can step off to the side

13   and you can provide any answers that you'd like that way to me

14   and to the attorneys.  And if you'd like to do that, just let

15   me know and we'll do it that way.

16             But before we begin, you all need to take an oath to

17   answer the questions that I'm about to ask truthfully.  So I'll

18   ask our deputy clerk to administer the oath to the venire to

19   answer questions truthfully.

20             THE CLERK:  Please raise your right hand.

21        (Venire duly sworn.)

22             THE CLERK:  Thank you.

23             THE COURT:  Okay.  And, as I mentioned before, we've

24   put you in a random order, and I'd like to keep you in that

25   order so that we can keep track of who you all are.

1        Before I start asking individual questions, let me

2   give the entire group a short description of the case.  After I

3   tell you about the case, I am going to ask the lawyers involved

4   in the trial to introduce themselves and anyone else at counsel

5   table.  The point here is for you to listen carefully and let

6   me know if you happen to know anything about this case or know

7   the people involved in the case in the courtroom.  So please

8   listen closely.

9        The plaintiff, Charles Krik, was diagnosed with lung

10  cancer in November 2008.  Mr. Krik contends that his lung

11  cancer was caused by cigarette smoking as well as exposure to,

12  one, asbestos-containing products manufactured, sold, or

13  supplied by Defendant Owens-Illinois; and two, exposure to

14  asbestos-containing products at a facility belonging to

15  Defendant Mobil.  Mr. Krik seeks damages for the injuries he

16  contends were caused by defendants.

17       The defendants deny that they were negligent toward

18  Mr. Krik, and also deny that their conduct caused Mr. Krik's

19  cancer.  All three -- all two defendants contend that Mr.

20  Krik's cigarette smoking caused his cancer.

21       Defendant Owens-Illinois also contends that it is not

22  liable for any injuries suffered by Mr. Krik during his naval

23  service because Owens-Illinois was a government contractor that

24  complied with the United States Government's regulations.

25       Raise your hand if you happen to have heard anything

1  about this case or know anything about this case.

2  Okay.  I see no hands in response to that.

3  Now I will ask the lawyers to introduce themselves

4  and anyone else at counsel table, starting with the plaintiff.

5  MR. McCOY:  Thank you, Your Honor.

6  Yes.  My name is Robert McCoy, Bob McCoy, and with me

7  is Dan Hausman.  And today for our jury selection is Allen

8  Vaughan from our offices, Casciato Vaughan Law Offices, who is

9  based in Chicago.  Also with us is Charles Krik, and over back

10  here is his wife, Mary Krik.

11  THE COURT:  Okay.  Thank you, Mr. McCoy.

12  MR. McCOY:  All right.

13  THE COURT:  For the defendants?

14  MR. CASMERE:  Good morning.  My name's Edward

15  Casmere, and I represent Owens-Illinois.  I am from the law

16  firm of Schiff Hardin here in the city.  And with me is my

17  paralegal, Michael Barron; my assistant, Paul Jepsen; and my

18  co-counsel, who I'll let him introduce himself.

19  MR. WATSON:  Good morning.  My name is Brian Watson.

20  I'm also with the same law firm as Mr. Casmere.

21  MR. MORRIS:  Good morning, ladies and gentlemen.

22  My name is Pat Morris, and I'm here on behalf of

23  Mobil.  This is Mr. Bedouin Joseph from Mobil.  And with me are

24  my colleagues, David Fanning and Jerry Blackwell.

25  MR. BLACKWELL:  Good morning.

1          MR. MORRIS:  Thank you.

2          THE COURT:  Does anyone recognize any of the lawyers

3    or individuals involved in the case in the courtroom?

4          (Prospective juror raised hand.)

5          THE COURT:  Yes.

6          PROSPECTIVE JUROR SCHMAL:  I'm not sure, but does

7    Mr. Morris teach trial ad. at Chicago Kent at any point?

8          MR. MORRIS:  Yes.

9          PROSPECTIVE JUROR SCHMAL:  You did.  I might have

10   been a student.  I'm not sure.

11         THE COURT:  Okay.  And you are --

12         PROSPECTIVE JUROR SCHMAL:  Ms. Schmal.

13         THE COURT:  -- Ms. Schmal?  Okay.  Thank you for

14   pointing that out.  We'll talk about that when we get to you

15   individually.

16         Okay.  You should have received a letter down in the

17   jury room, and I don't know if you've had a moment to take a

18   look at it, but attached on the last page of that is a list of

19   names of people who may be mentioned during the trial or who

20   may be witnesses in the trial.

21         If you've had an opportunity to look at it and any of

22   you recognize any of the people on that list, raise your hand

23   now.  We'll also cover this individually.  But if you've had a

24   moment and you spot anybody, raise your hand now.

25         Okay.  I see no hands in response to that.

1          We're now going to start the individual questioning

2     and we're going to do that in sections. And I'm going to focus

3     first on the first 14 people here that we have in the jury box,

4     and we're going to start with Mr. Janczak.

5          PROSPECTIVE JUROR JANCZAK: Yes.

6          THE COURT: And we're going to give you a microphone,

7     and I'm going to ask you to stand and, using the microphone, if

8     you could answer the questions that are on the letter, starting

9     with your name. And run through those questions and then we'll

10    take it from there.

11         PROSPECTIVE JUROR JANCZAK: Hello. John Janczak.

12    Hoffman Estates, Illinois. Yeah, Hoffman Estates, Illinois. I

13    own.

14         I went to school in Hoffman Estates High School and

15    Carthage College in Kenosha. No military. No family in

16    military.

17         I work in sales, staffing. I place people for a

18    living. We're on straight commission. And that's in

19    Schaumburg. My general duties are -- it's all manufacturing,

20    engineering, production.

21         Married. I have two kids, a boy with Down syndrome

22    and a 15-month-old baby, a little girl.

23         And my wife, she does commercial real estate. She

24    travels.

25         Never sat on a jury before. My mom did I think eight

1    years ago in a jury.  My father had cancer.  I don't smoke.

2          Hobbies.  All sports.  I don't watch the news.  I

3    just follow sports.  And I don't really read, to be honest with

4    you.

5          And I don't know anybody on the list of names.

6          THE COURT:  And could you tell me a little bit about

7    your -- was it your father who had cancer?

8          PROSPECTIVE JUROR JANCZAK:  Yeah.

9          THE COURT:  What type of cancer was it?

10         PROSPECTIVE JUROR JANCZAK:  Prostate, about two years

11   ago.  He's okay.

12         THE COURT:  Okay.  Okay.  Thank you.  You could pass

13   the microphone down to Mr. Babington.

14         PROSPECTIVE JUROR BABINGTON:  Good morning.  My name

15   is Stephen Babington.  I currently live in Northfield,

16   Illinois.  Moved there five months ago from Chicago, the

17   Lakeview area.

18         I have a Bachelor of Science degree in business

19   administration.

20         My father was in the Navy.  And no one in my

21   household is in the military.

