# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHARLES KRIK,

       Plaintiff,

   v.

OWENS-ILLINOIS, INC. et al.,

       Defendants.

Case No. 10-cv-07435

Judge Manish S. Shah

## Owens-Illinois, Inc.'s
## Opposition to Plaintiff's New Trial Motion (ECF No. 399)

The jury returned a unanimous verdict: Plaintiff's tobacco smoking was the sole proximate cause of his lung cancer. This decisive and unequivocal verdict came after a full and fair nine-day trial and nearly a full day of deliberations. Indeed, based on all of the evidence admitted at trial, it would have been entirely appropriate for the Court to have granted the Defendants' motions for judgment as a matter of law, either before the verdict or after (had it been against the Defendants). But there is no need for a post-verdict fix now in the Defendants' favor because the jury got it exactly right. Plaintiff ignores his own failure of proof in asking for a new trial, and neither ground he raises warrants that drastic result.

Plaintiff's first ground — that there was supposedly an improper mid-trial investigation of a juror — starts off on the foot mischaracterizing what happened and then ambles wildly into a forest of rank speculation. The evidence confirms that there was no investigation *of a juror*, much less evidence to support Plaintiff's audacious claim of "jury tampering." All that happened was a follow-up inquiry with a third-party (Bob Scamen) to try to detangle whether Plaintiff and a juror both attended his

birthday party last year.  The juror remembered the birthday party on her way home after the trial's first day, and said she was unsure, but that Plaintiff might have been at the party as well.  Plaintiff told the Court that he did not think he was at birthday party.  No one disputes that it would have been potentially material *had* he been there.  Mobil's investigator tied up the loose end:  Mr. Scamen apparently said that Plaintiff's name sounded very familiar, but he would neither confirm nor deny whether Plaintiff was at Mr. Scamen's birthday party.  When Owens-Illinois learned of this investigation and the result, it considered the matter closed — the information did not contradict what Plaintiff told the Court, and the Plaintiff and the juror apparently never met.

Plaintiff fares no better on his second ground.  At best, he rehashes arguments that the Court analyzed carefully and repeatedly (with the benefit of hundreds of pages of briefing, a *Daubert* hearing, and multiple pretrial hearings) and comprehensively rejected (in multiple written and oral decisions).  Plaintiff was not shy before or during trial in attempting to change the Court's mind.  Nothing in the new trial motion reveals an argument that the Court overlooked or misapprehended.

## <u>Legal Standard</u>

Under Fed. R. Civ. P. 59, the Court has discretion to grant a new trial.  The Seventh Circuit has illuminated the standards guiding the exercise of that discretion.  As relevant here, "[a] court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (quotations omitted).  Further, a new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out

to be overturned or shocks our conscience." *Whitehead v. Bond*, 680 F.3d 919, 927-28 (7th Cir. 2012) (quotation omitted).

## ARGUMENT

### I.     There Was No Improper "Investigation of a Juror."

Plaintiff's motion is replete with rhetoric, but no evidence backs it up. As a matter of well-settled law, no new trial is warranted.

### A.     The Facts.

Contrary to Plaintiff's assertion, the May 14, 2015 hearing did not disclose "jury tampering." Pl.'s Mot. 8. Instead, the sum total of what we know is this: after the verdict, Juror McGregor advised the Court that her friend (Mr. Scamen) told her "that an investigator on the part of, she understood, the defense had gone out and interviewed the friend who was the host of that birthday party, and that she learned that an investigator had talked to her friend." Post-Trial Status Hr'g Tr. 2:18-24, May 14, 2015, ECF No. 393.

Here, again, is the context for that disclosure: Mrs. McGregor, *after* having been empanelled, sent a note to the Court advising that she had remembered attending Mr. Scamen's birthday party and was not sure whether she had seen Plaintiff there. Trial Tr. 108:18-25, Apr. 21, 2015. The Court questioned Plaintiff. He did not recall Mr. Scamen, and did not "think" he was at his birthday party. *Id.* at 109:21-110:4. The Court then held a hearing outside of the presence of the other jurors to explore Mrs. McGregor's note. She confirmed its contents and said that she simply was not sure whether Plaintiff had been there. *Id.* at 114:14-115:12.

Plaintiff, who admittedly has memory problems, did not answer clearly that he did not know Mr. Scamen or that he was not at his birthday party. *Id.* at 109:21-110:4.

