UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES KRIK,

    Plaintiff,

v.

OWENS-ILLINOIS, INC., and
EXXONMOBIL OIL CORP.,

    Defendants.

Case No. 10-cv-07435

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Charles Krik sued Owens-Illinois and ExxonMobil, claiming that they negligently exposed him to asbestos, which (at least in part) caused his lung cancer. The jury returned a verdict for the defendants, finding that Krik's tobacco smoking was the sole proximate cause of his lung cancer. Krik moves for a new trial on two grounds. He argues that the court's exclusion of his proffered expert testimony was erroneous and prejudicial. He also argues that Mobil's investigation of a potential pretrial contact between Krik and a sitting juror warrants a new trial.

**I.    Legal Standards**

"A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014) (citing *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012)). To show unfairness—whether due to improper jury contact or erroneous exclusion of evidence—Krik must show that he was prejudiced. *United States v. Olano*, 507 U.S. 725, 739 (1993) (jury contact); *Florek v. Vill. of*

*Mundelein*, 649 F.3d 594, 602 (7th Cir. 2011) (exclusion of evidence); Fed. R. Civ. P. 61.

**II.   Analysis**

   **A.   Exclusion of Krik's Proffered Expert Testimony**

Krik offered Dr. Arthur Frank to provide expert testimony that Krik's lung cancer was caused by his exposure to asbestos attributable to defendants. In response to a *Daubert* challenge by the defense, Judge Lee barred opinion testimony that each and every exposure to asbestos caused plaintiff's cancer. *Krik v. Crane Co.*, 76 F.Supp.3d 747, 752–55 (N.D. Ill. 2014). At trial, Krik called Frank in an attempt to elicit causation testimony that did not run afoul of the ruling on the motion in limine. But, as became clear during a voir dire of the witness, his causation testimony was not tied to the specific quantum of exposure attributable to the defendants, but was instead based on his medical and scientific opinion that every exposure is a substantial contributing factor to the cumulative exposure that causes cancer. *See* [376], Trial Tr. at 262:13–16 (". . . if there is exposure to a cancer-causing agent, that becomes part of the totality of the exposure. Some may contribute more, some may contribute less, but they are all part of the exposure."); *id.* at 262:8–9 ("If the exposure took place, it was part of the cumulative exposure that someone had.").[1] This "cumulative exposure" testimony was no different than the testimony proffered at the *Daubert* stage. *See Krik*, 76 F.Supp.3d at 752–53

---

[1] Citations to the record are designated by the document number on the district court docket, placed in brackets.

(quoting plaintiff's counsel as describing the testimony as one based on cumulative exposure).

Plaintiff's motion for a new trial reiterates and preserves the arguments he previously advanced for admission of Frank's causation testimony, but provides no basis to revisit the rulings. At trial, I concluded that both Federal Rules of Evidence 702 and 403 rendered Frank's causation testimony inadmissible. To find a defendant liable, plaintiff must prove causation attributable to that defendant. It would be misleading and confusing for an expert to opine—particularly using the legal terminology of "substantial contributing factor"—that Krik's cancer was caused by defendants when the foundation for the opinion was that every exposure (without regard to dosage) contributes to cause cancer.[2] For the reasons described in Judge Lee's opinion and on the record during the trial, the limits on Frank's testimony were not erroneous and do not warrant a new trial.[3]

---

[2] *See* [376], Trial Tr. at 274:8–13 (Frank states that one minute of asbestos exposure would be a substantial contributing factor to disease). Contrary to plaintiff's argument, the limits on Frank's testimony did not unfairly undermine his authority as an expert. The witness was allowed to testify that Krik had a type of cancer that is caused by cigarette smoking and asbestos, *id.*, Trial Tr. at 229:24–25, and that certain studies attributed lung cancer to asbestos exposure. *Id.*, Trial Tr. at 248–50.