22         For the past ten years, I've been in food service.

23   Currently, I'm the culinary director for a food manufacturing

24   company, and prior to that worked for a company called Sodexo

25   as a resource manager.

1          I've been married for 24 years.  I have two

2    college-age daughters.

3          I have never sat on a jury before.  No one in my

4    immediate family has been involved in a legal lawsuit or civil,

5    criminal, or grand jury case.

6          No one close to me has ever suffered from cancer, and

7    I am a seldom smoker.

8          I enjoy the outdoors, hunting, fishing, water sports.

9    I get my news from the paper.  I still enjoy reading the paper.

10   I watch educational programs, Nova, Frontline.  Will watch

11   television through Netflix, kind of binge-watching, as they

12   call it these days.  And as far as the internet, I regularly

13   just visit news sites.

14         And I do not recognize any of the names of the list

15   of people on the previous -- on the page behind.

16         THE COURT:  Okay.  Any particular newspaper that you

17   subscribe to?

18         PROSPECTIVE JUROR BABINGTON:  The Wall Street

19   Journal.

20         THE COURT:  Okay.  Thank you.  You can pass the

21   microphone down to Ms. McGee.

22         PROSPECTIVE JUROR McGEE:  Could I answer in private?

23         THE COURT:  Do you want to answer all the questions

24   in private?

25         PROSPECTIVE JUROR McGEE:  Yes, please.

1    THE COURT:  Okay.  Let's go to the sidebar, please.

2    (Proceedings heard at sidebar on the record:)

3    PROSPECTIVE JUROR McGEE:  My name is Tamara McGee.  I

4    live in South Holland, Illinois.  I actually haven't had a

5    stable residence for the last five years.

6    I'm unemployed for the last five years.  The five

7    years previous to that, I was a delivery driver.

8    All of my uncles were in the military.  I don't have

9    any degrees.  I did finish high school.

10   I'm single.  I don't have any kids.

11   I have never been on a jury before.  None of my

12   family has been on a jury or involved in a lawsuit.

13   My mother died from lung cancer.  I don't smoke.

14   I don't have any hobbies besides looking for a job.

15   I occasionally watch Netflix.  I get my news from the internet.

16   And that's it.  I don't recognize any of the people

17   on the list either.

18   THE COURT:  All right.  And you said your mother had

19   lung cancer?

20   PROSPECTIVE JUROR McGEE:  Yeah.

21   THE COURT:  About how long ago was that?

22   PROSPECTIVE JUROR McGEE:  '09.

23   THE COURT:  '09?

24   PROSPECTIVE JUROR McGEE:  2009.

25   THE COURT:  And what happened?

1    PROSPECTIVE JUROR McGEE:  Well, she was a chronic

2  smoker, but I think that she got it from the place where she

3  worked.  They had, like, a chronic mold problem.  And, like,

4  she immediately got sick when they had a flood.  Like a year

5  later, she got really sick and she died the next year.

6    THE COURT:  Okay.  And I think you answered this

7  already, but have you ever been involved in a lawsuit --

8    PROSPECTIVE JUROR McGEE:  No.

9    THE COURT:  -- or criminal case?

10   PROSPECTIVE JUROR McGEE:  No.

11   THE COURT:  Okay.  Thank you.  You can take your

12  seat.

13    (End of proceedings at sidebar.)

14   THE COURT:  Ms. Kozubik.

15   PROSPECTIVE JUROR KOZUBIK:  My name is Debra Kozubik.

16  I live in Westmont, Illinois.

17    I do not go to school.  I am not in the military.  I

18  have an Associate's degree in business.

19    For my employment, I've been a store manager for the

20  Vitamin Shop for nine years, and now I am an assistant manager

21  for See's Candies.

22    I am single.  I have no children.  No one lives in my

23  household.

24    I have never sat on a jury before.

25    I have sued a couple times.  I've done a class-action

1    lawsuit and have also sued my past employer.

2            My father suffered of -- stomach cancer and esophagus

3    cancer, but that was 15 years ago.  He passed away.

4            I had a past tobacco smoking.  I smoked for 16 years,

5    and I haven't had a cigarette in 10 years.

6            My major hobbies and interests are working out,

7    eating healthy.  I like to watch the news.  I like to watch

8    comedy, TV shows.  I like to search the internet.

9            And I don't know anyone of the list.

10           THE COURT:  Okay.  You mentioned that you were a

11   plaintiff in a few lawsuits.

12           PROSPECTIVE JUROR KOZUBIK:  Yes.

13           THE COURT:  Did those -- any of those go to trial?

14           PROSPECTIVE JUROR KOZUBIK:  No.  They have not gone

15   to trial.

16           THE COURT:  Okay.  And would --

17           PROSPECTIVE JUROR KOZUBIK:  I mean, settlements.

18   They were settled.

19           THE COURT:  But did any end up in a courtroom going

20   to trial?

21           PROSPECTIVE JUROR KOZUBIK:  No.

22           THE COURT:  And would you be able to put aside your

23   personal experience with the legal system and make a decision

24   based solely on the evidence in this case and the legal

25   instructions that I would give you at the end of the trial?

1          PROSPECTIVE JUROR KOZUBIK:  Yeah, yes, yes.

2          THE COURT:  Okay.

3          PROSPECTIVE JUROR KOZUBIK:  Sorry.  Yes.

4          THE COURT:  Thank you.  You can pass the microphone

5    down.

6          PROSPECTIVE JUROR McGRADY:  Hi.  My name's Erin

7    McGrady.  I currently live in the west loop in Chicago.  Prior

8    to that -- so I've lived there for two years.  Prior to that, I

9    lived in Evanston.  We rent.

10          I have some graduate college.  I have a Bachelor's

11    degree in -- a Bachelor of Science in biology.

12          I have never served in the military, nor did anyone

13    in my family.

14          My employment information for the last ten years, I'm

15    an HR and compensation analyst right now.  Prior to that, I've

16    been in human resources, more as a generalist.  And I work for

17    an interactive advertising company.

18          My -- I am married.  We've been married for five

19    years.  And he has been a finance manager for car dealerships.

20          I have no children.  We have no other adults living

21    in the household.

22          I have never sat on a jury before.

23          I have been -- my husband and I have been a defendant

24    in a lawsuit.

25          Yes, people in my family have suffered from cancer.

1    My mom was diagnosed with breast cancer when she was about my

2    age and then uterine -- or ovarian cancer as a result of

3    medication from the breast cancer -- I think Tamoxifen --

4    shortly thereafter.

5              I am a regular smoker currently.

6              Major hobbies or interests.  I mean, I work a lot.  I

7    do like to watch TV, mostly of the terrible reality variety

8    and, like, sitcoms and Game of Thrones, that kind of thing.  I

9    don't actually watch the news hardly ever, which is

10   embarrassing.

11             And I do not recognize anyone on the attached list of

12   names.

13             THE COURT:  Before you pass the microphone down, you

14   mentioned that your husband -- you and your husband were

15   defendants in a lawsuit.  Can you tell me a little bit about

16   what type of lawsuit that was?