Plaintiff was less than certain. *Id.* But the fact that Mrs. McGregor thought she might have seen Plaintiff (a fellow resident of her hometown of Braidwood) at a birthday party of his fellow union member and that Plaintiff did not "think" he was there certainly warranted further investigation. What if Mr. Scamen had said that not only did he know Plaintiff, but that Plaintiff and Mrs. McGregor were both at the party? The only way to know was to ask.[1] What Mr. Scamen apparently reported to Mobil's investigator was that Plaintiff's name sounded very familiar, but that Mr. Scamen would neither confirm nor deny whether Plaintiff was at Mr. Scamen's birthday party. Mobil Resp. 4, ECF No. 407.

There is no evidence suggesting that the mere fact that Mr. Scamen mentioned to Mrs. McGregor that someone had spoken to him about the party had a whit of influence on her. Indeed, when Mrs. McGregor raised the possibility *before* the defense verdict that she might have encountered Plaintiff, Plaintiff saw no problem with her remaining as a juror at all. Trial Tr. 108:24-25. With this context, not only did nothing untoward occur, there is nothing to warrant the charges that Plaintiff tries to level.

### B. The Law.

There was neither direct nor intentional contact *with* Ms. McGregor. That matters because indirect, inadvertent contact does not, and cannot, taint a jury verdict.

---

[1] Parties can waive their right to challenge juror impartiality when the basis of their objection "might have been known or discovered through the exercise of reasonable diligence." *Johnson v. Hill*, 274 F.2d 110, 115-16 (8th Cir. 1960) (waived); *United States v. Bolinger*, 837 F.2d 436, 438-39 (11th Cir. 1988) (same); *Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2012 WL 6574785, at *6-11 (N.D. Ca. Dec. 17, 2012) (same); *Burden v. CSX Transp., Inc.*, No. 08-cv-04-DRH, 2011 WL 3793664, at *8-9 (S.D. Ill. Aug. 30, 2011) (same); *United States v. Daugerdas*, 867 F. Supp. 2d 445, 477-84 (S.D.N.Y. 2012) (same). Here, Mobil plainly exercised reasonable diligence based on the information Mrs. McGregor and Plaintiff disclosed during trial, avoiding any later suggestion of waiver should evidence have emerged that Plaintiff and Mrs. McGregor had met before the trial.

*See Delvaux v. Ford Motor Co.*, 764 F.2d 469, 471-73 (7th Cir. 1985) (denying new trial motion based on contact between juror's wife and defense counsel and investigator during trial); *United States v. Delatorre*, 572 F. Supp. 2d 967, 993-94 (N.D. Ill. 2008) (same; contact between juror and defendants' family members during trial); *Taylor v. Nat'l R.R. Passenger Corp.*, 868 F. Supp. 479, 484 (E.D.N.Y. 1994) (same; contact between juror's mother and plaintiff during trial); *see also Dennis v. General Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985) (same; inadvertent contact between juror and attorney during trial); *Thompson v. Office & Prof. Employees Int'l Union*, 74 F.3d 1492, 1510 (6th Cir. 1996) (same; inadvertent contact between juror and plaintiff during trial).

And while the Court has substantial discretion to decide whether extraneous contact or outside influence affected the trial (*Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1141 (7th Cir. 1992)), there is no obligation to investigate the possibility until the party challenging the verdict "has made a colorable showing of taint" (*United States v. Lanas*, 324 F.3d 894, 904 (7th Cir. 2003)). *See also Delvaux*, 764 F.2d at 471. *If* a party makes that showing, then the Court should determine: (1) whether, in fact, the communication was made, and (2) whether there is a reasonable possibility that the communication altered the jury's verdict. *Artis*, 967 F.2d at 1141. When, as here, the communication was not of the verdict-tainting type, the investigation ends before it starts. *Delvaux*, 764 F.2d at 471-73; *Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1250 n.4 (7th Cir. 1992).

To be sure, the lack of any verdict-tainting evidence did not stop Plaintiff from speculating about prejudice, but speculation is all he has. That does not meet the

burden under Fed. R. Evid. 606(b)(2). Again, there is no evidence that the contact with Mr. Scamen, or his subsequent mention to Ms. McGregor that he was contacted, influenced her at all. There is no evidence that a shred of *extraneous information* was communicated to a single member of the jury. There is no evidence that any improper *influence* was brought to bear on a single member of the jury. Plaintiff needs proof, but has none. Fed. R. Evid. 606(b)(2); N.D. Ill. LR 48.1; *Delvaux*, 764 F.2d at 471-73 ("[T]he one appropriate way to get juror testimony on the issue of tampering before the court on a motion for a new trial is in the form of an affidavit."); *Moylan*, 979 F.2d at 1250 n.4 ("a jury's verdict cannot be impeached by extrajudicial statements of the jurors").