[3] Plaintiff also mentions the exclusion of the "Helsinki Criteria" as a basis for a new trial. As a set of consensus principles announced by an international public policy conference, these criteria were not substantive evidence of causation; rather, they were materials that could be relied upon by an expert. In this case, the Helsinki Criteria provided a backdrop to the history of the study of asbestos and disease, and fodder for cross-examination of defendants' experts. But they were not admissible as independent exhibits of substantive evidence or as a foundation for inadmissible causation testimony. Moreover, based on the ruling excluding unreliable and non-case-specific causation testimony, *Krik*, 76 F.Supp.3d at 753–54, it would have been confusing and unfairly prejudicial to allow the Helsinki Criteria to stand as evidence from which a jury could infer defendants' liability as to causation. Finally, because the criteria were discussed during testimony several times

### B. Mobil's Investigation of Juror McGregor

Jury selection began on April 20, 2015. The prospective jurors were introduced to plaintiff Charles Krik and to counsel for all parties, and were asked whether they recognized anyone involved in the case. [398] at 11:3–12:3. Juror McGregor did not indicate that she knew Krik or anyone else involved. *See id*. at 12:2–15. Additionally, each prospective juror was given a list of names of people involved in the trial, including parties and potential witnesses. *Id*. at 12:16–20. Krik's name was on the list. The prospective jurors were asked, collectively, whether they recognized any name on the list; no one answered yes. *Id*. at 12:21–25. Finally, McGregor individually reported that she did not know anyone on the list. *Id*. at 24:24–25.

But, the next day, McGregor delivered a note to the court, stating: "While I do not know Mr. Krik personally we might have been at a birthday party for a former pipefitter and a good friend of mine last year. His name is Bob Scamen. I just wanted you to be aware of this. I did not think about this until the ride home last night." [349] at 3. The note was read to counsel for all parties. [375] at 108:17–23. Plaintiff's counsel responded, "From plaintiff's end, I don't see that poses any problem." *Id*. at 24–25. Outside the presence of the jury, the court asked Krik whether he knew Bob Scamen; Krik said that he did not, and that "[i]f [Scamen] had a birthday party, I don't think I was at it." *Id*. at 109:21–110:2. McGregor was brought into the courtroom, without the other jurors. She explained that she wasn't

---

during the trial, the limitation on the use of one article during the direct examination of Frank did not render the entire trial unfair to the plaintiff.

4

sure whether she encountered Krik at Scamen's birthday party. *Id*. at 114:14–17. She said that Scamen was her only pipefitter friend and that her association with him would not improperly influence her. *Id*. at 114:18–115:4. Defendants moved to remove McGregor from the jury, but their motion was denied. *Id*. at 115:13–116:23. Defendants then moved for a mistrial, and that motion was also denied. *Id*. at 116:24–117:8.

After the jury returned a verdict and was excused, I met with the jurors to thank them for their service. *See* [392], Trial Tr. at 2009. During that conversation, McGregor mentioned that she had learned that an investigator—who she believed acted on behalf of the defendants—had contacted Scamen to ask about his birthday party. [393] at 2:18–24. At a subsequent status hearing, counsel for Mobil confirmed that the investigation was done at Mobil's direction, and that the investigator spoke with Scamen, who said that McGregor had attended his birthday party. *Id*. at 3:15–24. Scamen could not say whether Krik was at the party, but did say that the name "Krik" sounded familiar. *Id*. at 3:22–4:1. Owens-Illinois had known about the investigation. *Id*. at 6:1–10. Plaintiff's counsel was not aware of the Scamen contact and interview. *Id*. at 2:14–17; 2:25–3:3; 6:12–13.

Plaintiff now argues that the investigation of the birthday party was prejudicial and requires a new trial. To obtain a new trial based on improper contact with the jury, the complaining party must show that it was prejudiced. *See Olano*, 507 U.S. at 739 (The "ultimate inquiry" is "Did the intrusion affect the jury's deliberations and thereby its verdict?"). Accordingly, the Supreme Court "has long

5

held that the remedy for allegations of juror partiality is a hearing in which the [complainant] has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982).