17             PROSPECTIVE JUROR McGRADY:  Yeah.  It was our

18   previous landlord.  We had some issues with -- he hadn't

19   repaired heat and a broken window.  We moved out, giving him 30

20   days' notice, and we hadn't realized we were in some kind of

21   like never-ending lease, that we didn't sign another lease and

22   yet it was ongoing forever and ever.  We were -- we won the

23   lawsuit.

24             THE COURT:  Okay.  Thank you.  You could pass the

25   microphone down.

1          PROSPECTIVE JUROR RUZICH:  Good morning.  My name is

2     Joy Ruzich.  I reside in Mokena, Illinois.  I've lived there

3     for the past seven years.

4          THE COURT:  If you could use the microphone, please.

5          PROSPECTIVE JUROR RUZICH:  Oh, Jeeze.  Sorry about

6     that.

7          THE COURT:  That's okay.  Thank you.

8          PROSPECTIVE JUROR RUZICH:  Joy Ruzich.  I reside in

9     Mokena, Illinois for the past five to seven years.

10          I'm a high-school graduate.  I have not served in the

11     military, nor has anyone in my family.

12          I'm employed by District 118.  That's in Palos Park.

13     I am a resource aide for a child who is autistic.

14          I am married.  My husband is a printing salesman.  I

15     have four children.  They're all adults and out of our home.

16          I have never sat on a jury.  I have not been involved

17     in a lawsuit.

18          I am a cancer survivor, and my husband is as well.  I

19     am a previous smoker.  Not smoked for the past six-and-a-half

20     years.

21          Major hobbies.  Well, I have kind of varied

22     interests, but shopping is always one of them.

23          I do like to read.  I do watch the 10:00 o'clock

24     news.  I do not watch television programs on a regular basis,

25     just sporadically.  Internet is an occasional.

1          And I do not recognize anyone's name on the list.

2          THE COURT:  What do your adult children do?

3          PROSPECTIVE JUROR RUZICH:  I have one son who's a

4    physical therapist.  I have a daughter who's a medical

5    transcriptionist.  I have another son who's an IT worker.  And

6    my last son is a delivery man.

7          THE COURT:  Okay.  Thank you.

8          PROSPECTIVE JUROR KALLAL:  Hi.  My name is Mike

9    Kallal, and I own a home in LaGrange Park.

10          I've got a BS in business administration.

11          I did not serve in the military.  My father did serve

12    in the military.

13          And I have been in the healthcare field most of my --

14    all my career.  And I presently am an independent contractor

15    representing a molecular diagnostic laboratory as a 1099

16    employee.

17          I am married.  My wife works in the accounting

18    department as a financial specialist.  I have two children, 25

19    and 30.

20          I've never sat on a jury before.  Not been involved

21    in a criminal or civil lawsuit.

22          And my father suffered from cancer as well as my

23    uncle and my aunt.  And I have no smoking history.

24          Usually just anything outdoor related to sports,

25    cycling, hiking, golf, are my interests.  I usually get the

1    news from the internet or from the local news, sometimes the

2    national news, and sometimes Fox News.  And internet sites are

3    basically news sites, informational sites.

4              And I don't recognize anybody on this list.

5              THE COURT:  And your kids who are 25 and 30, what do

6    they do?

7              PROSPECTIVE JUROR KALLAL:  Oh.  The 25 is a home

8    educator, and the 30 is a personal trainer.

9              THE COURT:  Okay.  Thank you.  If you could pass the

10   microphone back up to Ms. McClain-Bitoy.

11             PROSPECTIVE JUROR McCLAIN-BITOY:  Good morning.  My

12   name is Shyeta McClain-Bitoy.

13             I moved to Lisle, Illinois about four months ago.  I

14   came from Lansing, from Crete, and from the City of Chicago.

15             I have a Bachelor's degree in accounting with a -- a

16   Bachelor's degree in business administration with a

17   concentration in accounting.  I have an Associate's degree in

18   mortuary science.

19             I did not serve in the military.  I stopped my life a

20   year and a half ago to take care of my terminally-ill mother.

21   Before that, I used to work for an industrial supply company.

22             I am not married, I'm single.  I have no children.

23   My -- I live in an apartment with my brother and his two kids.

24             I have never served on a jury before.  No one in my

25   house or no one I know personally has ever been convicted of a

1    crime or served in the criminal lawsuit.

2           My mother had inflammatory breast cancer.  She had it

3    for three years.  She passed eight months ago.

4           I have never smoked.

5           I really don't have any hobbies.  And I watch Channel

6    9 News.

7           And I don't recognize anybody on the list.

8           THE COURT:  Okay.  Thank you.

9           PROSPECTIVE JUROR McGREGOR:  Hi.  My -- excuse me.

10   My name is Patricia McGregor.

11          I live in Braidwood, Illinois.  I own my own home for

12   the past seven years.

13          I have a high school diploma.

14          My dad was in the military.  He was in the Army.

15          I've worked for the past 21 years at First Midwest

16   Bank.  I'm a manager of a department that assists commercial

17   clients with internet products and that.

18          I've never sat on a jury.  And I've not been involved

19   in a lawsuit, or no one in my family has as well.

20          No one close to me has suffered from cancer.  I am a

21   regular smoker.

22          I like reading mysteries and listen to the news

23   periodically, read the local paper.

24          And I don't know anyone on the jury -- or on the

25   list.

1          THE COURT:  Is there a particular local paper that

2    you read?

3          PROSPECTIVE JUROR McGREGOR:  The Daily Journal.  It's

4    a Kankakee paper.

5          THE COURT:  Thank you.

6          PROSPECTIVE JUROR LEVEY:  Hi.  Good morning.  My name

7    is Caryn Levey.

8          I live in Highland Park.  I own a home.  I've been

9    there since 2002.

10          I have a Bachelor's degree in business

11    administration.

12          I currently work for a bank.  Been in banking and

13    finance my entire working career.  I work, since 2007, with

14    wealth management private banking.

15          Married, have two children, a freshman in high school

16    and a sixth-grader.

17          I've never been on a jury before.  My husband was

18    involved in a lawsuit.  He was sued by a former business

19    partner.

20          My father passed away from cancer three years ago,

21    and my mother, both my brothers, and myself have all

22    experienced thyroid cancer.  I have never been a smoker.

23          Hobbies are running, cycling, skiing.  I read kind of

24    romance and mystery novels.  I do watch television.  Watch --

25    if I make it through the 10:00 o'clock news, watch the 10:00

1    o'clock news and morning news prior to work.

2            And I don't recognize any names on the list.

3            THE COURT:  And what does your husband do?

4            PROSPECTIVE JUROR LEVEY:  Right now, he's unemployed.

5    He's been in real estate and banking as well.

6            THE COURT:  Okay.  Thank you.  You can pass the

7    microphone down.

8            PROSPECTIVE JUROR HUSSAIN:  Hello there.  My name is

9    Syed Hussain.  I'm from Chicago side.

10           And I do have a Bachelor degree in economics and

11   commerce.  No military experience.