But assume, contrary to *Moylan*, that Mrs. McGregor's extrajudicial statement is itself material. We are unaware of a single case — and Plaintiff, with every incentive to find one, cites none — in which a Court has granted a new trial in remotely similar circumstances. Indeed, the paucity of authority is evident from Plaintiff's reliance on Sixth Amendment criminal and habeas cases. Those case have, in their particular facts and circumstances, imposed a presumption of prejudice. *See* Pl.'s Mot. 3-10 (*citing Remmer v. United States*, 347 U.S. 227 (1954) (Government investigated jurors); *Sinclair v. United States*, 279 U.S. 749 (1929) (defendants' private investigators shadowed jurors); *United States v. White*, 78 F. Supp. 2d 1025 (D.S.D. 1999) (defendants' private investigators contacted prospective jurors)). And while he cites two civil cases — *Middleby Corp. v. Hussmann Corp.*, No. 90 C 2744, 1992 WL 398442 (N.D. Ill. Dec. 23 1992), and *Whelan v. Teledyne Metalworking Prods.*, No. CA 01-1316, 2006 WL 39156 (W.D. Pa. Jan. 6, 2006) — neither is remotely similar factually.

In *Middlebury*, the court security officer "improperly communicated with the

jury and there was a reasonable possibility that his communication affected the jury's $27 million verdict." 1992 WL 398442 at *1. The communication concerned an exhibit that (1) was not admitted *because it was cumulative of testimony* (not because the subject matter was irrelevant); (2) nonetheless wound up being discussed during closing argument; and (3) was the subject of a ruling by the Court (answering the jury's request for it), a ruling without knowledge that the CSO had told the jury it couldn't have the exhibit because it was not in evidence. In summarizing her ruling, Judge Conlon stated,

> There can be no serious dispute that the CSO responded to the jury's request, that his communication was unauthorized, and that there is a reasonable possibility the communication was damaging to Hussmann's credibility. Thus, there can be no serious question that the jury's decisionmaking process was tainted. Based on DX 295's role in the context of the entire record, the court also concluded that the taint was significant. Allowing a verdict to stand when there has been a clear and significant extrinsic impropriety in the jury's deliberative process would be irresponsible, regardless of the amount of the verdict. Put simply, ordering a new trial does not deprive Middleby of its opportunity to prove its claim to the finder of fact on an even playing field, but allowing the verdict to stand would deprive Hussmann of its right to do just that.

*Id*. at *3 (footnote omitted). Here, the only person who communicated with any juror apparently was Mr. Scamen and all he apparently said was that an investigator had asked about the birthday party. *See* Post-Trial Status Hr'g Tr. 2:18-24, ECF No. 393.

In *Whelan*, the clerk told the jury if they did not reach a verdict, "[they] would be dismissed for the weekend and would have to return the following Monday morning." 2006 WL 39156, at *8. Plaintiff's counsel did not advise the court of the communication until after the jury had been excused, foreclosing the court from "conduct[ing] even the limited inquiry into this matter which is permitted under Rule 606(b)." *Id*. at *9. Nonetheless, Plaintiff contended that the statement was coercive. The court noted that

"[c]laims that an ex parte communication with a jury improperly influenced its decision generally fall into one of three categories: (1) the remark conveyed information to the jury that was not in the trial record; (2) the remark informed the jury how it should decide the case; or (3) it negatively affected the deliberative process." *Id.* (citing *Manley v. AmBase Corp.*, 337 F.3d 237, 252 (2d Cir. 2003)). The only category into which the deputy's remark could fall was the third, but here, the Court found nothing improper: "The nature of the communication was to convey an administrative statement of fact, made by the person whose responsibility it was to convey such information to the jury." *Id.* Accordingly, the Court *denied* the motion for a new trial. *Id.*

The same result follows here.[2]

## II. Nothing Warrants Revisiting this Court's Prior (and Proper) Evidentiary Rulings.

Separately, Plaintiff contends that a new trial is warranted because the exclusion of certain evidence he sought to introduce concerning causation was unfairly prejudicial. Pl.'s Mot. 1, 11-15. Here again, Plaintiff never mentions that there actually was *no* evidence to support a verdict in his favor and that it would have been entirely appropriate for the Court to have decided the case before the deliberations.

Nonetheless, Plaintiff cites (actually repeats) a litany of supposed errors stretching from his arguments before MDL 875 in March 2012 through the Court's *Daubert* and *in limine* rulings and into the trial itself. He admits that this is a rehash

---

[2] Indeed, there is a presumption that Mrs. McGregor followed the Court's instructions (*Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008)), including to decide the facts based on the evidence *in* the case, to perform her duties fairly and impartially, and not to allow sympathy, prejudice, or fear to influence her. The Court also instructed all of the jurors that anything they may have seen or heard outside the courtroom was not evidence and must be entirely disregarded. Trial Tr. 1937:11-1939:6. There is no indication that Mrs. McGregor was ever unable or unwilling to follow the Court's instructions.