Because Federal Rule of Evidence 606(b) prohibits most potential testimony about what influenced a juror, the "hearing" to determine prejudice is limited. A court can ask jurors whether the alleged communication was made and what it contained—and nothing more. *Hall v. Zenk*, 692 F.3d 793, 806 (7th Cir. 2012) (quoting *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir. 1991)). Then, "without asking [the jurors] what role the communication played in their thoughts or discussion," the court should determine "whether there is a reasonable possibility that the communication altered their verdict." *Id*. A "presumption" of prejudice may or may not apply, depending on whether the circumstances appear inherently likely to improperly influence a jury. *Hall*, 692 F.3d at 800–01.

No hearing is required here because there is no dispute as to the existence or content of the communication—and because Krik has not asked for one.[4] *See United States v. Sanders*, 962 F.2d 660, 672–73 (7th Cir. 1992) (no hearing required where questioning jurors would not have revealed additional information); *United States v.*

---

[4] Krik noted that the court has discretion to order a hearing ([409] at 14 n.28), but affirmatively argued that no hearing is required ([399] at 5). Krik thus knowingly waived any right he had to a hearing. To the extent Krik's waiver of a hearing is a request for an irrebuttable presumption of prejudice, the request is denied as contrary to law. *See Phillips*, 455 U.S. at 217 ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation."); *Remmer v. United States*, 350 U.S. 377, 378 (1956) (noting that the Court originally sent the case back to the district court to develop a factual record concerning prejudice). Krik has argued for a finding of prejudice on the existing record, without a hearing.

6

*Gilsenan*, 949 F.2d 90, 97 (3d Cir. 1991) (no hearing required where the movant's version of the facts does not warrant a new trial). The question is whether there is a "reasonable possibility" that the jury's verdict was altered by the investigation, McGregor's knowledge of it, her perception that it was done by the defendants, and the possibility that she told other jurors about it. *See Hall*, 692 F.3d at 806; *Sanders*, 962 F.2d at 673. This question can be answered without a hearing.

There was no prejudice to Krik in Mobil's interview of Scamen. In this context, prejudice is demonstrated through conduct that leads to a compelling inference of external pressure to return a verdict unfavorable to the movant. No such inference is reasonable here because defendants did not directly contact the juror and the subject of their interview with Scamen was entirely independent of the merits of the case. Attempted or perceived bribes, or exposure to extraneous information directly concerning a party's liability would be prejudicial. *Remmer v. United States*, 350 U.S. 377, 380–82 (1956); *Parker v. Gladden*, 385 U.S. 363, 365–66 (1966). Threats and other indirect communications suggesting a party's guilt also prejudice the jury against that party. *Owen v. Duckworth*, 727 F.2d 643, 637–48 (7th Cir. 1984); *Hall*, 692 F.3d at 807. External contact that forces a verdict is also prejudicial. *Haugh*, 949 F.2d at 916–19. Contact that has no obvious implication on the outcome of the trial is not prejudicial. *E.g.*, *Olano*, 507 U.S. at 737–741; *Phillips*, 455 U.S. at 220; *Whitehead v. Cowan*, 263 F.3d 708, 723 (7th Cir. 2001). For example, there was no prejudice in *United States v. Warner*, 498 F.3d 666, 681 (7th

Cir. 2007), where the extraneous information was "unrelated to the facts of the case or the defendants' guilt."[5]

In this case, an investigator questioned a juror's friend to determine whether the juror and the plaintiff attended the same birthday party. The juror did learn about the interview, but nothing about it had any bearing on the ultimate issues at trial. There was no intimidation of (or direct contact with) McGregor in the interview of Scamen. The juror previously brought the birthday party to the court's attention herself, and she was questioned about it in open court, so she understood it was noteworthy; the fact that there was some follow up conducted by the defendants was not likely to influence her view of either party on the merits of the case.[6] In sum, the nature of this investigation was relatively benign, and there is no