12           I work with Micro Center.  I repair Mac computers,

13   Macintosh computers there.

14           I do -- I got three boys.  Married.  My wife is a

15   housewife.

16           And let's see.  Never been in jury before.  Never

17   been in lawsuit.

18           No cancer in my family or anyone else.  No smoking or

19   never been smoked in my life.

20           Hobbies.  Playing with my kids, watching Cartoon

21   Networks.

22           And I don't know anyone in the list.

23           THE COURT:  And I didn't catch, what part of the city

24   do you live in?

25           PROSPECTIVE JUROR HUSSAIN:  I live in Rogers Park.

1          THE COURT:  Okay.  Thank you.  You can pass the
2     microphone down.
3          PROSPECTIVE JUROR SCHMAL:  My name's Ann Schmal.  I
4     live in Chicago.  I own.
5          I have a Bachelor's in engineering from Purdue and a
6     law degree from Chicago Kent.
7          My dad was in the military.  He was in the Navy for a
8     year or two in the late '40s.
9          I'm an attorney.  I'm not married.  I don't have any
10    kids.  My mom currently lives with me.
11          I've never been on a jury.
12          My dad was involved in a lawsuit, but it was just
13    like a business-related thing.
14          My dad had had cancer.  I don't smoke.
15          I like sports and cooking.  I do read.  I read the
16    Chicago Tribune and Channel 7 News.  TV programs, kind of
17    binge-watch, like somebody else said earlier, Game of Thrones
18    right now.
19          And I don't know the names of any of the people on
20    the list.
21          THE COURT:  And what kind of law practice do you
22    have?
23          PROSPECTIVE JUROR SCHMAL:  I do primarily insurance
24    coverage and insurance defense, but we do other things, too.
25    But that's the bulk of what I do.

1           THE COURT:  Okay.  Thank you.

2           PROSPECTIVE JUROR LOID:  Good morning.  My name is

3   Jen Loid.  I am from Naperville, Illinois.

4           I have a degree in speech communication.

5           I work at an insurance company.  I determine

6   liability; and then if we are liable, I handle the vehicle and

7   the injury claim.

8           My fiancé works at the same insurance company in the

9   workers' compensation department.

10          I've never been on a jury before.  I've never been

11  involved in a lawsuit.

12          My grandparents have suffered from cancer when I was

13  younger.  No smoking history.

14          My hobbies are going to live supporting events,

15  concerts.  I enjoy shopping, hanging out with my niece and

16  nephew.  I watch the news.  I read the Naperville Sun.

17          And I don't recognize any names on the list.

18          THE COURT:  Okay.  Thank you.

19          PROSPECTIVE JUROR ALVARADO-GARCIA:  Good morning.  My

20  name is Nora Alvarado-Garcia.

21          I live in Chicago by Midway Airport.  I have lived

22  there for over 22 years.

23          I have a Bachelor's degree in computer science and

24  accounting.

25          I never served in the military.  My niece is in

1    the -- currently in the Navy.

2           I've been employed for over 30 years at Department of

3    Veterans Affairs.  I'm an IT specialist.

4           My husband also works for the VA.  He's an HVAC tech.

5           We've been married for 20 years.  I have three

6    children, ages 28, 18, and 17.  My 28 is unemployed.  My

7    daughter's in college, in University of Wisconsin, Milwaukee.

8    And my son attends De LaSalle.

9           I've been on a jury before, and we did reach a

10   verdict.

11          My mom had a lawsuit against Home Depot, and it was

12   settled out of court.  And I think my son -- my husband did

13   before my time.

14          Let's see.  I had an aunt that died from breast

15   cancer, an uncle from prostate.  And no one in my family

16   smokes.

17          My hobbies are soccer and boy scouting, and I also

18   like Game of Thrones series, the Walking Dead.  I get my news

19   from the internet and the 10:00 o'clock news.

20          And I don't know anybody on this list.

21          THE COURT:  Okay.  Thank you.

22          I am now going to ask some questions directed to this

23   whole group of 14, and I'll ask for a show of hands, and then

24   I'll ask some follow-up questions.  Again, we're just focusing

25   on this first group of 14 here.

1       Have you or anyone close to you had any serious
2    breathing problems or lung conditions?
3       Okay.  Why don't we start in the front row with Ms.
4    Kozubik.
5       PROSPECTIVE JUROR KOZUBIK:  Yes.
6       THE COURT:  Well, let's get you the microphone first
7    and --
8       PROSPECTIVE JUROR KOZUBIK:  My father had the
9    esophagus, so it was making him a hard time breathing.
10      THE COURT:  Okay.  Anyone else in the front row with
11   experience with breathing problems or lung conditions?
12      PROSPECTIVE JUROR KALLAL:  That would just be two of
13   my uncles.  One had emphysema.
14      THE COURT:  And, I'm sorry, you are Mr. Kallal?
15      PROSPECTIVE JUROR KALLAL:  Oh, Kallal.
16      He was on oxygen in his last years of his life.  And
17   then another uncle did serve in the Navy, and he had
18   mesothelioma with chronic lung conditions.
19      THE COURT:  Okay.  Thank you.
20      Anyone in the second row with experience with
21   breathing problems or lung conditions?
22      PROSPECTIVE JUROR SCHMAL:  I just -- I have an aunt
23   who has emphysema.  She's 79.
24      THE COURT:  Okay.  You are Ms. Schmal?
25      PROSPECTIVE JUROR SCHMAL:  Yeah.

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR LEVEY:  Both my children have

3     asthma.  And my father passed away from lung cancer.  And my

4     mom is experiencing respiratory problems from the secondhand

5     smoke throughout their marriage.

6          THE COURT:  And that's Ms. Levey, is that right?

7          PROSPECTIVE JUROR LEVEY:  Yes.

8          PROSPECTIVE JUROR McCLAIN-BITOY:  My

9     great-grandmother, she's 84, she has asthma also, but she also

10    smoked for 30-plus years.  So she can barely take maybe 20

11    steps before she's out of breath.  In the last month of my

12    mother's -- before she passed, she was on a respirator for

13    24/7, so --

14         THE COURT:  And that's -- and you're Ms.

15    McClain-Bitoy, right?

16         PROSPECTIVE JUROR McCLAIN-BITOY:  Yes, sir.

17         THE COURT:  Okay.  Thank you.

18         Have you or anyone close to you had any experience

19    with asbestos?  Any asbestos experience among the group of 14?

20         Okay.  No responses to that question.

21         Have you or anyone close to you been involved in a

22    claim for disability benefits or workers' compensation?

23         Get the microphone to the front row to Ms. Kozubik.

24         PROSPECTIVE JUROR KOZUBIK:  Yes.  I filed FMLA with

25    my employer because my mother's very sick, and they -- I

1    know -- I -- well, I feel that they were trying to find a way

2    out, so they ended up letting me go.  So after that, I tried to

3    file workmen's compensation, and I was denied.