— everything was fully briefed, argued, and ruled upon. Pl.'s Mot. 11-14. Perhaps Plaintiff merely filed it in an abundance of caution to avoid what he thought might be a later claim of waiver. In that case, the request is easily disposed of. But even assuming Plaintiff is serious in his contention that, despite all of the briefing, all of the argument, and all of the rulings, the Court somehow missed something, he is simply well wide of the mark.

### A.     Rulings Concerning Dr. Frank.

Without any legal authority, Plaintiff restates his arguments concerning Dr. Arthur Frank's testimony. Pl.'s Mot. 11-15. That is not enough to meet the burden for a new trial or reconsideration. In fact, Plaintiff never explains why, in his view, the Court's rulings were somehow wrong, much less why any error affected a substantial right. *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2012) ("An evidentiary error warrants a new trial *only if* the error affects a substantial right of the party." (emphasis added)); *see also Jordan v. Binns*, 712 F.3d 1123, 1137 (7th Cir. 2013) ("to obtain a new trial they must demonstrate that there is a significant chance that at least one of the errors affected their substantial rights, that is, that an error likely had a substantial effect on the jury's verdict and the result was inconsistent with substantial justice").

The Court's previous ruling on Dr. Frank bears repeating here, not only for its substance, but also for its recitation of the procedural history of the case in which that ruling occurred:

> what we have is an evidentiary ruling by, first, Judge Lee [in *Krik v. Crane Co.*, --- F. Supp. 3d ----, 2014 WL 7330901 (N.D. Ill. 2014),] and then later me [at the pretrial hearings on March 9 and April 9, 2015, ECF Nos. 327 and 336,] and then in the midst of trial.
>
> And with respect to the in-court ruling, let me just clarify, in light of the factual proffer that was made, that it's not a misapprehension on my part

that the - - about the distinction between the cumulative exposure testimony and the each-and-every-exposure testimony.

For testimony about cumulative exposure causing lung cancer to be useful testimony for this trial, for this jury, as to these defendants, it needs to be related to whether the exposure at the hands of these defendants caused plaintiff's lung cancer, which is what this trial is about.

As was clear when Judge Lee said that it is not an acceptable approach for a causation expert to take, namely, to draw a causation opinion as to particular defendants, including hypothetical defendants in response to a hypothetical question, for that causation expert to take an approach based on cumulative exposure that's informed by an each-and-every-exposure opinion, it remains clear to me in light of the factual proffer that Dr. Frank's cumulative exposure testimony is based on the each-and-every-exposure theory above - - exposure meaning above background amounts and that that testimony is based on each and every exposure being a substantial factor.

And just as Dr. Frank, to his credit, cannot disaggregate exposures as a matter of science, cumulative exposure opinion cannot be disaggregated from the each-and-every-exposure opinion as a matter of evidence under Rule 702, and now that I've heard the proffer, under Rule 403.

The risk that that answer to the hypothetical relying on the cumulative exposure opinion would be considered as evidence of a particular causation as to these defendants would, in fact, in my view, be unfair and confusing given the weakness of the probative value of the opinion when it's informed, as it is, by the each-and-every-exposure principle.

And the goal under 702 is to be a gatekeeper. And once the parameters are set by that rule, Rule 403 still has a role to play in precluding testimony that would be confusing or unfairly prejudicial in a way that outweighs the probative value.

Trial Tr. 353:22-356:24; *see also id.* at 258:23-280:19 (voir dire of Dr. Frank). The Court

was right then and it is right now. Nothing warrants reconsideration.

## B.    Rulings on the "Helsinki Criteria."

Without any legal authority, Plaintiff also rehashes his arguments about the

"Helsinki Criteria,"[3] and therefore has not met his heavy burden for reconsideration or a new trial. Pl.'s Mot. 11-15. This Court sufficiently explained why, during Dr. Frank's direct examination, Plaintiff could not publish or refer to Plaintiff's Exhibit 306, *Asbestos, Asbestosis, and Cancer: the Helsinki Criteria for Diagnosis and Attribution*, 23 Scan. J. Work, Env't & Health 311, 313 (1997). *See* Trial Tr. 241:5-243:23, 353:22-356:24; *see also Krik*, 2014 WL 7330901, at *3.