---

[5] *Middleby Corp. v. Hussman Corp.*, No. 90 C 2744, 1992 WL 398442 (N.D. Ill. Dec. 23, 1992), cited by Krik, involved a communication directly with the jury about a pivotal piece of evidence. That is quite unlike this case, where the contact was not with the juror and had no connection to the merits of plaintiff's case. *United States v. White*, 78 F.Supp.2d 1025, 1027–1028 (D.S.D. 1999), also cited by Krik, involved a criminal defendant's investigator contacting jurors' neighbors and, in one instance, a prospective juror. Although it was not shown that any particular juror had been intimidated, the court remained concerned, because: "it is not farfetched to expect jurors to feel intimidated by or prejudiced toward a defendant [in a criminal drug case] who, they learn, has conducted an investigation of their personal lives. . . ." *Id*. at 1028. Krik's asbestos suit does not have the same inherent capacity to intimidate (and the concern in *White* was that the jury would be prejudiced against the party doing the investigation, which in this case would be the defendants, not Krik). Moreover, in *White*, the investigation came to light before trial and the court's remedy was to impanel a new jury—a remedy consented to by the defendant and imposed under the court's authority to manage the voir dire process. *Id*. at 1028. Accordingly, the *White* court did not have to find prejudice, the standard here.

[6] *Sinclair v. United States*, 279 U.S. 749 (1929), addressed the subject of jury surveillance in the context of a contempt finding, a different situation than the present case. In *Sinclair*, the question was whether the surveillance was done with the intent to impede the due administration of justice. Whether the verdict was actually compromised was not a necessary element of contempt. In *Dow v. Carnegie-Illinois Steel Corp.*, 224 F.2d 414, 430–31 (3d Cir. 1955), a then-widely used tactic of investigating jury pools by interviewing neighbors and friends and gathering intel about potential jurors' political views (a service

8

proof that prejudice was reasonably likely. *See Whitehead*, 263 F.3d at 726; *Delvaux v. Ford Motor Co.*, 764 F.2d 469, 471–74 (7th Cir. 1985).

Finally, in determining whether a party was prejudiced, a court can consider the strength of the party's case. *Hall*, 692 F.3d at 807; *Sanders*, 962 F.2d at 673–74; *United States v. Paneras*, 222 F.3d 406, 411–12 (7th Cir. 2000). Krik provided little to no evidence to show that his lung cancer was caused by exposure to Owens-Illinois's product or at Mobil's premises (as opposed to other potential causes, most notably his substantial tobacco smoking). As discussed above, Krik's proffered expert testimony on causation did not meet the standards of Federal Rule of Evidence 702 and *Daubert*, so excluding it was proper. Without expert testimony on causation, Krik's case was weak—perhaps fatally so. *See Higgins v. Koch Dev. Corp.*, — F.3d —, No. 14–2207, 2015 WL 4394895, at *2–4 (7th Cir. July 20, 2015); *Myers v. Ill. Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010); *Korte v. ExxonMobil Coal USA, Inc.*, 164 Fed. App'x 553, 557–58 (7th Cir. 2006). Krik was not prejudiced by Mobil's investigation because judgment in favor of the defendants was inevitable once it became clear that Krik could not prove causation. Accordingly, that investigation does not require a new trial.[7]

---

sold to lawyers) was not prejudicial where it was done to inform the lawyers, rather than to pressure the jurors. These historical examples are a useful reminder of the lengths some will go to pry into the lives of jurors. But the question of whether Krik is entitled to a new trial is about the integrity of the verdict in this particular case. Here, plaintiff's suggested inferences of prejudice ([399] at 8–9, [409] at 11–12) are not persuasive, and it is not reasonably likely that the interview of a friend about a birthday party had any effect on the verdict.

[7] Whether it was a good idea for the defendants to conduct an investigation (without court permission) that was likely to lead to an out-of-court communication with the juror about

## III. Conclusion

Krik's motion for a new trial [399] is denied.

ENTER:

                                                                                    Manish S. Shah
                                                                                   United States District Judge

Date: 8/25/15

---

the trial is another matter—one that is outside the question presented by the motion for a new trial. The denial of Krik's motion should not be read as an endorsement of defendants' choices.

10