4            THE COURT:  Okay.  Thank you.

5            And there was someone else in the front row?  Ms.

6    McGrady?

7            PROSPECTIVE JUROR McGRADY:  I don't know if this is

8    relevant, but I was on short-term disability for pneumonia

9    about five years ago.

10            THE COURT:  And did you have to file a claim in

11    order to --

12            PROSPECTIVE JUROR McGRADY:  With the short-term

13    disability company, yeah.  But it was uneventful.

14            THE COURT:  All right.  Mr. Janczak?

15            PROSPECTIVE JUROR JANCZAK:  I don't know if this

16    matters, but I deal with workers' comp. at work with our

17    contractors.

18            THE COURT:  And what's your relationship to the

19    workers' comp. process and system?  What do you do?

20            PROSPECTIVE JUROR JANCZAK:  Not much, but they just

21    call in and then I'll hand them off to somebody else.

22            THE COURT:  Okay.

23            PROSPECTIVE JUROR JANCZAK:  I didn't know if that

24    mattered, so --

25            THE COURT:  Okay.  Anyone else with experience with

1    disability benefits or workers' compensation?

2           Okay.  Have you or anyone close to you had experience

3    with industrial construction, chemicals, or refineries?

4    Industrial construction, chemicals, or refineries?

5           No responses to that question.

6           PROSPECTIVE JUROR JANCZAK:  I have --

7           THE COURT:  Have you -- oh, Mr. Janczak?

8           PROSPECTIVE JUROR JANCZAK:  I don't know if this

9    matters.  I have contractors on the BP up at the slope.

10          THE COURT:  And what is it that your contractors do?

11          PROSPECTIVE JUROR JANCZAK:  Piping and checking.

12   They're checkers and pipers.

13          THE COURT:  And do you have experience in that kind

14   of industrial work yourself?

15          PROSPECTIVE JUROR JANCZAK:  Well, at times, I'll

16   recruit on positions down in Houston, but it's -- I do a lot of

17   Chicagoland.  But every once in a while, I jump on with

18   Houston.

19          THE COURT:  So you're generally then familiar with

20   the type of work that those people do, but that's not the --

21   but you're involved in placing them?

22          PROSPECTIVE JUROR JANCZAK:  Yeah, correct, yeah.

23          THE COURT:  Okay.  Okay.  Ms. McGrady?

24          PROSPECTIVE JUROR McGRADY:  I am not sure what his

25   job was, but my grandpa worked for ExxonMobil at the No. 2 mine

1    in Carlinville for many years.  He retired with Exxon after

2    working there I think his whole career, basically.

3                THE COURT:  Okay.  Thank you.

4                Any other folks with experience with industrial

5    construction, chemicals, or refineries?

6                Have you or anyone close to you had any experience

7    with Owens-Illinois or ExxonMobil?  And with respect to

8    ExxonMobil, in particular the Mobil Joliet refinery?

9                Okay.  No responses to that.

10               Have you received any legal education or training?

11   Ms. Schmal is the only one.

12               Anything that we haven't already talked about, Ms.

13   Schmal?

14               PROSPECTIVE JUROR SCHMAL:  No.

15               THE COURT:  Okay.  If you are selected as a juror,

16   you will take an oath to follow the legal instructions that I

17   give you and to apply that law to the facts of this case.

18   Sometimes jurors listen to a judge's instructions and they say,

19   "If that's the law, it ought to be changed."  You may not apply

20   the law the way you think it should be instead of the way I

21   have stated it to you.

22               Do any of you believe that you would have any

23   difficulty in accepting the instructions as I give them and

24   applying the law as I will state it to the facts as you find

25   them?

1          No responses to that question.

2          Do any of you have any philosophical, moral,

3    religious, or any other beliefs that make it difficult or

4    impossible for you to sit as a juror or make a judgment about

5    the proper verdict at the end of the trial?

6          Ms. McGee?  If we could pass the microphone to Ms.

7    McGee.

8          PROSPECTIVE JUROR McGEE:  I just think that my

9    personal issues would interfere with me being an unbiased

10   juror.

11         THE COURT:  Okay.  We'll talk about that in a moment.

12   Thank you.

13         Mr. Hussain?  If you could pass the microphone to

14   Mr. Hussain, please.

15         PROSPECTIVE JUROR HUSSAIN:  I got to pray five times

16   in a mosque.

17         THE COURT:  Okay.  And so would the issue be just

18   finding the time --

19         PROSPECTIVE JUROR HUSSAIN:  Yeah.

20         THE COURT:  -- in the day?

21         PROSPECTIVE JUROR HUSSAIN:  Yes.

22         THE COURT:  Okay.  Anyone else?  Okay.

23         Is there anything about what you've heard so far

24   about this case and the parties that would make it difficult

25   for you to be fair to both sides?

1        No responses to that question.

2        Is there anything that I haven't talked about but is

3   on your mind and may make it difficult for you to serve as a

4   juror, to follow the instructions as I gave them to you, or to

5   make a decision at the end of the case?  Ms. Levey?

6        PROSPECTIVE JUROR LEVEY:  It would be more the time

7   constraint, with taking the time off of work and having to

8   reschedule travel for business.

9        THE COURT:  Okay.  We'll talk about that in a moment.

10        Mr. Janczak?

11        PROSPECTIVE JUROR JANCZAK:  Yeah.  One of mine would

12   be I have an 11-year-old boy with Down syndrome, and I get him

13   on the bus every day, and I kind of have to strap him in and

14   get him off.

15        And the second fact is I am on straight commission,

16   so the time getting out of work is pretty difficult.

17        THE COURT:  And what time in the morning do you have

18   to assist your son?

19        PROSPECTIVE JUROR JANCZAK:  8:17 to be exact.  And I

20   got a 15-month-old that I got to get off to daycare, so I'm at

21   two different places before I even get to work.

22        I work, like, two minutes away, so -- and my wife

23   leaves at about 6:00 in the morning.

24        THE COURT:  Okay.  Thank you.

25        Many of you mentioned some connection or experience

1     with cancer or cigarette smoking for that matter.

2            Would any of you have any difficulty in putting aside

3     what your personal experiences with cancer may have been or

4     cigarette smoking to the extent that any decision that you have

5     to make as a juror would have to be based on the evidence in

6     the courtroom and it would have to be based on the evidence and

7     the legal instructions that I give you?  Would anyone --

8     notwithstanding your personal experience with cancer or smoking

9     or any of the other types of issues we've talked about, would

10    any of you have any difficulty with that?  Making a decision

11    based on the evidence and the legal instructions?

12            Okay.  No responses to that.

13            And then let me ask any of you -- and we've talked a

14    little bit about this -- about the length of the case, that

15    this trial is going to take about two weeks to get completed.

16    We will generally be starting every morning at about 10:00

17    a.m., and we'll be ending the day at about 4:30.  So we do that

18    schedule to give people enough cushion in the mornings and in

19    the afternoons to adjust their commutes and make sure they can

20    get down here, and also leave at a time when they might also be

21    able to attend to other matters that they have in their very

22    busy lives.