Worse, Plaintiff actually *did* put the "Helsinki Criteria" into play — through the cross-examination of the Defendants' experts. The jury simply did not buy Plaintiff's theory. During the Plaintiff's cross-examination, Drs. Ghio and Wick also testified that the "Helsinki Criteria" were not a reliable authority and were not relied upon in this case. Tr. Trans. 1367:24-1368:4 (Ghio), 1382:24-1383:11 (Ghio), 1541:16-1542:10 (Wick), 1563:1-12 (Wick). Likewise, Dr. Ghio explained in his expert report that the "Helsinki Criteria" were not a reliable authority and could not apply in this case. Andrew J. Ghio, MD Rep. 3, ECF No. 399-7. Plaintiff simply gets it wrong in suggesting that Drs. Ghio and Wick's testimony "provided additional foundation for admission of the Helsinki Criteria." Pl.'s Mot. 14-15. It neither did nor could have provided that foundation.

The "Helsinki Criteria" are not themselves admissible. *Finchum v. Ford Motor Co.*, 57 F.3d 526, 532 (7th Cir. 1995) (affirming trial court's exclusion of reliance material). Plaintiff could not have introduced the "Helsinki Criteria" into evidence under Fed. R. Evid. 803(18). *Id.* Dr. Frank also never testified that the "Helsinki Criteria" were a reliable authority, or that he relied upon the "Helsinki Criteria" in this

---

[3] Plaintiff attaches three exhibits that he calls the "Helsinki Criteria." Pl.'s Mot. 13 n.11. Contrary to Plaintiff's motion, the record does not show that he attempted to introduce these three exhibits as evidence during trial. *Id.* at 13.

case. Fed. R. Evid. 803(18). Indeed, during his deposition and trial testimony, Dr. Frank refused to testify whether the "Helsinki Criteria" are regularly relied upon, and he made clear that he disagreed with them. Arthur Frank Dep. 105:11-13, ECF No. 328-3; Trial Tr. 276:3-6 (Q. "Are you now completely embracing Helsinki and using that as your basis to give causation opinions in asbestos cases? A. I'm not totally embracing Helsinki . . .").[4] So, the "Helsinki Criteria" were not relied on by Dr. Frank, were not established as a reliable authority by Dr. Frank, and were not admissible into evidence under any rule.

Plaintiff's argument is also misleading: nowhere do the "Helsinki Criteria" say that every exposure is a cause or substantial contributing factor of lung cancer. *See* Pl.'s Ex. 306. As a non-peer reviewed, public-policy consensus statement, the "Helsinki Criteria" indicate that "significant" asbestos exposures may be considered a cause, with no definition or guidance as to what "significant" means. *Id.* Like so many courts, this Court considered and rejected the "Helsinki Criteria" as a basis for a causation opinion. *See Krik*, 2014 WL 7330901, at *3; *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 47, 55 n.35 (Pa. 2012); *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 356-57 (Tex. 2014); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 542, 552 (Ga. App. Ct. 2011).

Plaintiff's motion fails to show how the "Helsinki Criteria" and his own cross-

---

[4] For example, Dr. Frank disagreed with the "Helsinki Criteria" that a cumulative exposure of 25 fiber-years is estimated to increase the risk of lung cancer twofold. Frank Dep. 104:3-4, ECF No. 328-3. He never studied the "Helsinki Criteria" that the relative risk of lung cancer is estimated to increase at .5 to 4 percent for each fiber per cubic centimeter. *Id.* at 104:10-13. Unlike the "Helsinki Criteria" entirely, Dr. Frank did not know — and did not "much care" — about Plaintiff's exposure history because "regardless of what that number is it was significant." *Id.* at 105:24-107:10; *see id.* at 129:11 to 129:15. If Plaintiff's exposure were just one minute on a single occasion, it would be a substantial contributing factor in Dr. Frank's view. Trial Tr. 274:8-13.

examination of Drs. Ghio and Wick could constitute an error, much less an error having a substantial influence on the jury's verdict. On the contrary, the jury was there; it weighed the witnesses' credibility, considered the evidence, and reached a supportable conclusion. *Whitehead*, 680 F.3d at 928-29 (citations and marks omitted).

## CONCLUSION

For these reasons, Owens-Illinois, Inc. requests that the Court deny Plaintiff's Motion for a New Trial (ECF No. 399).

Dated: June 24, 2015    Respectfully submitted,


By: /s/ Brian O. Watson
   Edward Casmere
   Brian O. Watson
   Schiff Hardin LLP
   233 S. Wacker Dr. Suite 6600
   Chicago, Illinois 60606
   (312) 258-5500
   (312) 258-5600 (facsimile)

   *Attorneys for Defendant*
   *Owens-Illinois, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on June 24, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

12997-8392

CH2\16723890.9