23            Would that schedule and the length of the case pose

24    an extreme hardship for any of you?

25            And let's start -- and we'll start with Mr. Janczak

1    and work our way down.

2         PROSPECTIVE JUROR JANCZAK:  Mine's being on straight

3    commission.

4         THE COURT:  Okay.  So you -- because you've got a

5    sales position based on --

6         PROSPECTIVE JUROR JANCZAK:  Yes.

7         THE COURT:  -- commission, you think it would be

8    difficult?

9         PROSPECTIVE JUROR JANCZAK:  Yeah, because -- well, I

10   place people for a living, so if a company needs someone and

11   they need someone within 24 hours, you know, common sense,

12   they'll move on to the next recruiter if they can't find

13   someone, and there are a lot of recruiters out there.  It's all

14   about speed and getting the right talent fast.

15        THE COURT:  Okay.  Thank you.

16        Mr. Babington?

17        PROSPECTIVE JUROR BABINGTON:  I currently work in

18   Pleasant Prairie, Wisconsin, so I do have to travel a lot for

19   business.  I was just in Montreal at a trade show.  I'm

20   scheduled to leave town again next week.  And we're very busy

21   at the moment.  And just being the head of culinary, it's -- it

22   would be due to -- undue hardship.

23        THE COURT:  Tell me a little bit about your travel

24   plans next week.  What --

25        PROSPECTIVE JUROR BABINGTON:  I have to go to

1  Arizona, and then after that, I'm going to Atlanta for various

2  trade shows that we present to.

3          THE COURT:  And is there anyone else who can cover

4  for you at work?

5          PROSPECTIVE JUROR BABINGTON:  Well, it's a large

6  group.  We set up, present, and break down.  There are

7  generally about six of us that travel together.  You know,

8  there's really nobody to take my place.

9          THE COURT:  Okay.  Anyone else in the front row?

10          PROSPECTIVE JUROR McGEE:  I had to borrow money just

11  to get here.  I'm actually -- I just got grant money to go to

12  truck driving school so that I can try and fix my life.  So I

13  really -- I don't think that I could focus on the facts and

14  make sure that, you know, I'm being a good juror to give a fair

15  judgment.

16          THE COURT:  Okay.  Thank you.

17          Ms. Kozubik?

18          PROSPECTIVE JUROR KOZUBIK:  Six months ago, I was

19  called for summons for jury duty and I had a hardship excuse

20  because my mother was ill, and my mother's still very ill.  In

21  fact, the doctor wrote a letter that I am her primary

22  caregiver, if you would like that for -- I sent it in to the

23  jury this time.  And when I called the jury, they did say that

24  I was only allowed one excuse, so that's why I am here.

25          THE COURT:  Okay.  Thank you.  We'll -- we're taking

1    everything into account.

2              PROSPECTIVE JUROR KOZUBIK:  Okay.

3              THE COURT:  Anyone else with an extreme hardship due

4    to the length of this trial?

5              PROSPECTIVE JUROR RUZICH:  Actually, it's not

6    extreme.  I do work at a public school, and we do have PARCC

7    testing, the second PARCC coming up.  Since I work with a child

8    who's autistic, it's generally in his best interest that I am

9    there.  I was hoping for something shorter.

10             THE COURT:  Okay.  Anyone else?

11             And keep in mind, I am putting the emphasis on

12   extreme hardship because we all appreciate that jury service is

13   an inconvenience.  Sometimes, though, that's the nature of our

14   duties as American citizens is to sit on juries.  But we will

15   take into account people's potential hardships so that we can

16   make sure that we get a fair and impartial jury in the case.

17             Mr. Kallal?

18             PROSPECTIVE JUROR KALLAL:  Well, with that said, I am

19   an independent contractor on a hundred percent commission, as

20   my role is to set up, provide lab services in the healthcare

21   offices.  So for two weeks might be a little stretch with

22   getting no prospects, no income.  I'm getting -- and I don't

23   have vacation because I'm an independent contractor.

24   Otherwise, I would be, you know, very happy to take vacation

25   and provide the service.  But for this time, that's my issue

1    with that right now, is the time constraint, lack of income.

2              THE COURT:  Okay.  Thank you.

3              Anyone in the second row?

4              PROSPECTIVE JUROR HUSSAIN:  My wife suffer from

5    seizures, so I should be there when she need me.  I think two

6    weeks will be very painful for me, I guess.

7              THE COURT:  Is anyone with her today?

8              PROSPECTIVE JUROR HUSSAIN:  No one.

9              THE COURT:  Anyone else in the second row?

10             Okay.  Let me see the lawyers off to the sidebar,

11   please.

12        (Proceedings heard at sidebar on the record:)

13             THE COURT:  Does anybody have any follow-up questions

14   they'd like me to ask any of this first group of 14?

15             MR. CASMERE:  Your Honor, Edward Casmere.

16             No. 4 was extremely emotional when she started

17   talking about her father, and I -- if we could just ask a

18   question of whether or not this situation would be a little bit

19   too close to home for her, and also talking about what's going

20   on with her mother.  I'm concerned that she was too emotional

21   to even talk about it.

22             THE COURT:  Uh-huh.

23             MR. CASMERE:  And I'm not sure that -- do we need to

24   ask more questions of No. 3?  I mean, I believe that she said

25   she can't be fair and she couldn't focus.  So if you're not

```
 1    satisfied, I would ask that we ask, probe a little bit more on
 2    that.
 3              THE COURT:  Okay.
 4              MR. CASMERE:  And No. 7, he said his uncle had
 5    mesothelioma.  I think that's something that's probably --
 6              THE COURT:  We could follow up on that.
 7              MR. CASMERE:  Yeah.
 8              MR. MORRIS:  And I think that might be best done over
 9    here, though, Judge --
10              THE COURT:  Yes.
11              MR. MORRIS:  -- if that's okay with you.
12              THE COURT:  Yes.
13              MR. McCOY:  I don't have any --
14              THE COURT:  Any other follow-ups?
15              MR. McCOY:  I had a couple, Judge.  Are you going to
16    be asking the questions --
17              THE COURT:  Yes.
18              MR. McCOY:  -- for the attorneys?  Okay.  So we won't
19    be asking ourselves?  Okay.
20              I wanted to make sure I understood Ms. McGregor, her
21    background.  She said it so quickly, I didn't quite get all of
22    her education, where she lived, and so on.
23              That's one.  I wanted to know what Kallal's -- he's
24    No. 7 -- what his understanding was of what his uncle did in
25    the Navy.
```

1          THE COURT:  Okay.

2          MR. McCOY:  Where he -- you know, what -- and some

3    detail, you know, like to see how close this was to where

4    Mr. Krik was, what type of ship, when, and so on, what type of

5    duties did he have.

6          I wanted to find out as a general question for all

7    those people who said that they had -- are current smokers,

8    whether they've tried to quit or have any of the current

9    smokers tried to quit.  That's my question.

10          THE COURT:  I am not going to ask that.  I got their

11    smoking history and I asked whether they could be fair in light

12    of their smoking history, so I am not going to ask any more on

13    that.

14          MR. McCOY:  Yeah, I agree on Ms. Kozubik, she's

15    pretty emotional.  I was still wondering, you know, when she

16    says she's her mother's primary caregiver, what that situation

17    really entailed.

18          THE COURT:  Does anyone object to a "for cause" on

19    Ms. Kozubik at this point?

20          MR. CASMERE:  No.

21          MR. McCOY:  No.

22          THE COURT:  Okay.  So we'll just -- you can just note

23    her as a "for cause" at this point.

24          MR. BLACKWELL:  And probably Ms. McGee, Your Honor.

25          THE COURT:  I want to ask some follow-ups on Ms.

1 McGee.

2 MR. CASMERE: Mr. Hussain has his wife's seizures. I

3 don't know if you feel as though you have enough information

4 about that. It's a little hard to hear from where it was.

5 THE COURT: I will ask him some follow-ups.

6 MR. BLACKWELL: Your Honor, could we know -- with

7 respect to juror 14, Ms. Alvarado-Garcia, she's been on a jury

8 before. Could we ask what kind of case it was, if she was the

9 foreperson?

10 MR. McCOY: Yes.

11 THE COURT: Okay. I will ask whether it was a civil

12 or criminal case.

13 MR. BLACKWELL: All right.

14 THE COURT: Any other follow-ups on this first 14?

15 MR. McCOY: For Ms. Schmal, Judge -- she's the

16 insurance defense background -- I'd like to know from her -- I

17 mean, I think she should go for cause. It just seems obvious

18 to me she's intimately involved with defense strategies in

19 these types of matters.

20 THE COURT: She hasn't said that she can't be fair.

21 And I asked --

22 MR. McCOY: Yeah.

23 THE COURT: -- a question about whether --

24 MR. McCOY: Okay.

25 THE COURT: -- they could be fair --

1          MR. McCOY:  So I --

2          THE COURT:  -- based on what they know, so --

3          MR. McCOY:  I think I'd like to know what her

4  knowledge is of defense strategies in insurance defense cases.

5  It seems like she's got a fairly intimate background.

6          THE COURT:  Well, whatever her -- lots of jurors have

7  backgrounds.

8          MR. McCOY:  Right.

9          THE COURT:  The ultimate question is whether they can

10  be fair or not, and I'd asked that question.  I'm not going to

11  ask any more on that.

12          Any other follow-ups on this group of 14?  Okay.  I'm

13  going to bring Ms. McGee back here.

14          Ms. McGee, could we see you over to the side, please?

15      (Prospective Juror McGee enters sidebar.)

16          THE COURT:  All right.  Ms. McGee, I gather you're

17  having some hard times right now and you don't really want

18  to --

19          PROSPECTIVE JUROR McGEE:  I understand.

20          THE COURT:  You don't really want to be here, and I

21  understand that.

22          PROSPECTIVE JUROR McGEE:  It's not that I don't want

23  to be here.  Just I don't think I can focus while I'm here.

24          THE COURT:  And is it because of your employment

25  situation and the financial difficulties you're having?

1          PROSPECTIVE JUROR McGEE:  It's giving me extreme

2     anxiety.  Like my heart is racing right now.

3          THE COURT:  Okay.

4          PROSPECTIVE JUROR McGEE:  You know, I can't focus.  I

5     don't want to be the reason that things go array.

6          THE COURT:  Okay.  Thank you.  You can have a seat,

7     please.

8          (Prospective Juror McGee exited sidebar.)

9          THE COURT:  Are there any objections to excusing Ms.

10    McGee for cause?

11          MR. BLACKWELL:  No.

12          MR. CASMERE:  No, Your Honor.

13          MR. BLACKWELL:  Don't think so, Your Honor.

14          THE COURT:  Mr. Kallal, could we see you off to the

15    side, please?

16          (Prospective Juror Kallal enters sidebar.)

17          THE COURT:  You mentioned a relative who had

18    mesothelioma.

19          PROSPECTIVE JUROR KALLAL:  Yes.

20          THE COURT:  What was -- you know, what knowledge do

21    you have about that?  And what's been your experience with

22    that?

23          PROSPECTIVE JUROR KALLAL:  Well, he -- well, he was

24    my first uncle, and he served in the Navy, and he was diagnosed

25    with mesothelioma.  It's an asbestos-causing cancer.

1    THE COURT:  And do you know what he did in the Navy?

2    PROSPECTIVE JUROR KALLAL:  Actually, I don't, no.

3    THE COURT:  And did you have much experience with him

4    while he was suffering from the disease?

5    PROSPECTIVE JUROR KALLAL:  While he was ill?  Yeah,

6    yeah.

7    THE COURT:  And would you be able to put that to one

8    side and make a decision based on the evidence in the case and

9    legal instructions that I might give you at the end of the

10   case?

11   PROSPECTIVE JUROR KALLAL:  Well, I'd like to think

12   that I could, although, you know, I -- how I started seeing him

13   was on oxygen.  I mean, he reminds me, you know, of my uncle

14   going through it --

15   THE COURT:  Uh-huh.

16   PROSPECTIVE JUROR KALLAL:  -- type of thing.  So I

17   could sit there and say I would, but I'm not -- till maybe I

18   start seeing the evidence in the case and the presentation and

19   background, right?  I mean, I -- that's my honest answer.

20   THE COURT:  No, and that's --

21   PROSPECTIVE JUROR KALLAL:  I want to be as accurate

22   as I can --

23   THE COURT:  That's the --

24   (Defense counsel whispering to Court.)

25   THE COURT:  Did your uncle work anywhere else other

1    than the naval service that --

2              PROSPECTIVE JUROR KALLAL:  Yeah.  He was a barber.

3              THE COURT:  He was a barber?

4              PROSPECTIVE JUROR KALLAL:  Yeah.

5              THE COURT:  Okay.  And, you know, we ask a lot of our

6    jurors.  And people have a lot of backgrounds and

7    experiences --

8              PROSPECTIVE JUROR KALLAL:  Uh-huh.

9              THE COURT:  -- that they bring to jury service, and

10   we don't ask people to forget who they are or where they come

11   from, but --

12             PROSPECTIVE JUROR KALLAL:  Uh-huh.

13             THE COURT:  -- it is important that they ultimately

14   make a decision based on evidence and the law that the judge

15   gives them.  And we ask people to make that commitment, that

16   they will be fair to both sides and they will wait until they

17   hear all the evidence and the instructions before they make any

18   decision.

19             PROSPECTIVE JUROR KALLAL:  Right.

20             THE COURT:  Would you be able to do that?

21             PROSPECTIVE JUROR KALLAL:  Yeah, hopefully, I could,

22   because that may be me someday, you know --

23             THE COURT:  Okay.

24             PROSPECTIVE JUROR KALLAL:  -- and I would want

25   someone to be fair and impartial based on the evidence.

1          THE COURT:  Okay.  Thank you.  You can have a seat.

2          PROSPECTIVE JUROR KALLAL:  Okay.

3      (Prospective Juror Kallal exited sidebar.)

4          MR. BLACKWELL:  Well, it wasn't a robust "Yes."

5          MR. CASMERE:  Is the financial hardship with

6  Mr. Kallal, is that something we need to ask him about?

7          THE COURT:  I'm not going to probe more on that.

8          MR. CASMERE:  Okay.

9          THE COURT:  I mean, lots of people have those kind of

10  financial hardships, and I'm not going to start up.

11          MR. CASMERE:  We didn't ask him if he's, like, filed

12  a lawsuit over asbestos.  I think that that might be something

13  that would be relevant.  I'm sorry I'm just bringing it up now.

14          MR. MORRIS:  Yeah, that's a good one.

15          THE COURT:  Okay.

16          MR. CASMERE:  I mean, I don't know --

17          THE COURT:  Mr. Kallal, I'm sorry, one more question

18  for you.  If you could come over to the side.

19          MR. CASMERE:  I'm sorry, Your Honor.

20          THE COURT:  That's okay.

21      (Prospective Juror Kallal reenters sidebar.)

22          THE COURT:  Did your uncle file any kind of claim or

23  lawsuit?

24          PROSPECTIVE JUROR KALLAL:  No, they never did.

25          THE COURT:  Okay.  Thanks.

1          (Prospective Juror Kallal exited sidebar.)

2          THE COURT:  Does anyone have any "for cause" motions

3     at this point?

4          MR. McCOY:  Judge, I would suggest our first cause be

5     Mr. Hussain.  I don't think -- you mentioned you might follow

6     up with him further.

7          THE COURT:  Is there any objection to the plaintiff's

8     motion for cause as to Mr. Hussain?

9          MR. CASMERE:  Owens-Illinois does not object.

10          THE COURT REPORTER:  I'm sorry?

11          MR. CASMERE:  We do not object.

12          MR. MORRIS:  I didn't hear -- quite hear the basis,

13     though.

14          MR. BLACKWELL:  Yes.  What was the basis, Mr. --

15          MR. McCOY:  The basis is just his religious views are

16     going to interfere with his ability to function --

17          THE COURT:  Well --

18          MR. McCOY:  -- being a fair and impartial juror.

19          THE COURT:  -- that's not a basis to excuse him for

20     cause.  I understood that the motion was going to be about his

21     difficulties being able to attend a two-week trial with a wife

22     who has seizures and needs attendance.

23          MR. McCOY:  That's another reason.

24          THE COURT:  I certainly would not strike somebody for

25     cause because of their religious beliefs.

1           MR. McCOY:  No.  That's another --

2           MR. CASMERE:  Just so the record's clear, my

3   supporting the "for cause" was for the reason Your Honor said,

4   not for religious views.

5           MR. McCOY:  Yes.  That's another reason for us,

6   Judge.

7           THE COURT:  Any other defendants want to object for

8   cause?

9           MR. BLACKWELL:  No.

10          MR. MORRIS:  No.

11          MR. BLACKWELL:  No.

12          THE COURT:  All right.  I will excuse Mr. Hussain for

13  cause.

14          Any other "for cause" motions from the plaintiff?

15          MR. McCOY:  Ms. Schmal, Judge.  A few reasons for

16  her.  Her background in insurance defense is just too close to

17  this case, and her experience directly with Mr. Fanning.

18          THE COURT:  I think she said her experience was with

19  Mr. Morris as a trial ad. instructor.  Is that right?

20          MR. MORRIS:  Yeah.  I might have given her a bad

21  grade, Bob, so --

22          MR. HAUSMAN:  That's true.

23          THE COURT:  But I am not excusing her for cause on

24  that basis.  She said she would be able to make a decision

25  based on the evidence and the instructions.

1          Any other motions for cause from the plaintiff?

2          MR. McCOY:  Yes, Judge.  For Mr. Janczak, for the

3     Down syndrome care for his son.

4          THE COURT:  Are there any objections to Mr. Janczak

5     being excused for cause?

6          MR. CASMERE:  Well, I do object, Your Honor.  I'm

7     sympathetic, obviously, but I think the timing that the Court

8     proposed gives him ample time, and he's not suggested that

9     there's anyone else that couldn't pitch in at the last minute

10     if he needed something.  And the time that you told him and the

11     times that he told us that he would have to take care of him,

12     they don't overlap.

13          THE COURT:  I am not going to strike him for cause.

14     He has an inconvenience, but it's not an extreme inconvenience.

15          Any other motions for cause?

16          MR. MORRIS:  From the defendants as well?

17          THE COURT:  From the defendants.

18          MR. MORRIS:  Can I just take 20 seconds to talk to

19     Mr. Jepsen?

20          THE COURT:  Sure.  Go ahead.

21        (Counsel conferring.)

22          MR. CASMERE:  Your Honor, the defense would propose

23     Mr. Kallal for cause.  He, while admirably, suggested that he

24     would try to be fair, seemed to really struggle with that, and

25     I don't think that in the end I was convinced that he believes

1    that he could be fair if he put himself in that position.

2            MR. MORRIS:  And if you notice his body language,

3    when he was saying he could be fair, he was shaking his head.

4    He went like this (demonstrating).

5            THE COURT:  He may have been shaking his head, but it

6    was in a pose of confidence in his willingness to be forthright

7    with the Court and his legitimate grappling with what the job

8    of a juror would be.  And ultimately while he may not have said

9    the precise words, "I can be fair," what I as the person

10   observing him understood him to be communicating was that he,

11   in fact, could be fair and would follow the instructions and

12   base his decision on the evidence.

13           So I am denying the motion for cause with respect to

14   Mr. Kallal.

15           MR. CASMERE:  That's our only one, Your Honor.

16           THE COURT:  Okay.  I am going to ask Ms. Alvarado

17   about what type of case that she was a juror in, whether it was

18   civil or criminal, and then I'll keep going in asking the rest

19   of the jurors the questions.  So since we've lost a few, I'll

20   keep asking.

21           MR. CASMERE:  The next group of --

22           THE COURT:  Correct.  Okay.  Thank you.

23       (End of proceedings at sidebar.)

24               *      *      *      *      *

25       (Whereupon, proceedings herein not transcribed.)

1                      C E R T I F I C A T E

2

3

4

5                 I, Colleen M. Conway, do hereby certify that the

6    foregoing is a true and correct excerpt of the transcript of

7    Trial proceedings, Vol. 1-A, had in the above-entitled case,

8    before HONORABLE MANISH S. SHAH, one of the Judges of said

9    Court, Chicago, Illinois, on April 20, 2015.

10

11        /s/ Colleen M. Conway, CSR,RMR,CRR          05/27/15

12
             Official Court Reporter              Date
13           United States District Court
             Northern District of Illinois
14             Eastern Division

15

16

17

18

19

20

21

22

23

24

25